**Electronically Filed April 2, 2008**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HOOPA VALLEY TRIBE, on its own behalf, and in its capacity as *parens patriae* on behalf of its members; Elton Baldy; Oscar Billings; Benjamin Branham, Jr.; Lila Carpenter; William F. Carpenter, Jr.; Margaret Mattz Dickson; Freedom Jackson; William J. Jarnaghan, Sr.; Joseph LeMieux; Clifford Lyle Marshall; Leonard Masten, Jr.; Danielle Vigil-Masten, | ) | Case No. 08-72 L<br>Judge Lawrence S. Margolis |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**APPENDIX OF EXHIBITS TO**
**HOOPA MOTION AND MEMORANDUM**
**IN SUPPORT OF MOTION FOR**
**PARTIAL SUMMARY JUDGMENT**

**CONTENTS**


| **Exhibit No.** | **Document Description** | **Page** |
|---|---|---|
| Exhibit 1 | Finale Memorandum Regarding Hoopa Valley Reservation Trust Funds (June 25, 1974) | 1 |
| Exhibit 2 | Finale letter to Chairman Masten Regarding Set Aside Trust Funds (Mar. 19, 1975) | 4 |
| Exhibit 3 | Assistant Secretary—Indian Affairs Gerard Message to Hoopa and Yurok People (Nov. 20, 1978) | 6 |
| Exhibit 4 | S. 2723, 100th Cong., 2d Sess., A Bill to Partition Certain Reservation Lands between the Hoopa Valley Tribe and Yurok Indians. to Clarify the use of Tribal Timber Proceeds (Aug. 10, 1988) | 9 |
| Exhibit 5 | Memorandum of Congressional Research Service to House Committee Regarding Questions Concerning Hoopa Valley Reservation Settlement as Proposed in H.R. 4469 (Sept. 13, 1988) | 35 |
| Exhibit 6 | Senate Report, S. Rep. 100-564 (Sept. 30, 1988) | 78 |
| Exhibit 7 | Public Law 100-580 (Oct. 31, 1988) | 119 |
| Exhibit 8 | Notice Regarding Hoopa Valley Tribe Claim Waiver, 53 Fed. Reg. 49361 (Dec. 7, 1988) | 133 |
| Exhibit 9 | Notice of Options for Persons on the Hoopa-Yurok Settlement Roll (Apr. 12, 1991) | 135 |
| Exhibit 10 | Notice of Settlement Option Deadline, 56 Fed. Reg. 22996 (May 17, 1991) | 148 |
| Exhibit 11 | Notice of Statute of Limitation for Certain Claims, 56 Fed. Reg. 22998 (May 17, 1991) | 149 |

| | | |
|---|---|---|
| Exhibit 12 | Notice to Convene General Council Meeting of the Yurok Tribe to Nominate the Yurok Interim Tribal Council (Aug. 14, 1991) | 150 |
| Exhibit 13 | Memorandum to Area Director Regarding Distribution of Funds (Aug. 22, 1991) | 152 |
| Exhibit 14 | Memorandum to Superintendent Regarding Issuance of Per Capita Checks (Oct. 24, 1991) | 156 |
| Exhibit 15 | Memorandum of Assistant Solicitor-- to Area Director Regarding Issues Raised at Organizational Meeting of the Yurok Interim Council (Feb. 3, 1992) | 159 |
| Exhibit 16 | Testimony of Richard Haberman, Chairman Interim Council of the Yurok Tribe (Mar. 5, 1992) | 166 |
| Exhibit 17 | *Yurok Indian Tribe v. United States of America* Complaint, No. 92-173 L (Mar. 10, 1992) | 170 |
| Exhibit 18 | Letter of Assistant Secretary - Indian Affairs to Honorable Dale Risling, Sr. (Apr. 13, 1992) | 176 |
| Exhibit 19 | Letter of Assistant Secretary - Indian Affairs to Honorable Richard Haberman (Apr. 15, 1992) | 178 |
| Exhibit 20 | Letter of Susie L. Long, Vice-Chair, Yurok Interim Tribal Council to Honorable Ada Deer (Aug. 20, 1993) | 180 |
| Exhibit 21 | Letter of Assistant Secretary - Indian Affairs to Susie L. Long (Nov. 23, 1993) | 182 |
| Exhibit 22 | Letter of Assistant Secretary - Indian Affairs to Susie L. Long (Apr. 4, 1994) | 183 |
| Exhibit 23 | Letter of Assistant Secretary - Indian Affairs to Susie L. Long (Mar. 14, 1995) | 187 |

| | | |
|---|---|---|
| Exhibit 24 | Letter of Assistant Secretary - Indian Affairs to Hon. J. Dennis Hastert Regarding Department's Section 14(c) Report (Mar. 15, 2002) | 189 |
| Exhibit 25 | Committee on Indian Affairs, United States Senate, Oversight Hearing on Hoopa-Yurok Settlement Act, S. Hrg. 107-648 (Aug. 1, 2002) | 241 |
| Exhibit 26 | Proposed Amendments to the Hoopa Yurok Settlement Act Developed in Formal Mediation (Dec. 3, 2003) | 348 |
| Exhibit 27 | S. 2878, 108th Cong., 2d Sess., A Bill to Amend the Hoopa-Yurok Settlement Act (Sept. 30, 2004) | 353 |
| Exhibit 28 | Letter of Feinstein, Boxer and Thompson to Hon. David L. Bernhardt, Acting Solicitor (Mar. 21, 2006) | 368 |
| Exhibit 29 | Letter of Associate Deputy Secretary of Interior to Clifford Lyle Marshall (July 19, 2006) | 370 |
| Exhibit 30 | Letter of Special Trustee for American Indians to Clifford Lyle Marshall (Mar. 1, 2007) | 372 |
| Exhibit 31 | Letter of Special Trustee for American Indians to Clifford Lyle Marshall (Mar. 21, 2007) | 375 |
| Exhibit 32 | Yurok Tribal Council Resolution 07-037 (Mar. 21, 2007) | 376 |
| Exhibit 33 | Hoopa Petition for Reconsideration, IBIA No. 07-90-A (Apr. 17, 2007) | 378 |
| Exhibit 34 | Resolution of Yurok Tribal Council No. 07-41 Regarding Distribution of Assets Held in Trust (Apr. 19, 2007) | 393 |
| Exhibit 35 | Letter of Deputy Solicitor to Clifford Lyle Marshall (Apr. 20, 2007) | 395 |
| Exhibit 36 | Fax of Cindee McKernan to Donna Erwin Regarding Acceptability of Draft Resolution (Apr. 20, 2007) | 396 |

| | | |
|---|---|---|
| Exhibit 37 | Letter of Special Trustee for American Indians to Clifford Lyle Marshall (Apr. 20, 2007) | 399 |
| Exhibit 38 | Letter of Deputy Special Trustee - Trust Services to SEI Private Trust Company Regarding Free-Delivery of Hoopa-Yurok Settlement Account (Apr. 20, 2007) | 400 |
| Exhibit 39 | Letter from Assistant Secretary - Indian Affairs to Clifford Lyle Marshall (June 29, 2007) | 403 |
| Exhibit 40 | Check from Morgan Stanley to Yurok tribal member (Jan. 15, 2008) | 405 |

IN REPLY REFER

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
Sacramento Area Office
2800 Cottage Way
Sacramento, California 95825

JUN 25 1974

Memorandum

To: Superintendent, Hoopa Agency

From: Area Director

Subject: Short v. the United States

The decision of the U. S. Supreme Court to deny the petition for a writ of certiorari in the case of Jessie Short et al., v. the United States makes it necessary for this office to institute interim measures for dealing with Hoopa Valley Reservation tribal trust funds and tribal trust income until it hears further from the Trial Judge to whom the Court of Claims remanded the case for further proceedings. Accordingly, this office is proceeding on the following assumptions:

(1) Hoopa Valley Reservation: A single reservation, as extended by Executive Order on October 16, 1891 by President Benjamin Harrison to include the Square, the Addition, and the Klamath River Reservation.

(2) Tribal Land: All Indian trust land within the Hoopa Valley Reservation not allotted to Indians.

(3) Tribal Trust Funds: Tribal money held by the United States Government in the following accounts:

Account 7236 - Proceeds of Labor, Hoopa Valley Indians, California

Account 7736 - Interest and Interest on Accruals, Proceeds of Labor, Hoopa Valley Indians, California

Account 7056 - Proceeds of Klamath River Reservation, California

Account 7556 - Interest and Interest on Accruals, Proceeds of Klamath River Reservation, California

Account 7153 - Proceeds of Labor, Yurok Indians of Lower Klamath River, California

Account 7653 - Interest and Interest on Accruals, Proceeds of Labor, Yurok Indians of Lower Klamath River, California

Account 7154 - Proceeds of Labor, Yurok Indians of Upper Klamath River, California

Account 7654 - Interest and Interest on Accruals, Proceeds of Labor, Yurok Indians of Upper Klamath River, California

(4) Tribal Trust Income: Money paid to the United States Government for the sale of Hoopa Valley Reservation tribal resources or use of tribal land from all sources such as: leases, rights-of-way, permits, easements, rentals, fees, licenses, and sale of timber and deposited to one of the accounts in (3) above.

(5) Hoopa Valley Tribe: Those persons on the Hoopa Valley Tribal Roll and eligible to be on the roll on June 30, 1974, and numbering 1405. (Note: This office does recognize that the number may increase or decrease as Hoopa Valley Tribe tribal membership applications are processed by the Hoopa Valley Tribe).

(6) Plaintiffs: Those persons who are plaintiffs in the case and numbering 3323. (Note: The plaintiff number is considered, at this time, this office's best guide as to those persons who may be found entitled to recover as an Indian of the reservation by the Court of Claims. We recognize that the number may be more by intervention in the case by others who are not plaintiffs, or less, as eligibility standards are set by the court and applied to the plaintiff list. A count was made of the persons who stated their identity as Yuroks on their applications for the California Judgment fund and the number was within two of the above; 3321. Here again, there are persons on the roll who are not listed as plaintiffs, but the possibility remains that they may wish to establish their entitlement by intervention in the case and may be successful in so doing. This office recognizes, as stated above, that the number of plaintiffs entitled to recover as an Indian of the Reservation may be more or less than the number of plaintiffs listed in the complaint; however, it is this office's view that the number of plaintiffs listed in the complaint is the best number available for use at this time).

The purpose of establishing the number for the Hoopa Valley Tribe and the number for plaintiffs is for the division of Hoopa Valley Reservation Tribal Trust Funds and Tribal Trust Income. This division is made on a percentage basis as follows:

| | | |
|---|---|---|
| Hoopa Valley Tribal Members | - | 1405 |
| Plaintiffs | - | 3323 |
| TOTAL | - | 4728 |
| Percent of Hoopa Valley Tribal Members to Total | - | 30% |
| Percent of Plaintiffs to Total | - | 70% |

Commencing with the date of this memorandum, Hoopa Valley Reservation Tribal Trust Funds and Tribal Trust Income shall be handled by this office in the following manner:

> 30% of the total of Hoopa Valley Reservation Tribal Trust Funds is available for the Hoopa Valley Tribe, as well as 30% of subsequent Hoopa Valley Reservation Tribal Trust Income for its use in accordance with approved Hoopa Valley Tribe tribal budgets. 70% of the total of Hoopa Valley Reservation Tribal Trust Funds and 70% of subsequent Hoopa Valley Reservation Tribal Trust Income is set aside in a separately held tribal account for the Indians of the Hoopa Valley Reservation pending determination by the court of eligibility of plaintiffs to recover as an Indian of the Hoopa Valley Reservation.

Unaffected by the issuance of this memorandum, are the continued political and economic activities of the Hoopa Valley Business Council, the Hoopa Valley General Council, and the Hoopa Valley Tribe.

William E. Finale

Area Director

IN REPLY REFER TO:

UNITED STATES
DEPARTMENT OF THE INTERIOR

BUREAU OF INDIAN AFFAIRS
Sacramento Area Office
2800 Cottage Way
Sacramento, California 95825

MAR 19 1975

Peter H. Masten, Jr., Chairman
Hoopa Valley Business Council
Hoopa Valley Tribe
P. O. Box 817
Hoopa, California 95546

Dear Mr. Masten:

In response to your letter of March 10, 1975, you are correct in assuming that the 70% of the Hoopa Valley Reservation tribal trust funds and trust income which the Bureau of Indian Affairs has set aside for the Indians of the Hoopa Valley Reservation is not being held in trust solely for the benefit of the plaintiffs in Jessie Short, et al. v. United States, No. 102-63, United States Court of Claims. The 70% of the tribal trust funds and trust income which is presently set aside is being held in trust for all Indians of the Hoopa Valley Reservation. Indians of the Hoopa Valley Reservation, by definition, include the Indians of the Hoopa Valley Tribe.

The reason for the Bureau's withholding of the 70% is twofold - to protect the United States from an enlarged judgment in the Short case and to enable the United States to carry out its trust responsibilities owed to all Indians of the Hoopa Valley Reservation. Judge David Schwartz, the trial judge in the Short case, in his memorandum of pretrial conference of May 17, 1974, cautioned that any overpayments to the Hoopa Valley Tribe could lead to double or individual liability once judgment is rendered.

The decision to withhold 70% of the trust funds and trust income from distribution was based upon various sources available to the Bureau of Indian Affairs. Among those sources were the data from various California Judgment Rolls, the Bureau's allotment records from the Hoopa Valley Reservation, the Bureau's tribal and membership rolls from the Hoopa Valley Reservation, and the number of plaintiffs enumerated in the Short case.

RECEIVED
MAR 21 1975
HOOPA VALLEY TRIBE

It was determined that by withholding 70% of the trust funds and trust income the United States should be able to protect itself from further liability for the mismanagement of trust funds from the Reservation and that the Bureau would be able to carry out its trust responsibilities to all of the Indians of the Reservation by making proper investment of the funds so withheld.

Sincerely yours,

William E. Finale
Area Director

United States Department of the Interior

OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20240

NOV 2 0 1978

A MESSAGE

To: The Hoopa & Yurok People of the Hoopa Valley Indian Reservation

From: Assistant Secretary - Indian Affairs

The purpose of this message is to indicate to you, the Hoopa and Yurok people, a course of action which I propose to take in order to resolve the dispute over the use and benefit of the Hoopa Valley Reservation and remove the impediments to self-determination by Indian people in its management.

In view of the Department of the Interior's responsibilities regarding the people and resources of the Reservation, I recently directed my staff to take a fresh look at the entire history of the matter, including the past practices and policies of the Department. On the basis of this study, certain conclusions have been reached which point to a definite course of action. I know that you share my hope that this will result in a just resolution of the longstanding conflict and in the fair and proper use of the resources of the Reservation.

As you know, the Hoopa Valley Indian Reservation was established for Indian purposes by Executive Orders authorized by an Act of Congress. The Executive Order of 1891 established its present boundaries. In 1958, the Solicitor's Office of the Interior Department advised the Bureau of Indian Affairs that the Square was separate from the Extension and that the Hoopa Valley Tribe was entitled to exclusive use of and benefits from Reservation resources from the Square. However, in 1973, the Court of Claims in Jessie Short, et al v. United States decided that the Square and Extension were one Indian Reservation. In 1974, the Supreme Court declined to review the Court of Claims decision.

The fresh assessment of the overall controversy has focused attention on the obligations of the Department of the Interior in this matter, given the fact that the Reservation is subject to the administration

of the Secretary of the Interior for Indian purposes. One of these obligations is for the Secretary to remove all doubt about who is entitled to use and benefit from the Reservation and to formally designate the Indian beneficiaries. It is my intention to designate the Hoopa Valley Tribe and the Yurok Tribe as the Indians of the Reservation who are entitled to use and benefit from the Reservation and its resources.

The membership of the Hoopa Tribe is known. The membership of the Yurok Tribe is yet to be established, and membership standards and criteria have yet to be developed and announced. To the extent possible the membership of the Yurok Tribe will be constructed along lines similar to those used during the construction of the membership of the Hoopa Tribe, with the result that members of both Tribes will include some Indian people who are not necessarily of Hoopa or Yurok blood.

In the future, the Department of the Interior will deal and work with each Tribe and its governing body as separate entities on matters of exclusive concern to each. In the case of the Hoopa Tribe this means that certain of their current constitutional powers relating to management of Reservation assets will be limited and their constitution should be amended accordingly.

However, since both Tribes are entitled to share in the Reservation assets, a mutually agreeable arrangement will necessarily be developed for managing these assets and otherwise dealing with the range of matters affecting the Reservation as a whole. Until such time as a Reservation-wide management and coordination body or similar organization can be established, it is necessary for the Department of the Interior through my office to assume complete management of the Reservation assets on behalf of both Tribes. In so doing, a temporary moratorium is placed on all per capita payments as of February 1, 1979.

The first step in establishing a Reservation-wide management and coordination body is the organization of the Yurok Tribe. So that this may occur, I have directed that work begin immediately on a Yurok voters list and that the Yurok voters shall be accorded the opportunity to nominate and select an interim Yurok Committee. The Department will deal and work with this Committee under a temporary grant of authority so that as soon as possible they might avail themselves of those benefits afforded to Indian tribes. However, we foresee that the Committee's primary responsibility will be to draft a proposed Yurok Tribal constitution. This document would then be placed before the

Yurok people for their adoption or rejection in an election called for that purpose by the Secretary of the Interior. Once the Yurok Tribe is formally organized and functioning in accordance with its governing document, its membership roll may be certified. After certification of the roll, I will make trust funds available for the use of the Yurok Tribe which have been set aside since 1974. Subject to the usual Secretarial approval, these funds may be used for per capita payments or other purposes, as the Yurok Tribe may determine.

The present 70%/30% split of Reservation trust income will continue until February 1, 1979, when a single Reservation account will be established. When the Reservation-wide body is formally established, it will determine, under this general trust authority of the Secretary, the use of funds flowing into this account. Until this Reservation-wide body is established, only the amount necessary for essential organizational and administrative purposes of the Tribes will be made available in amounts approved by the Secretary. No per capita payments will be made from this account until the Reservation-wide body is established.

This course of action is consistent with my commitment to the people of the Hoopa Valley Indian Reservation to do all within my power to assist you in your attainment of self-determination goals and responsibilities. It embodies the indispensable first steps toward the realization of self-determination on the Hoopa Valley Reservation.

Forrest J. Gerard
Assistant Secretary - Indian Affairs

INT 744-79

II

100TH CONGRESS
2D SESSION

# S. 2723

To partition certain reservation lands between the Hoopa Valley Tribe and the Yurok Indians, to clarify the use of tribal timber proceeds, and for other purposes.

---

IN THE SENATE OF THE UNITED STATES

AUGUST 10, 1988

Mr. CRANSTON introduced the following bill; which was read twice and referred to the Select Committee on Indian Affairs

---

# A BILL

To partition certain reservation lands between the Hoopa Valley Tribe and the Yurok Indians, to clarify the use of tribal timber proceeds, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE AND DEFINITIONS.**

(a) SHORT TITLE.—This Act may be cited as the "Hoopa-Yurok Settlement Act".

(b) DEFINITIONS.—For the purposes of this Act, the term—

(1) "Escrow funds" means the moneys derived from the joint reservation which are held in trust by the Secretary in the accounts entitled—

(A) "Proceeds of Labor-Hoopa Valley Indians-California 70 percent Fund, account number J52-561-7197";

(B) "Proceeds of Labor-Hoopa Valley Indians-California 30 percent Fund, account number J52-561-7236";

(C) "Proceeds of Klamath River Reservation, California, account number J52-562-7056";

(D) "Proceeds of Labor-Yurok Indians of Lower Klamath River, California, account number J52-562-7153";

(E) "Proceeds of Labor-Yurok Indians of Upper Klamath River, California, account number J52-562-7154";

(F) "Proceeds of Labor-Hoopa Reservation for Hoopa Valley and Yurok Tribes, account number J52-575-7256"; and

(G) "Klamath River Fisheries, account number 5628000001";

(2) "Hoopa Indian blood" means that degree of ancestry derived from an Indian of the Hunstang, Hupa, Miskut, Redwood, Saiaz, Sermalton, Tish-Tang-Atan, South Fork, or Grouse Creek Bands of Indians;

(3) "Hoopa Valley Reservation" means the reservation described in section 2(b) of this Act;

(4) "Hoopa Valley Tribe" means the Hoopa Valley Tribe, organized under the constitution and amendments approved by the Secretary on November 20, 1933, September 4, 1952, August 9, 1963, and August 18, 1972;

(5) "Indian of the Reservation" shall mean any person who meets the criteria to qualify as an Indian of the Reservation as established by the United States Court of Claims in its March 31, 1982, May 17, 1987, and March 1, 1988, decisions in the case of Jesse Short et al. v. United States, (Cl. Ct. No. 102–63);

(6) "Joint reservation" means the area of land defined as the Hoopa Valley Reservation in section 2(b) and the Yurok Reservation in section 2(c) of this Act.

(7) "Karuk Tribe" means the Karuk Tribe of California, organized under its constitution after a special election conducted by the United States Department of the Interior, Bureau of Indian Affairs, on April 18, 1985;

(8) "Secretary" means the Secretary of the Interior;

(9) "Settlement Fund" means the Hoopa-Yurok Settlement Fund established pursuant to section 4;

(10) "Settlement Roll" means the final roll prepared and published in the Federal Register by the Secretary pursuant to section 5;

(11) "Short cases" means the cases entitled Jesse Short et al. v. United States, (Cl. Ct. No. 102–63); Charlene Ackley v. United States, (Cl. Ct. No. 460–78); Bret Aanstadt v. United States, (Cl. Ct. No. 146–S5L); and Norman Giffen v. United States, Cl. Ct. No. 746–85L);

(12) "Short plaintiffs" means named plaintiffs in the Short cases;

(13) "trust land" means an interest in land the title to which is held in trust by the United States for an Indian or Indian tribe, or by an Indian or Indian tribe subject to a restriction by the United States against alienation;

(14) "unallotted trust land, property, resources or rights" means those lands, property, resources, or rights reserved for Indian purposes which have not been allotted to individuals under an allotment Act;

(15) "Yurok Reservation" means the reservation described in section 2(c) of this Act; and

(16) "Yurok Tribe" means the Indian tribe which is recognized and authorized to be organized pursuant to section 9 of this Act.

**SEC. 2. RESERVATIONS; PARTITION AND ADDITIONS.**

(a) PARTITION OF THE JOINT RESERVATION.—(1) Effective with the publication in the Federal Register of the Hoopa tribal resolution as provided in paragraph (2), the joint reservation shall be partitioned as provided in subsection (b) and (c).

(2)(A) The partition of the joint reservation as provided in this subsection shall not become effective unless, within 60 days after the date of the enactment of this Act, the Hoopa Valley Tribe shall adopt, and transmit to the Secretary, a tribal resolution waiving any claim such tribe may have against the United States arising out of the provisions of this Act.

(B) The Secretary, after determining the validity of the resolution transmitted pursuant to subparagraph (A), shall cause such resolution to be printed in the Federal Register.

(b) HOOPA VALLEY RESERVATION.—Effective with the partition of the joint reservation as provided in subsection (a), the area of land known as the "square" (defined as the Hoopa Valley Reservation established under section 2 of the Act of April 8, 1864 (13 Stat. 40), the Executive order of June 23, 1876, and Executive Order 1480 of February 17, 1912) shall thereafter be recognized and established as the Hoopa Valley Reservation. The unallotted trust land and assets of the Hoopa Valley Reservation shall thereafter be

held in trust by the United States for the benefit of the Hoopa Valley Tribe.

(c) YUROK RESERVATION.—(1) Effective with the partition of the joint reservation as provided in subsection (a), the area of land known as the "extension" (defined as the reservation extension under the Executive order of October 16, 1891, but excluding the Resighini Rancheria) shall thereafter be recognized and established as the Yurok Reservation. The unallotted trust land and assets of the Yurok Reservation shall thereafter to be held in trust by the United States for the benefit of the Yurok Tribe.

(2) Subject to all valid existing rights and subject to the adoption of a resolution of the Interim Council of the Yurok Tribe as provided in section 9(c)(2)(A), all right, title, and interest of the United States—

(A) to all national forest system lands within the Yurok Reservation and

(B) to that portion of the Yurok Experimental Forest described as Township 14 N., Range 1 E., Section 28, Lot 6: that portion of Lot 6 east of U.S. Highway 101 and west of the Yurok Experimental Forest, comprising 14 acres more or less and including all permanent structures thereon,

shall thereafter he held in trust by the United States for the benefit of the Yurok Tribe and shall be part of the Yurok Reservation.

(3)(A) Pursuant to the authority of sections 5 and 7 of the Indian Reorganization Act of June 18, 1934 (25 U.S.C. 465, 467), the Secretary may acquire lands or interests in land, including rights-of-way for access to trust lands, for the Yurok Tribe or its members.

(B) From amounts authorized to be appropriated by the Act of November 2, 1921 (42 Stat. 208; 25 U.S.C. 13), the Secretary may use not to exceed $5,000,000 for the purpose of acquiring lands or interests in lands pursuant to subparagraph (A). No lands or interests in lands may be acquired outside the Yurok Reservation with such funds except for puposes of exchange for lands within the reservation.

(4) The—

(A) apportionment of funds to the Yurok Tribe as provided in sections 4 and 7;

(B) the land transfers pursuant to paragraph (2);

(C) the land acquisition authorities in paragraph (3); and

(D) the organizational authorities of section 9 shall not be effective unless and until the general council of the Yurok Tribe has adopted a resolution waiving

any claim such tribe may have against the United States arising out of the provisions of this Act.

(d) BOUNDARY CLARIFICATIONS OR CORRECTIONS.—(1) The boundary between the Hoopa Valley Reservation and the Yurok Reservation, after the partition of the joint reservation as provided in this section, shall be the line established by the Bissel-Smith survey.

(2) Upon partition of the joint reservation as provided in this section, the Secretary shall publish a description of the boundaries of the Hoopa Valley Reservation and Yurok Reservations in the Federal Register.

(e) MANAGEMENT OF THE YUROK RESERVATION.—The Secretary shall be responsible for the management of the unallotted trust land and assets of the Yurok Reservation until such time as the Yurok Tribe has been organized pursuant to section 9. Thereafter, those lands and assets shall be administered as tribal trust land and the reservation governed by the Yurok Tribe as other reservations are governed by the tribes of those reservations.

(f) CRIMINAL AND CIVIL JURISDICTION.—The Hoopa Valley Reservation and the Yurok Reservation shall be subject to section 1360 of title 28, United States Code; section 1162 of title 18, United States Code, and section 403(a) of the Act of April 11, 1968 (82 Stat. 79; 25 U.S.C. 1323(a)).

**SEC. 3. PRESERVATION OF SHORT CASES.**

Nothing in this Act shall affect, in any manner, the individual entitlements already established under existing decisions of the United States Claims Court in the Short cases or any final judgment which may be rendered in those cases.

**SEC. 4. HOOPA-YUROK SETTLEMENT FUND.**

(a) ESTABLISHMENT.—(1) There is hereby established the Hoopa-Yurok Settlement Fund. Upon enactment of this Act, the Secretary shall cause all the funds in the Escrow funds, together with all accrued income thereon, to be deposited into the Settlement Fund.

(2) Until the distribution is made to the Hoopa Valley Tribe pursuant to section (c), the Secretary may distribute to the Hoopa Valley Tribe, pursuant to the provision of title I of the Department of the Interior and Related Agencies Appropriations Act, 1985, under the heading 'Bureau of Indian Affairs' and subheading 'Tribal Trust Funds' at 98 Stat. 1849 (25 U.S.C. 123c), not to exceed $3,500,000 each fiscal year out of the income or principal of the Settlement Fund for tribal, non-per capita purpose.

(b) DISTRIBUTION; INVESTMENT.—The Secretary shall make distribution from the Settlement Fund as provided in this Act and, pending dissolution of the fund as provided in section 7, shall invest and administer such fund as Indian trust funds pursuant to the first section of the Act of June 24, 1938 (52 Stat. 1037; 25 U.S.C. 162a).

(c) HOOPA VALLEY TRIBE PORTION.—Effective with the publication of the option election date pursuant to section 6(a)(3), the Secretary shall pay out of the Settlement Fund into a trust account for the benefit of the Hoopa Valley Tribe a percentage of the Settlement Fund which shall be determined by dividing the number of enrolled members of the Hoopa Valley Tribe as of the date of the promulgation of the Settlement Roll roll, including any persons enrolled pursuant to section 5, by the sum of the number of such enrolled Hoopa Valley tribal members and the number of persons on the Settlement Roll.

(d) YUROK TRIBE PORTION.—Effective with the publication of the option election date pursuant to section 6(a)(3), the Secretary shall pay out of the Settlement Fund into a trust account for the benefit of the Yurok Tribe a percentage of the Settlement Fund which shall be determined by dividing the number of persons on the Settlement Roll electing the Yurok Tribal Membership Option pursuant to section 6(c) by the sum of the number of the enrolled Hoopa Valley tribal members established pursuant to subsection (c) and the number of persons on the Settlement Roll, less any amount paid out of the Settlement Fund pursuant to section 6(c)(3).

(e) FEDERAL SHARE.—There is hereby authorized to be appropriated the sum of $10,000,000 which shall be deposited into the Settlement Fund after the payments are

made pursuant to subsections (c) and (d) and section 6(c). The Settlement Fund, including the amount deposited pursuant to this subsection and all income earned subsequent to the payments made pursuant to subsections (c) and (d) and section 6(c), shall be available to make the payments authorized by section (d).

**SEC. 5. HOOPA-YUROK SETTLEMENT ROLL.**

(a) PREPARATION; ELIGIBILITY CRITERIA.—(1) The Secretary shall prepare a roll of all persons who can meet the criteria for eligibility as an Indian of the Reservation and—

(A) who were born on or prior to, and living upon, the date of enactment of this Act;

(B) who are citizens of the United States; and

(C) who were not, on August 8, 1988, enrolled members of the Hoopa Valley Tribe.

(2) The Secretary's determination of eligibility under this subsection shall be final except that any Short plaintiff determined by the United States Claims Court to be an Indian of the Reservation shall be included on the Settlement Roll if they meet the other requirements of this subsection and any Short plaintiff determined by the United States Claims Court not to be an Indian of the Reservation shall not be eligible for inclusion on such roll.

(b) RIGHT TO APPLY; NOTICE.—Within thirty days after the date of enactment of this Act, the Secretary shall

give such notice of the right to apply for enrollment as provided in subsection (a) as he deems reasonable except that such notice shall include, but shall not be limited to—

(1) actual notice by registered mail to every plaintiff in the Short cases at their last known address;

(2) notice to the attorneys for such plaintiffs; and

(3) publication in newspapers of general circulation in the vicinity of the Hoopa Valley Reservation and elsewhere in the State of California.

Contemporaneous with providing the notice required by this subsection, the Secretary shall publish such notice in the Federal Register.

(c) APPLICATION DEADLINE.—The deadline for application pursuant to this section shall be established at one hundred and twenty days after the publication of the notice by the Secretary in the Federal Register as required by subsection (b).

(d) ELIGIBILITY DETERMINATION; FINAL ROLL.—(1) The Secretary shall make determinations of eligibility of applicants under this section and publish in the Federal Register the final Settlement Roll of such persons one hundred and eighty days after the date established pursuant to subsection (c).

(2) The Secretary shall develop such procedures and times as may be necessary for the consideration of appeals

from applicants not included on the roll published pursuant to paragraph (1). Successful appellants shall be added to the Settlement Roll and shall be afforded the right to elect options as provided in section 6, with any payments to be made to such successful appellants out of the remainder of the Settlement Fund after payments have been made pursuant to section 6(d) and prior to division pursuant to section 7.

(3) Persons added to the Settlement Roll pursuant to appeals under this subsection shall not be considered in the calculations made pursuant to section 4.

(e) Effect of Exclusion From Roll.—No person whose name is not included on the Settlement Roll shall have any interest in the tribal, communal, or unallotted land, property, resources, or rights within, or appertaining to, the Hoopa Valley Tribe, the Hoopa Valley Reservation, the Yurok Tribe, or the Yurok Reservation and in the Settlement Fund unless such person is subsequently enrolled in the Hoopa Valley Tribe or the Yurok Tribe under the membership criteria and ordinances of such tribes.

**SEC. 6. ELECTION OF SETTLEMENT OPTIONS.**

(a) Notice of Settlement Options.—(1) Within sixty days after the publication of the Settlement Roll as provided in section 5(d), the Secretary shall give notice by registered mail to each person eighteen years or older on such roll

of their right to elect the settlement options provided in this section.

(2) The notice shall be provided in easily understood language, but shall be as comprehensive as possible and shall provide an objective assessment of the advantages and disadvantages of each of the options offered. The notice shall also advise such persons that their election shall be deemed to be the election of the minor children under their guardianship who are also on the Settlement Roll.

(3) With respect to minors on the Settlement Roll whose parent or guardian is not also on the roll, notice shall be given to, and the necessary election made by, the parent or guardian of such minor.

(4)(A) The notice shall also establish the date by which time the election of an option under this section must be made. The Secretary shall establish that date as the date which is one hundred and twenty days after the date of the publication in the Federal Register as required by section 5(d).

(B) Any person on the Settlement Roll who has not made an election by the date established pursuant to subparagraph (A) shall be deemed to have elected the option provided in subsection (d).

(b) HOOPA TRIBAL MEMBERSHIP OPTION.—(1) Any person on the Settlement Roll, eighteen years or older, who

can meet any of the enrollment criteria of the Hoopa Valley Tribe set out in the decision of the United States Court of Claims in its March 21, 1982, decision in the Short case (No. 102–63) as "Schedule A", "Schedule B", or "Schedule C" and who—

(A) maintained a residence on the Hoopa Valley Reservation on the date of enactment of this Act;

(B) had maintained a residence on the Hoopa Valley Reservation at any time within the five year period prior to the enactment of this Act; or

(C) owns an interest in real property on the Hoopa Valley Reservation on the date of enactment of this Act,

my elect to be, and, upon such election, shall be entitled to be, enrolled as a full member of the Hoopa Valley Tribe.

(2) Notwithstanding any provision of the constitution, ordinances or resolutions of the Hoopa Valley Tribe to the contrary, the Secretary shall cause any entitled person electing to be enrolled as a member of the Hoopa Valley Tribe to be so enrolled and such person shall thereafter be entitled to the same rights, benefits, and privileges as any other member of such tribe.

(3) Any person enrolled in the Hoopa Valley Tribe pursuant to this subsection shall be assigned by the Secretary that quantum of "Indian blood" or "Hoopa Indian blood", as

appropriate, as may be determined pursuant to the criteria established in the March 31, 1982, decision of the United States Court of Claims in the case of Jessie Short et al. v. United States, (Cl. Ct. No. 102-63).

(4) Any person making an election under this subsection shall no longer have any right or interest whatsoever in the tribal, communal, or unallotted land, property, resources, or rights within, or appertaining to, the Yurok Indian Reservation or the Yurok Tribe or in the Settlement Fund.

(c) YUROK TRIBAL MEMBERSHIP OPTION.—(1) Any person on the Settlement Roll may elect to become a member of the Yurok Tribe and shall be entitled to participate in the organization of such tribe as provided in section 9.

(2) All persons making an election under this subsection shall form the base roll of the Yurok Tribe for purposes of organization pursuant to section 9 and the Secretary shall assign each such person that quantum of "Indian blood" as may be determined pursuant to the criteria established in the March 31, 1982, decision of the United States Court of Claims in the case of Jessie Short et al. v. United States, (Cl. Ct. No. 102-63).

(3) The Secretary, pursuant to section 7 of the Act of August 2, 1983 (25 U.S.C. 1407), shall pay to each person making an election under this subsection, $3,000 out of the Settlement Fund.

(4) Any person making an election under this subsection shall no longer have any right or interest whatsoever in the tribal, communal, or unallotted land, property, resources, or rights within, or appertaining to, the Hoopa Valley Reservation or the Hoopa Valley Tribe or, except to the extent authorized by paragraph (3), in the Settlement Fund.

(d) LUMP SUM PAYMENT OPTION.—(1) Any person on the Settlement Roll may elect to receive a lump sum payment from the Settlement Fund and the Secretary shall pay to each such person the amount of $20,000 out of the Settlement Fund.

(2) Any person making an election to receive, and having received, a lump sum payment under this subsection shall not thereafter have any interest or right whatsoever in the tribal, communal, or unallotted land, property, resources, or rights within, or appertaining to, the Hoopa Valley Reservation, the Hoopa Valley Tribe, the Yurok Reservation, or the Yurok Tribe or, except authorized by paragraph (1), in the Settlement Fund.

**SEC. 7. DIVISION OF SETTLEMENT FUND REMAINDER.**

(a) Any funds remaining in the Settlement Fund after the payments authorized to be made therefrom by subsections (c) and (d) of section 6 and any payments made to successful appellants pursuant to section 5(d) shall be evenly divided

between the Hoopa Valley Tribe and the Yurok Tribe and shall be held by the Secretary in trust for such tribes.

(b) Funds divided pursuant to this section and any funds apportioned to the Hoopa Valley Tribe and the Yurok Tribe pursuant to subsections (c) and (d) of section 4 shall not be distributed per capita to any individual before the date which is 10 years after the date on which the division is made under this section.

**SEC. 8. HOOPA VALLEY TRIBE; CONFIRMATION OF STATUS.**

The existing governing documents of the Hoopa Valley Tribe and the governing body established and elected thereunder, as heretofore recognized by the Secretary, are hereby ratified and confirmed.

**SEC. 9. RECOGNITION AND ORGANIZATION OF THE YUROK TRIBE.**

(a) YUROK TRIBE.—(1) Those persons on the Settlement Roll who made a valid election pursuant to subsection (c) of section 6 shall constitute the base membership roll for the Yurok Tribe whose status as an Indian tribe, subject to the adoption of the general council resolution as required by subsection (c)(2), is hereby ratified and confirmed.

(2) The Indian Reorganization Act of June 18, 1934 (48 Stat. 984; 25 U.S.C. 461 et seq.), as amended, is hereby made applicable to the Yurok Tribe and the tribe may organize under such Act as provided in this section.

(b) INTERIM COUNCIL; ESTABLISHMENT.—There shall be established an Interim Council of the Yurok Tribe to be composed of five members. The Interim Council shall represent the Yurok Tribe in the implementation of provisions of this Act, including the organizational provisions of this section, and shall be the governing body of the tribe until such time as a tribal council is elected under the constitution adopted pursuant to subsection (e).

(c) GENERAL COUNCIL; ELECTION OF INTERIM COUNCIL.—(1) Within 30 days after the date established pursuant to section 6(a)(3), the Secretary shall prepare a list of all persons eighteen years of age or older who have elected the Yurok Tribal Membership Option pursuant to section 6(c), which persons shall constitute the eligible voters of the Yurok Tribe for the purposes of this section, and shall provide written notice to such persons of the date, time, purpose, and order of procedure for the general council meeting to be scheduled pursuant to paragraph (2) for the consideration of the adoption of the resolution provided for in paragraph (2)(A) and the nomination of candidates for election to the Interim Council.

(2) Not earlier than 30 days before, nor later than 45 days after, the notice provided pursuant to paragraph (1), the Secretary shall convene a general council meeting of the eligible voters of the Yurok Tribe on or near the Yurok Reser-

vation, to be conducted under such order of procedures as the Secretary determines appropriate, for—

(A) the adoption of a resolution, by a vote of not less than two-thirds of the voters present and voting, waiving any claim the Yurok Tribe may have against the United States arising out of the provisions of this Act; and

(B) the nomination of candidates for election of the members of the Interim Council.

No person shall be eligible for nomination who is not on the list prepared pursuant to this section.

(3) Within 45 days after the general council meeting held pursuant to paragraph (2), the Secretary shall hold an election by secret ballot, with absentee balloting and write-in voting to be permitted, to elect the five members of the Interim Council from among the nomination submitted to him from such general council meeting. The Secretary shall assure that notice of the time and place of such election shall be provided to eligible voters at least fifteen days before such election.

(4) The Secretary shall certify the results of such election and, as soon as possible, convene an organizational meeting of the newly-elected members of the Interim Council and shall provide such advice and assistance as may be necessary for such organization.

(5) Vacancies on the Interim Council shall be filled by a vote of the remaining members.

(d) INTERIM COUNCIL; AUTHORITIES AND DISSOLUTION.—(1) The Interim Council shall have no powers other than those given to it by this Act.

(2) The Interim Council shall have full authority to receive grants from, and enter into contracts for, Federal programs, including those administered by the Secretary and the Secretary of Health and Human Services, with respect to Federal services and benefits for the tribe and its members.

(3) The Interim Council shall have such other powers, authorities, functions, and responsibilities as the Secretary may recognize, except that it may not legally or contractually bind the Yurok Tribe for a period in excess of two years from the date of the certification of the election by the Secretary.

(4) The Interim Council shall appoint, as soon as practical, a drafting committee which shall be responsible, in consultation with the Interim Council, the Secretary and members of the tribe, for the preparation of a draft constitution for submission to the Secretary pursuant to subsection (e).

(5) The Interim Council shall be dissolved effective with the election and installation of the initial tribe governing body elected pursuant to the constitution adopted under subsection

(c) or at the end of two years after such installation, whichever occurs first.

(e) ORGANIZATION OF YUROK TRIBE.—Upon written request of the Interim Council or the drafting committee and the submission of a draft constitution as provided in paragraph (4) of subsection (d), the Secretary shall conduct an election, pursuant to the provisions of the Indian Reorganization Act of June 18, 1934 (25 U.S.C. 461 et seq.) and rules and regulations promulgated thereunder, for the adoption of such constitution and, working with the Interim Council, the election of the initial tribal governing body upon the adoption of such constitution.

**SEC. 10. SPECIAL CONSIDERATIONS.**

(a) LIFE ESTATE FOR SMOKERS FAMILY.—The 20 acre land assignment on the Hoopa Valley Reservation made by the Hoopa Area Field Office of the Bureau of Indian Affairs on August 25, 1947, to the Smokers family shall continue in effect and may pass by descent or devise to any blood relative or relatives of one-fourth or more Indian blood of those family members domiciled on the assignment on the date of enactment of this Act.

(b) RANCHERIA MERGER WITH YUROK TRIBE.—If two-thirds of the adult members of the Resighini, Trinidad, Big Lagoon, Blue Lake, Smith River, Elk Valley, or Tolowa Rancherias vote in an election conducted by the Secretary to

merge with the Yurok Tribe and if the Yurok Tribe consents to such merger, the tribes and reservations of those rancherias so voting shall be extinguished and the lands of such reservations shall be part of the Yurok Reservation with the unallotted trust land therein held in trust by the United States for the Yurok Tribe. The Secretary shall publish in the Federal Register a notice of the effective date of the merger.

**SEC. 11. KLAMATH RIVER BASIN FISHERIES TASK FORCE.**

(a) IN GENERAL.—Section 4(c) of the Act entitled "An Act to provide for the restoration of the fishery resources in the Klamath River Basin, and for other purposes" (16 U.S.C. 460ss–3) is amended—

(A) in the matter preceding paragraph (1), by striking out "12" and inserting in lieu thereof "14"; and

(B) by inserting at the end thereof the following new paragraphs:

"(11) A representative of the Karuk Tribe, who shall be appointed by the governing body of the Tribe,

"(12) A representative of the Yurok Tribe, who shall be appointed by the Secretary until such time as the Yurok Tribe is established and federally recognized, upon which time the Yurok Tribe shall appoint such representative beginning with the first appoint-

ment ordinarily occurring after the Yurok Tribe is recognized.".

(b) SPECIAL RULE.—The initial term of the representative appointed pursuant to section 4(c)(11) and (12) of such Act (as added by the amendment made by subsection (a)) shall be for that time which is the remainder of the terms of the members of the Task Force then serving. Thereafter, the term of such representatives shall be as provided in section 4(e) of such Act.

**SEC. 12. TRIBAL TIMBER SALES PROCEEDS USE.**

Section 7 of the Act of June 25, 1910 (36 Stat. 857; 25 U.S.C. 407) is amended to read as follows:

"SEC. 7. Under regulations prescribed by the Secretary of the Interior, the timber on unallotted trust land in Indian reservations or on other land held in trust for tribes may be sold in accordance with the principles of sustained-yield management or to convert the land to a more desirable use. After deduction, if any, for administrative expenses under the Act of February 14, 1920 (41 Stat. 415; 25 U.S.C. 413), the proceeds of the sale shall be used—

"(1) as determined by the governing bodies of the tribes concerned and approved by the Secretary, or

"(2) in the absense of such a governing body, as determined by the Secretary for the tribe concerned.

**SEC. 13. LIMITATIONS OF ACTIONS; WAIVER OF CLAIMS.**

(a) Any claim challenging the partition of the joint reservation pursuant to section 2 or any other provision of this Act as having effected a taking under the fifth amendment of the United States Constitution or as otherwise having provided inadequate compensation shall be brought, pursuant to 28 U.S.C. 1491 or 28 U.S.C. 1505, in the United States Claims Court.

(b)(1) Any such claim by any person or entity, other than the Hoopa Valley Tribe or the Yurok Tribe, shall be forever barred if not brought within the later of 210 days from the date of the partition of the joint reservation as provided in section 2 or 120 days after the publication in the Federal Register of the option election date as required by section 6(a)(4).

(2) Any such claim by the Hoopa Valley Tribe shall be barred 180 days after the date of enactment of this Act or such early date as may be established by the adoption of a resolution waiving such claims pursuant to section 2(a)(2).

(3) Any such claim by the Yurok Tribe shall be barred 180 days after the general council meeting of the Yurok Tribe as provided in section 9 or such early date as may be established by the adoption of a resolution waiving such claims as provided in section 9(c)(2)(A).

(c)(1) The Secretary shall prepare and submit to the Congress a report describing the final decision in any claim

brought pursuant to subsection (b) against the United States or its officers, agencies, or instrumentalities.

(2) Such report shall be submitted no later than 180 days after the entry of final judgment in such litigation. The report shall include any recommendations of the Secretary for action by Congress, including, but not limited to, any supplemental funding proposals necessary to implement the terms of this Act and any modifications to the resource and management authorities established by this Act.

O