IN THE UNITED STATES CLAIMS COURT

| | |
|---|---|
| YUROK INDIAN TRIBE<br>v.<br>UNITED STATES OF AMERICA | No. 92-173 L |

JURISDICTION

1. The Claims Court has jurisdiction of this action pursuant to 28 U.S.C. §§1491 and/or 1505, in that plaintiff, a federally-recognized Indian Tribe, asserts claims for just compensation under the Fifth Amendment to the Constitution of the United States for the taking of compensable property and property rights of the Yurok Tribe by the United States under the Hoopa-Yurok Settlement Act of 1988, 102 Stat. 2924, Pub. Law No. 100-580, 25 U.S.C. §1300i, et seq. (hereinafter, "the Act").

PLAINTIFF

2. Plaintiff is the Yurok Indian Tribe, an American Indian Tribe recognized by the United States of America, located in the State of California and having a governing body duly recognized by the Secretary of the Interior. The Yurok Tribe sues on its own behalf, and upon behalf of its members.

FACTS

3. By the Act of April 8, 1864, 13 Stat. 39, Congress authorized the President, inter alia, to set apart not exceeding four tracts of land within the State of California for the purposes of Indian reservations, at least one of which was to be

in the State's northern district, of such extent as deemed suitable for the accommodation of all of the Indians of the State.

4. On February 18, 1865, the authorized representative of the Secretary of the Interior, the Superintendent of Indian Affairs for the State of California, located an Indian Reservation on a tract of land twelve miles square, described in general terms as beginning at a point where the Trinity River flows into Hoopa Valley and following down said stream, extending six miles on each side thereof, to its junction with the Klamath River. This tract, comprising approximately 89,572 acres, is known and will be referred to herein as "the Square."

5. By an Executive Order dated June 23, 1876, President Grant withdrew the Square from public sale and set it apart for Indian purposes as one of the permanent Indian Reservations authorized by the Act of April 8, 1864, 13 Stats. 39. The Yurok Tribe was one of the Tribes which the President intended should benefit from the establishment of the Square as a Reservation.

6. The setting apart of the Square as a Reservation reserved to the Indian beneficiaries thereof not only beneficial title to the lands, but also the right to hunt, fish, gather and otherwise use and benefit from all of the natural resources and other assets of the Reservation.

7. From its location in 1865 until the present, the Square has been recognized by the federal government as an existing Indian Reservation; its original boundaries were defined by

metes and bounds in President Grant's June 23, 1876 Executive Order.

8. By an Executive Order issued on October 16, 1891, President Harrison extended the boundaries of the Reservation comprising the Square to encompass, "... a tract of country one mile in width on each side of the Klamath River, and extending from the present limits of the said Hoopa Valley reservation to the Pacific Ocean; Provided, however, That any tract or tracts included within the above described boundaries to which valid rights have attached under the laws of the United States are hereby excluded from the reservation as hereby extended."

9. The purpose of the October 16, 1891 Executive Order described in Paragraph 8 above was to create an enlarged, single, integrated reservation incorporating without distinction the added and original tracts upon which the Indians populating the newly-added lands should reside on an equal footing with the Indians theretofore resident upon it. Yurok Indians predominated in the lands added to the Reservation by the above-described Executive Order; however, a substantial number of Yurok Indians have resided and continue to reside on the Square itself, and the Indians of the Yurok Tribe have been recognized as being entitled to rights on the Reservation at least equal to those of the Indians of the Hoopa Valley Tribe.

10. The Hoopa-Yurok Settlement Act, P.L. 100-580, 25 U.S.C. §1300i, <u>et seq.</u> (hereinafter, "the Act"), authorized the partition of the Hoopa Valley Reservation and its resources into

separate Yurok and Hoopa Reservations solely upon the consent of the Hoopa Valley Tribe. As partitioned under the Act, the Hoopa Valley Reservation was to consist of the Hoopa Square, the approximately 87,000 acres of unallotted trust land within the Square which would be held in trust by the United States for the exclusive use and benefit of the Hoopa Valley Tribe. As partitioned under the Act, the Yurok Reservation was to consist of the Extension, the approximately 3,500 acres of unallotted trust lands within the Extension which would be held in trust by the United States for the exclusive use and benefit of the Yurok Tribe.

11. The Act created a "Hoopa-Yurok Settlement Fund" consisting of money derived from several different sources, including timber sales on the Square. The money in this fund was to be distributed to the Hoopa Valley Tribe, to persons choosing to join the Yurok Tribe, to persons choosing to join neither the Hoopa Valley nor the Yurok Tribe, and to the Yurok Tribe.

12. Partition of the Reservation under the Act was to extinguish all rights in the unallotted trust lands and other assets of the Square possessed by individual Indians of the Reservation who were not enrolled members of the Hoopa Valley Tribe.

13. The Act conditioned the Yurok Tribe's receipt of financial and other benefits under the Act upon the Yurok Tribe's disclaimer of any rights in the unallotted lands, resources and other assets of the Square, as well as a waiver of any claims

against the United States arising out of the Act.

14. The Hoopa Valley Tribe consented to the partition of the Reservation as contemplated by the Act, and the Reservation was partitioned in the manner authorized by the Act. By reason of that partition, the United States now recognizes the Hoopa Valley Tribe as the exclusive beneficiary of the unallotted trust lands and other assets and natural resources of the Square, and has excluded the Yurok Tribe, the members of the Yurok Tribe and all other Indians of the Reservation who are not enrolled in the Hoopa Valley Tribe from participating in the benefits of such assets and resources.

FIRST CLAIM FOR RELIEF

Uncompensated Taking of Property Rights in the Square

15. Plaintiff hereby realleges each of the allegations contained in paragraphs 1-14 above, and by this reference incorporates each such allegation as if set forth in full.

16. Prior to the partition of the Reservation pursuant to the Act, the Yurok Tribe had no fewer or less valuable compensable property rights in the unallotted trust lands and the natural resources of the Square than did the Hoopa Valley Tribe.

17. By reason of its compensable property rights in the unallotted trust land and natural resources of the Square, the Yurok Tribe was and is entitled to just compensation for the diminishment or extinguishment of those rights.

18. The Hoopa-Yurok Settlement Act extinguished or diminished the Yurok Tribe's compensable property rights in the

unallotted trust land and natural resources of the Square without payment of just compensation.

19. The United States is liable to the Yurok Tribe in an amount equal to the value of the Yurok Tribe's compensable property rights in the unallotted trust land and natural resources of the Square which were diminished or extinguished by the Act and for which just compensation has not been paid, plus interest from the date of taking, said amount to be proven at trial.

WHEREFORE, plaintiff prays that the Court enter judgment awarding the Yurok Tribe just compensation for the taking of its compensable property rights in the Hoopa Valley Indian Reservation in an amount corresponding to proof, plus interest from the date of taking, and that the Court grant such other relief, including an award of reasonable attorneys' fees, expenses and costs, as it may deem just and appropriate.

Dated: March 10, 1992

GEORGE FORMAN
ALEXANDER & KARSHMER
1900 Addison Street, Ste. 200
Berkeley, CA 94704
Telephone: (510) 841-5056
PAUL ALEXANDER
BARBARA E. KARSHMER, a
Professional Corporation
GARY P. HARRINGTON
Of Counsel

# United States Department of the Interior

OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20240

APR 13 1992

Honorable Dale Risling, Sr.
Chairman, Hoopa Valley
Tribal Council
P.O. Box 1348
Hoopa, California 95546

Dear Chairman Risling:

Thank you for your letter of March 12, 1992, concerning the Yurok Interim Council's decision to file Yurok Tribe v. United States in the U.S. Claims Court.

The Hoopa-Yurok Settlement Act, 25 U.S.C. § 1300i-8(d)(2)(i), authorizes the Interim Council to adopt a resolution waiving any claim the Yurok Tribe may have against the United States arising out of the provisions of the Settlement Act. Section 2(c)(4) of the Settlement Act, 25 U.S.C. § 1300i-1(c)(4), spells out the consequences to the Yurok Tribe of refusing to adopt such a resolution. It provides as follows:

> The --
> (A) apportionment of funds to the Yurok Tribe as provided in sections 1300i-3 and 1300i-6 of this title;
> (B) the land transfers pursuant to paragraph (2);
> (C) the land acquisition authorities in paragraph (3); and
> (D) the organizational authorities of section 1300i-8 of this title
> shall not be effective unless and until the Interim Council of the Yurok Tribe has adopted a resolution waiving any claim such tribe may have against the United States arising out of the provisions of this subchapter.

It is clear that the Interim Council's decision to file the above-referenced claim in the U.S. Claims Court means that the same consequences follow as if it fails to enact a resolution waiving claims against the United States. Therefore, unless and until the Interim Council waives the Tribe's claims and dismisses its case against the United States, it will neither have access to its portion of the Settlement Fund, nor will title to all national forest system lands within the Yurok Reservation, and to the portion of the Yurok Experimental Forest described in the Settlement Act, be taken in trust for the Yurok Tribe. In addition, the Secretary will be unable to proceed with acquisition of any lands or interests in land for the Yurok Tribe, or with spending any appropriated funds for this purpose.

At this time, we cannot grant your request to establish Hoopa tribal access to the funds that remain in the Hoopa-Yurok Settlement Fund as a result of the filing of Yurok Tribe v. United States. We have not made a final determination concerning the legal status of these funds in the absence of a Yurok tribal resolution waiving claims against the United States, and this issue will be referred to the Solicitor's Office for an opinion. We will advise you of our determination once the legal evaluation is completed.

Please let us know if we can be of any further assistance in this matter.

Sincerely,

Assistant Secretary - Indian Affairs

APR 15 1992

Honorable Richard Haberman
Chairman, Interim Council
of the Yurok Tribe
517 Third, Suite 21
Eureka, California 95501

Dear Chairman Haberman:

Thank you for your letter of March 16, 1992, enclosing your submitted testimony before the Subcommittee on Interior and Related Agencies of the Appropriations Committee, the complaint in Yurok Indian Tribe v. United States, and a proposed amendment extending the statute of limitations in Section 14 of the Hoopa-Yurok Settlement Act, 25 U.S.C. § 1300i-11(b)(3).

Although we fully understand your reasons for filing a claim in the U.S. Claims Court and for seeking to amend the Hoopa-Yurok Settlement Act to extend the limitations period in Section 14 of the Settlement Act, as you are well aware, the Department of the Interior cannot commit the Administration to support any legislative proposal which has yet to be formally introduced.

We agree with your statement that it is inappropriate for any tribal entity other than the Yurok Interim Council to involve itself in the internal affairs of the Yurok Tribe, and assure you that the Bureau of Indian Affairs will not tolerate any pressure to foster outside interests at the expense of those of the Yurok Tribe.

We also agree with your assessment of the consequences to the Yurok Tribe of failing to pass an ordinance waiving claims against the United States, and filing a claim in the U.S. Claims Court. Unless and until the Interim Council waives the Tribe's claims and dismisses its case against the United States, it will neither have access to its portion of the Settlement Fund, nor will title to all national forest system lands within the Yurok Reservation, and to the portion of the Yurok Experimental Forest described in the Settlement Act, be taken in trust for the Yurok Tribe. In addition, the Secretary will be unable to proceed with acquisition of any lands or interests in land for the Yurok Tribe, or with spending any appropriated funds for this purpose. Finally, the Yurok Tribe will be unable to organize under the Indian Reorganization Act (IRA). However, we agree with you that your decision to file a claim in the U.S. Claims Court does not

affect your access to appropriated funds which may be provided for the Interim Council's operations, grants and contracts, and the economic planning activity.[1] In addition, as stated in the Assistant Solicitor's opinion dated February 3, 1992, the Settlement Act does not restrict the Tribe to organizing under the IRA, and you may therefore organize outside of its provisions.

Finally, we have not made any final determination concerning the legal status of the funds that remain in the Hoopa-Yurok Settlement Fund, and what will happen to them in the absence of a Yurok tribal resolution waiving claims against the United States. We certainly have not agreed to allow the Hoopa Valley Tribe to access these funds. This issue will be referred to the Solicitor's Office for an opinion, and we will advise you of our determination once the legal evaluation is completed.

Please let us know if we can be of any further assistance in this matter.

Sincerely,

(sgd) William D. Bettenberg
Acting Assistant Secretary - Indian Affairs

cc: Sacramento Area Director
Supt., Northern California Agency

[1]The Settlement Act does require the adoption of a resolution "to receive grants from, and enter into conracts for, Federal programs including those administered by the Secretary and the Secretary of Health and Human Services, with respect to Federal services and benefits for the tribe and its members." 25 U.S.C. § 1300i-8 (d)(2)(iii). As stated in the Assistant Solicitor's opinion of February 3, 1992, such a resolution may be adopted independently of the resolution waiving claims against the United States.

YUROK TRIBE

INTERIM COUNCIL

P.O. Box 218 • Klamath, CA 95548
(707) 482-2921 (800) 334-6689
FAX (707) 482-9465

517 Third, Suite 21 • Eureka, CA 95501
(707) 444-0433 (800) 848-8765
FAX (707) 444-0437

August 20, 1993

Honorable Ada Deer
Assistant Secretary- Indian Affairs
Department of the Interior
18th and C Sts., N.W.
Washington, D.C.

Dear Secretary Deer,

The Yurok Tribe is pleased to congratulate you on your recent confirmation and swearing-in as our primary trustee. We are aware of your many accomplishments and strong advocacy for tribal rights and are confident you will have a beneficial and historic tenure.

As you may be aware, the Yurok tribe has been struggling through the Courts, Congress and the Administration to put in place a viable and permanent Tribal government. As you also may be aware, we believe that the Hoopa-Yurok Settlement Act was extremely one-sided and particularly unfair to the Yurok tribe, who at the time of the Act was unorganized. We have filed a fifth amendment claim in the United States Claims Court, as provided for in the Act, to press our views. We have not and will not make any claim against the current Hoopa Valley Reservation or the Hoopa Valley Tribe; our claim is against the United States.

In spite of concerns about the Act, the Yurok people have vigorously pursued organizing the Tribe. The Interim Council appointed a constitutional drafting committee, hired Charles Wilkinson and Paul Alexander to assist us with constitution drafting, and we have held numerous community meetings to solicit input. We had obtained Dr. Brown's commitment to hold an expedited election to approve the constitution under the Secretary's general authority.

Unfortunately, four members of the eight member Constitution drafting committee prematurely submitted to the BIA a draft constitution under the provisions of the Hoopa-Yurok Settlement Act for an IRA review and election. The Settlement Act's IRA provisions are not activated unless and until the Tribe provides "waivers" under the Act. We have not provided such waivers, we will not provide such waivers during our term, and our draft constitution requires a

referendum of the Yurok people in order to provide such waivers. Simply put, the BIA has no authority to hold an election on the premature submission.

In any event, the constitution drafting committee, having completed its task, has been disbanded. The Council, by Resolution 93-33 on July 1, 1993 approved a draft Constitution and submitted it to the Northern California Agency on July 12, 1993. The Tribally submitted constitution is similar to that submitted to us by the drafting committee; however it was modified in several important aspects before it was approved by the council.

We hereby withdraw the prematurely submitted draft constitution and request that the BIA return it to the Council. We reiterate our request that the process for initiating a ratification election for the Council submitted Constitution be expedited. We expect the voters to consider only one constitution draft at the ratification election. To do otherwise would engender confusion and would constitute an undue interference with tribal powers of self-government.

We look forward to visiting with you soon and exploring the many important issues facing our Tribe. Your counsel and experience will no doubt be beneficial to our efforts.

Sincerely Yours,

Susie L. Long, Vice-Chair
Interim Tribal Council

cc: Ron Jaeger, BIA/SAO
Amy Dutschke, BIA/SAO
George Skibine, BIA/Solicitor

United States Department of the Interior

TAKE PRIDE IN AMERICA

OFFICE OF THE SECRETARY
Washington, D.C. 20240

NOV 2 3 1993

Ms. Susie L. Long
Vice Chairman, Yurok Interim Council
517 Third, Suite 18
Eureka, California 95501

Dear Ms. Long:

Thank you for your letter of October 26, 1993, informing us of the decision of the Yurok Tribe (Tribe) to contract with an independent C.P.A. firm to conduct and certify the ratification election for the proposed Constitution of the Yurok Tribe, and forwarding us a copy of the draft constitution, dated October 22, 1993.

Please be assured of our support in your transition to a fully operational self-governing Tribe. We are prepared to recognize the proposed Constitution of the Yurok Tribe as the Tribe's governing document if such document is duly ratified by the membership of the Tribe in an election after adequate notice and a fair opportunity for all tribal members to participate. In addition, following ratification of the proposed constitution by the Yurok membership, and pursuant to Article XIV of the proposed Constitution of the Yurok Tribe, we will continue to recognize the current members of the Yurok Interim Council as the lawful representatives of the Tribe pending the election and installation of the Yurok Tribal Council.

However, it should be clearly understood that after November 25, 1993, the current members of the Yurok Interim Council will no longer derive their authority to represent the Tribe from powers vested in the Interim Council by the Hoopa Yurok Settlement Act, but from the newly adopted Constitution of the Yurok Tribe. Under section 9(d) of the Act, the Interim Council created under the authority of the Act will be dissolved on November 25, 1993. In that respect, the authority vested in the Interim Council by section 2(c)(4) of the Act to waive claims against the United States will expire on November 25, 1993. Any subsequent waiver of claims by the Tribe will be legally insufficient to effectuate the apportionment of funds to the Tribe as provided in sections 4 and 7 of the Act, the land transfers and land acquisition authorities under section 2 of the Act, or the organizational authorities of section 9 of the Act.

We look forward to working with you and offer our assistance in helping the Tribe organize and exercise its powers of self-government through the establishment of a tribal governmental structure for the Tribe.

Sincerely,

Ada E. Deer

Ada E. Deer
Assistant Secretary - Indian Affairs

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

APR 0 4 1994

Ms. Susie L. Long
Chair, Interim Tribal Council
Yurok Tribe
517 Third, Suite 18
Eureka, California 95501

Dear Ms. Long:

Thank you for your letter of November 24, 1993, transmitting Resolution No. 93-61, approved November 24, 1993, by the Yurok Tribe Interim Council, regarding the waiver of claims against the United States by the Yurok Tribe arising out of the provisions of the Hoopa-Yurok Settlement Act, 25 U.S.C. § 1300i _et seq._ For the following reasons, we conclude that Resolution No. 93-61 is not a resolution "waiving any claim the Yurok Tribe may have against the United States arising out of the provisions of the Hoopa-Yurok Settlement Act," within the meaning of 25 U.S.C. § 1300i-1(c)(4) or 25 U.S.C. § 1300i-8(d)(2).

Three provisions of the Hoopa-Yurok Settlement Act are relevant. Section 9(d)(2), 25 U.S.C. § 1300i-8(d)(2), provides in part:

> (2) The Interim Council shall have full authority to adopt a resolution -
>
> (i) waiving any claim the Yurok Tribe may have against the United States arising out of the provisions of this Act, and
>
> (ii) affirming tribal consent to the contribution of Yurok Escrow monies to the Settlement Fund, and for their use as payments to the Hoopa Tribe, and to individual Hoopa members, as provided in this Act ...

Substantially identical language appears in Section 2(c)(4), 25 U.S.C. § 1300i-1(c)(4). In addition, Section 14, 25 U.S.C. § 1300i-11, provides in part:

> (a) Any claim challenging the partition of the joint reservation pursuant to Section 2 or any other provision of this Act as having effected a taking under the fifth amendment of the United States Constitution or as otherwise having provided inadequate compensation shall be brought, pursuant 1 to section 1491 or 1505 of Title 28, in the United States Court of Federal Claims ...

(b) ...

> (3) Any such claim by the Yurok Tribe shall be barred 180 days after the general council meeting of the Yurok Tribe as provided in section 9 or such earlier date as may be established by the adoption of a resolution waiving such claims as provided in section 9(d)(2).

It is clear to us that the waiver referred to in the above-referenced provisions of the Hoopa-Yurok Settlement Act is a waiver of claims that would challenge the partition of the Joint Reservation or another provision of the Settlement Act as having effected a taking or as otherwise having provided inadequate compensation.

Among other things, Resolution No. 93-61 recites that:

> [T]he Interim Council believes that the Act's purported partition of the tribal, communal or unallotted land, property, resources, or rights within, or appertaining to the Hoopa Valley Reservation as between the Hoopa and Yurok Tribes was effected without any good-faith attempt to define, quantify or value the respective rights therein of the Indians of the Reservation or the Hoopa and Yurok Tribes, and so grossly and disproportionately favored the interest of the Hoopa Tribe over those of the Yurok Tribe as to constitute an act of confiscation rather than guardianship; and
>
> [T]he Interim Council does not believe that the Constitution of the United States would allow the federal government simply to confiscate vested Tribal or individual property rights in Reservation lands, resources or other assets without just compensation, or to condition participation in or receipt of federal benefits or programs and enjoyment of tribal property, assets and resources upon acquiescence in an unconstitutional statute.

Following the recitals, the Yurok Interim Council resolved as follows:

> 1. To the extent [to] which the Hoopa-Yurok Settlement Act is not violative of the rights of the Yurok Tribe or its members under the Constitution of the United States, or has not effected a taking without just compensation of vested Tribal or individual resources, or rights within, or appertaining to the Hoopa Valley Reservation, the Yurok Tribe hereby waives any claim which said Tribe may have against the United States arising out of the provisions of the Hoopa-Yurok Settlement Act;

> 2. To the extent [to] which the determination of the Yurok Tribe's share of the Escrow monies defined in the Hoopa-Yurok Settlement Act has not deprived the Tribe or its members of rights secured under the Constitution of the United States, the Yurok [Tribe] hereby affirms its consent to the contribution of Yurok Escrow monies to the Settlement Fund, and for their use as payments to the Hoopa Tribe, and to individual Hoopa members, as provided in the Hoopa-Yurok Settlement Act.

It is quite clear that Resolution No. 93-61 specifically preserves, rather than waives, the Yurok tribe's taking claim against the United States. Indeed, the Yurok Tribe has filed a claim in the U.S. Court of Federal Claims asserting that the Hoopa-Yurok Settlement Act effected a taking under the Fifth Amendment of the United States Constitution. See Yurok Indian Tribe v. United States, No. 92-173-L. On February 3, 1992, the Assistant Solicitor, Branch of General Indian Legal Activities, issued a memorandum to the Area Director, Sacramento Area Office, regarding issues raised at the organizational meeting of the Yurok Interim Council held November 25, 26, 1991. That memorandum discussed several aspects of the claim waiver resolution issue. The Assistant Solicitor stated:

> It is clear that should the Interim Council file a claim in the U.S. Claims Court on behalf of the Yurok Tribe pursuant to 25 U.S.C. § 1300i-11(a), the same consequences would follow as if it fails to enact a resolution waiving claims under 25 U.S.C. § 1300i-1(c)(4).

Accordingly, it follows that Resolution No. 93-61 is not a resolution "waiving any claim the Yurok Tribe may have against the United States arising out of the provisions of this Act," within the meaning of 25 U.S.C. § 1300-1(c)(4) or 25 U.S.C. § 1300-8(d)(2). Our conclusion is consistent with your statement to the Assistant Secretary - Indian Affairs, in a letter dated August 20, 1993, that the Interim Council would not provide any such waiver during its term.

Our determination that Resolution No. 93-61 fails to meet the requirements of 25 U.S.C. § 1300-1(c)(4) means that the Yurok Tribe will be unable to enjoy the benefits conferred under Section 2 and 9 of the Hoopa-Yurok Settlement Act upon the passage of a legally sufficient waiver of claims, including the Yurok Tribe's share of the Settlement Fund under Sections 4 and 7 of the Act, the

$5 million appropriated under the Snyder Act for the purpose of acquiring lands within or outside the Yurok Reservation, ownership of all Six Rivers National Forest lands within the boundaries of the old Klamath River Reservation or the Connecting Strip, and ownership of and reservation status for the Yurok Experimental Forest lands and buildings.

Sincerely,

/S/ Ada E. Deer

Ada E. Deer
Assistant Secretary - Indian Affairs

cc: Area Director, Sacramento Area Office
Superintendent, Northern California Agency

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

3/14/95

Honorable Susie L. Long
Chairperson
Yurok Tribal Council
517 Third, Suite 18
Eureka, California 95501

Dear Chairperson Long:

This is in response to the Yurok Tribal Council's letter of August 30, 1994, requesting reconsideration and clarification of certain aspects of our decision of April 4, 1994, that Resolution 93-61, adopted November 24, 1993, by the Interim Council of the Yurok Tribe (Tribe), is not a resolution "waiving any claim the Yurok Tribe may have against the United States arising out of the provisions of the Hoopa-Yurok Settlement Act (Act)," within the meaning of 25 U.S.C. § 1300i-1(c)(4) or 25 U.S.C. § 1300i-8(d)(2).

Having considered the arguments presented in your August 30, 1994, letter, we reaffirm our decision of April 4, 1994. In our opinion, there can be no question that the waiver of claims against the United States required under 25 U.S.C. § 1300i-1(c)(4) and 25 U.S.C. § 1300i-8(d)(2) must necessarily include a waiver of any taking claim the Tribe may have against the United States arising out of the provisions of the Act. In fact, as the legislative history of the Act indicates, potential taking claims against the United States were precisely the type of claims Congress was most concerned about. That is why, in our opinion, Congress made the waiver of such taking claims by both the Hoopa Valley and Yurok Indian Tribes the essential elements to triggering key provisions of the Act.

In your August 30, 1994, letter, you argue that construing the Act's requirement of a Yurok tribal waiver of claims as extending even to claims for lack of adequate compensation clearly would violate the doctrine of unconstitutional conditions. As a matter of law, we do not believe that the statutory scheme in the Act, requiring a waiver of claims including any taking claim, against the United States in exchange for valuable property rights, triggers the doctrine of unconstitutional conditions. However, even assuming, for the sake of argument, that this doctrine could be invoked, we would not be in a position to cure this potential defect by ignoring what we believe to be the clear requirements of the Act.

In addition, it is our opinion that the statutorily required waiver of taking claims against the United States in exchange for valuable property benefits is rationally tied to the Act's purpose to resolve long standing litigation between the United States and various Indian interests and to promote effective management of the Hoopa Valley and Yurok Indian reservations by their

respective tribal governments. As such, the statutory requirements in the Act meet the tied rationally test used by the courts in reviewing the constitutionality of Indian legislation. See e.g., Delaware Tribal Business Comm. v. Weeks, 430 U.S. 73 (1977).

You also seek clarification of our April 4, 1994, letter with respect to the Tribe's option to cure the perceived deficiencies in Resolution 93-61 by subsequent tribal action or the final resolution of the Tribe's lawsuit in the U.S. Court of Federal Claims. It is our position that the Yurok Tribal Council could cure the deficiencies in the Resolution if it is so desired. As you point out in your letter, under tribal law the authority of the former Interim Council was transferred to the Tribal Council, and with that transfer goes the authority to amend Resolution 93-61, albeit subject to a referendum of the Yurok membership. The exercise of this authority by the Tribal Council is consistent with the provisions of the Act.

An amendment to Resolution 93-61 to cure the deficiencies relating to the waiver of claims against the United States, however, must be accompanied by a dismissal with prejudice of the Tribe's taking claim currently being litigated before the U.S. Court of Federal Claims in Yurok Tribe v. United States. In our opinion, the Tribe's decision to prosecute its claim in this litigation is inconsistent with the waiver of claims required under the Act. Were there to be a settlement of the lawsuit, it would have to be accomplished before the case has proceeded to a determination on the merits. This is necessary both to save time, energy and money on costly legal proceedings and because a settlement will not be possible if the Court has ruled on any portion of the merits.

Therefore, I propose that you immediately seek a stay of proceedings in Yurok Tribe v. United States for at least one hundred and twenty days in order to conduct your referendum of the Yurok membership, undertake settlement negotiations and to permit you to amend Resolution 93-61 to cure existing deficiencies. In this regard, members of the Bureau of Indian Affairs staff and the Office of the Solicitor staff will be made available to you and your attorneys for purposes of providing technical assistance with respect to what the Government believes must be included in the tribal resolution in order for the Tribe to obtain the benefits available under Sections 2 and 9 of the Act.

Finally, as requested in your letter, please find enclosed a copy of the February 3, 1992, memorandum from the Assistant Solicitor, Branch of General Indian Legal Activities, to the Bureau of Indian Affairs' Sacramento Area Director. It is our sincere hope that we can resolve this matter to our mutual satisfaction.

Sincerely,

Ada E. Deer
Assistant Secretary - Indian Affairs

Enclosure