Hoopa Valley Tribal Council
PO Box 1348
Hoopa, CA 95546

Yurok Tribal Council
PO Box 1027
Klamath, CA 95548

12/03/03

# Proposed Amendments to the Hoopa-Yurok Settlement Act Developed jointly by the Hoopa Valley Tribe and the Yurok Tribe in Formal Mediation

**Title I.** **YUROK**

**Section A. Lands.**

1. Notwithstanding any provision of law, there is hereby authorized from the Bureau of Indian Affairs of the $2,500,000 previously appropriated under Pub. L. 100-580 such amounts as may be necessary for use in conducting purchase, appraisals, surveys, and other requirements needed to acquire privately owned lands, excluding lands within the boundaries of the Hoopa Valley Reservation.

2. Within one year of enactment, the Secretaries of the Department of Interior and Agriculture shall identify 238,433 acres of federal and private lands and the Yurok Tribe and the United States shall from these lands mutually determine an adequate land base for the Yurok Tribe and shall transfer such land base, including the acquisition of private lands from willing owners, by land trade or purchase, to the Yurok Tribe and to adjust the Yurok Reservation boundaries to reflect such transfer. Such Reservation shall be identified from 67,564 acres of private lands, 155,210 acres of USFS lands, 300 acres of BLM, 13,647 acres of other lands and 1,712 acres of RNPS lands. Within the identified lands 46,080 acres shall be set aside as cultural districts protected from all management activities not consistent with the religious and ceremonial interests of the Yurok Tribe. The purposes of this subsection are to establish a land base for the Yurok Tribe that is economically viable for commercial timber harvest of approximately 11,000,000 board feet annually on a sustained yield basis, and to meet the subsistence and other cultural needs of the Yurok Tribe. All land acquired by trade or by direct transfer shall be held in trust.

3. As part of subsection A (2) above, there is hereby transferred to the Yurok tribe in trust all federal lands within the Yurok Reservation established under the Act

that are now under the jurisdiction of the National Park Service, Forest Service and/or Bureau of Land Management. These lands are included in the acreage described in subsection 2, above.

4. The U.S. Court of Federal Claims is authorized to hear and determine all claims of the Yurok Indian Tribe and its members arising from the loss of lands from Indian ownership, sold, homesteaded or otherwise lost without the consent of the tribe, from the Klamath River Reservation or Connecting Strip. The statute of limitations is expressly waived.

## *Section B. Jurisdiction.*

1. Notwithstanding Pub. L. 83-280, federal law enforcement and tribal court funds and programs shall be made available to the Yurok and Hoopa Valley Tribes on the same basis as they are available to tribes located in non-Pub. L. 83-280 States. There is hereby authorized to be appropriated not less than $1,000,000 annually for Yurok Tribal Court and law enforcement programs to be provided in the Department of Justice or Bureau of Indian Affairs budgets.

2. The authority of the Yurok Tribe over the territories as provided in the Constitution of the Yurok Tribe as of the date of enactment of this Act are ratified and confirmed on the same basis as such provisions of the Hoopa Valley Tribe's Constitution were ratified in Section 8 of Pub. L. 100-580, insofar as it relates to the jurisdiction of the Yurok Tribe over persons and lands within the boundaries of the Yurok Reservation.

3. The Secretaries of the Departments of Interior and Agriculture shall enter into stewardship agreements with the Yurok Tribe with respect to management of Klamath River Basin fisheries and water resources. Nothing herein shall be interpreted as providing the Yurok Tribe with any jurisdiction within the Hoopa Valley Reservation.

4. There is hereby granted co-management of all natural resources, sacred and cultural sites of the Yurok Tribe within its usual and accustomed places within Yurok aboriginal territories that are on lands remaining under the jurisdiction of the National Park Service, Forest Service and/or Bureau of Land management. Co-management shall be defined as joint decision making responsibility regarding subject resources requiring concurrence of the Tribe.

5. There is hereby granted access for subsistence hunting, fishing, and gathering rights for members of the Yurok Tribe over all lands within its aboriginal territory that remain under the jurisdiction of the Yurok Tribe, National Park Service, Forest Service and/or Bureau of Land Management. All subsistence related activities shall be conducted pursuant to proper management plans developed by the Yurok Tribe.

## Section C. Base Funding.

There is hereby authorized to be appropriated from New Tribes Funding an adjustment in the base funding for the Yurok Tribe based upon the actual enrollment of the Yurok Tribe at the time of the enactment of this Amendment.

## Section D. Yurok Infrastructure Development.

There is hereby authorized to be appropriated from existing appropriations as they may be made, from year to year:

1. $20,000,000 for the upgrade and construction of BIA and tribal roads on the Yurok Reservation;
2. $500,000 per year for the operation of a road maintenance program for the Yurok Tribe;
3. $3,500,000 is authorized to be appropriated as a one time cost for purchase of equipment and supplies for the Yurok Tribe road maintenance program;
4. $7,600,000 for the electrification of the Yurok Reservation;
5. $2,500,000 for telecommunication needs on the Yurok Reservation;
6. $18,000,000 for the improvement and development of water and wastewater treatment systems on the Yurok Reservation;
7. $6,000,000 for a residential care, drug and alcohol rehabilitation and recreational complex near Weitchpec;
8. $7,000,000 for the building of a Cultural Center for the Yurok Tribe;
9. $4,000,000 for a Tribal Court, Law Enforcement and detention facility in Klamath;
10. $10,000,000 for the construction of 50 homes for Yurok Tribe elders.
11. $3,200,000 for the development and initial start up cost for a Yurok School District;
12. $800,000 to supplement Yurok Tribe higher education need.

Congress recognizes the unsafe and inadequate condition of roads and major transportation routes on and to the Yurok Reservation. As such, the Congress identifies a priority that these transportation systems be upgraded and brought up to the same standards as transportation systems throughout the State of California.

## Section E. Yurok Economic Development

There is hereby authorized to be appropriated from existing appropriations as they may be made, from year to year, from the Departments of HUD, Commerce, and Agriculture:

1. $20,000,000 for the construction and associated costs required to build an eco lodge;
2. $1,500,000 for the purchase of equipment to start a gravel operation;
3. $6,000,000 for the purchase and improvement of RV and fishing resorts

on the Yurok Reservation.

### *Section F. BLM Lands*

Certain BLM lands within Yurok aboriginal territory are hereby transferred to the Yurok Tribe, to wit: T.9N., R.4E, HUM, Section 1, T.9N., R.4E, Section 7, T.9N., R.4E., Section 8, Lot 3, T.9N., R.4E., Section 9, Lots 19&20, T.9N.,R.4E., Section 17, Lots 3-6, T.9N., R4E., Section 18, Lots 7&10, T.9N., R.3E., Section 13, Lots 8&12, T.9N., R3E, Section 14, Lot 6.

Certain BLM lands along the western boundaries of the Hoopa Valley Reservation are hereby transferred to the Hoopa Valley Tribe, to wit: T.9N, R.3E., Section 23, Lots 7&8, T.9N., R.3E., Section 26, Lots 1-3, T.7N., R.3E., Section 7, Lots 1&6, Section 1.

## *Title III. Hoopa-Yurok Settlement Act Provisions*

**Section A.** Within one year and ninety days following enactment of this Amendment, the Secretary of the Interior, in consultation with Secretary of Agriculture relative to the establishment of an adequate land base, shall prepare and submit to the Congress a report describing the establishment of an adequate land base for the Yurok Tribe and implementation of Title I of this amendment. The report shall also describe: the sources of funds remaining in the Settlement Fund, including the statutory authority for such deposits and the activities, including environmental consequences, if any, which gave rise to such deposits; disbursements from such deposits; the provision of resources, Reservation lands, trust lands, and income producing assets including, to the extent available (including data provided by the Tribes) the environmental condition of such lands and income producing assets, infrastructure and other valuable assests, including financial distributions to each Tribe pursuant to the Settlement Act This amendments, and otherwise; and to the extent available (including data provided by the Tribes) the unmet economic, infrastructure and land needs of each Tribe, at the time of the Report No expenditure from the Settlement Fund shall be made prior to submission of the report, and Congressional action upon such report, except as may be agreed upon by the Hoopa Valley and Yurok Tribes pursuant to their constitutional requirements.

**Section B.** Subsections of the HYSA that conditioned certain provision on a Yurok Council waiver resolution, found in P.L. 100-580, Section 2(c)(4)(B),(C) and (D) (relating to land transfers, land acquisition and organizational authorities), are hereby repealed.

**Section C.** The provisions of the Klamath River Basin Fisheries Restoration Act of 1986, Pub. L. 99-552 creating the Klamath Fisheries Management Council are hereby amended to provide a voting member to be appointed by the Yurok Tribe to replace the non Hoopa Indian voting member.

**Section D.** Section 10 of the HYSA is amended by deleting subsection 10 (a) and inserting in lieu thereof: Section 10 (a) Plan for Economic Self-Sufficiency -There is authorized to be appropriated no less than 3 million dollars for the Yurok Self Sufficiency Plan.

1. The Secretary shall enter into negotiations with the Yurok Tribe in order to establish a plan for the economic self-sufficiency of the Tribe, which shall be completed within eighteen months of the enactment of this amendment;

2. Upon the approval of such Plan by the Yurok Tribe, the Secretary shall submit such Plan to the Congress.

Respectfully submitted,

Clifford Lyle Marshall, Chairman
Hoopa Valley Tribal Council

Howard D. McConnell, Chairman
Yurok Tribal Council

T:\WPDOCS\0020\09561\HYSA12.3.Final.18.doc
nmc: 12/5/03

II

108TH CONGRESS
2D SESSION

# S. 2878

To amend the Hoopa-Yurok Settlement Act to provide for the acquisition of land for the Yurok Reservation and an increase in economic development beneficial to the Hoopa Valley Tribe and the Yurok Tribe, and for other purposes.

---

IN THE SENATE OF THE UNITED STATES

SEPTEMBER 30, 2004

Mr. CAMPBELL introduced the following bill; which was read twice and referred to the Committee on Indian Affairs

---

# A BILL

To amend the Hoopa-Yurok Settlement Act to provide for the acquisition of land for the Yurok Reservation and an increase in economic development beneficial to the Hoopa Valley Tribe and the Yurok Tribe, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Hoopa-Yurok Settlement Amendment Act of 2004".

**SEC. 2. ACQUISITION OF LAND FOR THE YUROK RESERVATION.**

Section 2(c) of the Hoopa-Yurok Settlement Act (25 U.S.C. 1300i–1(c)) is amended by adding at the end the following:

"(5) LAND ACQUISITION.—

"(A) IN GENERAL.—Not later than 1 year after the date of enactment of this paragraph, the Secretary and the Secretary of Agriculture shall—

"(i) in consultation with the Yurok Tribe, identify Federal and private land available from willing sellers within and adjacent to or in close proximity to the Yurok Reservation in the aboriginal territory of the Yurok Tribe (excluding any land within the Hoopa Valley Reservation) as land that may be considered for inclusion in the Yurok Reservation;

"(ii) negotiate with the Yurok Tribe to determine, from the land identified under clause (i), a land base for an expanded Yurok Reservation that will be adequate for economic self-sufficiency and the maintenance of religious and cultural practices;

"(iii) jointly with the Yurok Tribe, provide for consultation with local governments, and other parties whose interests are directly affected, concerning the potential sale or other transfer of land to the Yurok Tribe under this Act;

"(iv) submit to Congress a report identifying any parcels of land within their respective jurisdictions that are determined to be within the land base negotiated under clause (ii); and

"(v) not less than 60 days after the date of submission of the report under clause (iv), convey to the Secretary in trust for the Yurok Tribe the parcels of land within their respective jurisdictions that are within that land base.

"(B) ACCEPTANCE IN TRUST.—The Secretary shall—

"(i) accept in trust for the Yurok Tribe the conveyance of such private land as the Yurok Tribe, or the United States on behalf of the Yurok Tribe, may acquire from willing sellers, by exchange or purchase; and

"(ii) provide for the expansion of the Yurok Reservation boundaries to reflect the conveyances.

"(C) FUNDING.—Notwithstanding any other provision of law, from funds made available to carry out this Act, the Secretary may use $2,500,000 to pay the costs of appraisals, surveys, title reports, and other requirements relating to the acquisition by the Yurok Tribe of private land under this Act (excluding land within the boundaries of the Hoopa Valley Reservation).

"(D) REPORT.—

"(i) IN GENERAL.—Not later than 90 days after the date of submission of the report under subparagraph (A)(iv), the Secretary, in consultation with the Secretary of Agriculture relative to the establishment of an adequate land base for the Yurok Tribe, shall submit to Congress a report that describes—

"(I) the establishment of an adequate land base for the Yurok Tribe and implementation of subparagraph (A);

"(II) the sources of funds remaining in the Settlement Fund, including the statutory authority for such deposits and the activities, including environmental consequences, if any, that gave rise to those deposits;

"(III) disbursements made from the Settlement Fund;

"(IV) the provision of resources, reservation land, trust land, and income-producing assets including, to the extent data are available (including data available from the Hoopa Valley Tribe and the Yurok Tribe), the environmental condition of the land and income-producing assets, infrastructure, and other valuable assets; and

"(V) to the extent data are available (including data available from the Hoopa Valley Tribe and the Yurok Tribe), the unmet economic, infrastructure, and land needs of each of

the Hoopa Valley Tribe and the Yurok Tribe.

"(ii) LIMITATION.—No expenditures for any purpose shall be made from the Settlement Fund before the date on which, after receiving the report under clause (i), Congress enacts a law authorizing such expenditures, except as the Hoopa Valley Tribe and Yurok Tribes may agree pursuant to their respective constitutional requirements.

"(6) CLAIMS.—

"(A) IN GENERAL.—The Court of Federal Claims shall hear and determine all claims of the Yurok Tribe or a member of the Yurok Tribe against the United States asserting that the alienation, transfer, lease, use, or management of land or natural resources located within the Yurok Reservation violates the Constitution, laws, treaties, Executive orders, regulations, or express or implied contracts of the United States.

"(B) CONDITIONS.—A claim under subparagraph (A) shall be heard and determined—

"(i) notwithstanding any statute of limitations (subject to subparagraph (C)) or any claim of laches; and

"(ii) without application of any setoff or other claim reduction based on a judgment or settlement under the Act of May 18, 1928 (25 U.S.C. 651 et seq.) or other laws of the United States.

"(C) LIMITATION.—A claim under subparagraph (A) shall be brought not later than 10 years after the date of enactment of this paragraph.".

**SEC. 3. JURISDICTION.**

(a) LAW ENFORCEMENT AND TRIBAL COURT FUNDS AND PROGRAMS.—Section 2(f) of the Hoopla-Yurok Settlement Act (25 U.S.C. 1300i–1(f)) is amended—

(1) by striking "The Hoopa" and inserting the following:

"(1) IN GENERAL.—The Hoopa";

(2) by striking the semicolon after "Code" the first place it appears and inserting a comma; and

(3) by adding at the end the following:

"(2) LAW ENFORCEMENT AND TRIBAL COURT FUNDS AND PROGRAMS.—

"(A) IN GENERAL.—Notwithstanding paragraph (1), Federal law enforcement and tribal court funds and programs shall be made available to the Hoopa Valley Tribe and Yurok Tribe on the same basis as the funds and programs are available to Indian tribes that are not subject to the provisions of law referred to in paragraph (1).

"(B) AUTHORIZATION OF APPROPRIATIONS.—There is authorized to be appropriated for Yurok law enforcement and tribal court programs $1,000,000 for each fiscal year.".

(b) RECOGNITION OF THE YUROK TRIBE.—Section 9 of the Hoopa-Yurok Settlement Act (25 U.S.C. 1300i–8) is amended by adding at the end the following:

"(f) RECOGNITION OF THE YUROK TRIBE.—The authority of the Yurok Tribe over its territories as provided in the constitution of the Yurok Tribe as of the date of enactment of this subsection are ratified and confirmed insofar as that authority relates to the jurisdiction of the Yurok Tribe over persons and land within the boundaries of the Yurok Reservation.".

(c) YUROK RESERVATION RESOURCES.—Section 12 of the Hoopa Yurok Settlement Act (102 Stat. 2935) is amended by adding at the end the following:

“(c) KLAMATH RIVER BASIN FISHERIES.—

“(1) IN GENERAL.—The Secretary and the Secretary of Agriculture shall enter into stewardship agreements with the Yurok Tribe with respect to management of Klamath River Basin fisheries and water resources.

“(2) EFFECT OF PARAGRAPH.—Nothing in paragraph (1) provides the Yurok Tribe with any jurisdiction within the Hoopa Valley Reservation.

“(d) MANAGEMENT AUTHORITY.—

“(1) DEFINITION OF COMANANGEMENT AUTHORITY.—In this subsection, the term ‘management authority’ means the right to make decisions jointly with the Secretary or the Secretary of Agriculture, as the case may be, with respect to the natural resources and sacred and cultural sites described in paragraph (2).

“(2) GRANT OF MANAGEMENT AUTHORITY.—There is granted to the Yurok Tribe management authority over all natural resources, and over all sacred and cultural sites of the Yurok Tribe within their usual and accustomed places, that are on land remaining under the jurisdiction of the National Park Service, Forest Service, or Bureau of Land

Management within the aboriginal territory of the Yurok Tribe.

"(e) SUBSISTENCE.—

"(1) IN GENERAL.—There is granted access for subsistence hunting, fishing, and gathering rights for members of the Yurok Tribe over all land and water within the aboriginal territory of the Yurok Tribe that remain under the jurisdiction of the Yurok Tribe or the United States, excluding any land within the Hoopa Valley Reservation.

"(2) CONDITION.—All subsistence-related activities under paragraph (1) shall be conducted in accordance with management plans developed by the Yurok Tribe.".

**SEC. 4. BASE FUNDING.**

From amounts made available to the Secretary for new tribes funding, the Secretary shall make an adjustment in the base funding for the Yurok Tribe based on the enrollment of the Yurok Tribe as of the date of enactment of this Act.

**SEC. 5. YUROK INFRASTRUCTURE DEVELOPMENT.**

(a) IN GENERAL.—There are authorized to be appropriated—

(1) $20,000,000 for the upgrade and construction of Bureau of Indian Affairs and tribal roads on the Yurok Reservation;

(2) for each fiscal year, $500,000 for the operation of a road maintenance program for the Yurok Tribe;

(3) $3,500,000 for purchase of equipment and supplies for the Yurok Tribe road maintenance program;

(4) $7,600,000 for the electrification of the Yurok Reservation;

(5) $2,500,000 for telecommunication needs on the Yurok Reservation;

(6) $18,000,000 for the improvement and development of water and wastewater treatment systems on the Yurok Reservation;

(7) $6,000,000 for the development and construction of a residential care, drug and alcohol rehabilitation, and recreational complex near Weitchpec;

(8) $7,000,000 for the construction of a cultural center for the Yurok Tribe;

(9) $4,000,000 for the construction of a tribal court, law enforcement, and detention facility in Klamath;

(10) $10,000,000 for the acquisition or construction of at least 50 homes for Yurok Tribe elders;

(11) $3,200,000 for the development and initial startup cost for a Yurok School District; and

(12) $800,000 to supplement Yurok Tribe higher education need.

(b) PRIORITY.—Congress—

(1) recognizes the unsafe and inadequate condition of roads and major transportation routes on and to the Yurok Reservation; and

(2) identifies as a priority that those roads and major transportation routes be upgraded and brought up to the same standards as transportation systems throughout the State of California.

**SEC. 6. YUROK ECONOMIC DEVELOPMENT.**

There are authorized to be appropriated—

(1) $20,000,000 for the construction of an ecolodge and associated costs;

(2) $1,500,000 for the purchase of equipment to establish a gravel operation; and

(3) $6,000,000 for the purchase and improvement of recreational and fishing resorts on the Yurok Reservation.

**SEC. 7. BLM LAND.**

(a) CONVEYANCE TO THE YUROK TRIBE.—The following parcels of Bureau of Land Management land within the aboriginal territory of the Yurok Tribe are conveyed in trust status to the Yurok Tribe:

(1) T. 9N., R. 4E, HUM, sec. 1.

(2) T. 9N., R. 4E, sec. 7.

(3) T. 9N., R. 4E., sec. 8, lot 3.

(4) T. 9N., R. 4E., sec. 9, lots 19 and 20.

(5) T. 9N., R. 4E., sec. 17, lots 3 through 6.

(6) T. 9N., R. 4E., sec. 18, lots 7 and 10.

(7) T. 9N., R. 3E., sec. 13, lots 8 and 12.

(8) T. 9N., R. 3E, sec. 14, lot 6.

(b) CONVEYANCE TO THE HOOPA VALLEY TRIBE.—The following parcels of Bureau of Land Management land along the western boundaries of the Hoopa Valley Reservation are conveyed in trust status to the Hoopa Valley Tribe:

(1) T. 9N, R. 3E., sec. 23, lots 7 and 8.

(2) T. 9N., R. 3E., sec. 26, lots 1 through 3.

(3) T. 7N., R. 3E., sec. 7, lots 1 and 6.

(4) T. 7N., R. 3E., sec. 1.

**SEC. 8. REPEAL OF OBSOLETE PROVISIONS.**

Section 2(c)(4) of the Hoopa-Yurok Settlement Act (25 U.S.C. 1300i–1(c)(4)) is amended by striking ''The—'' and all that follows through ''shall not be'' and inserting

"The apportionment of funds to the Yurok Tribe under sections 4 and 7 shall not be".

**SEC. 9. VOTING MEMBER.**

Section 3(c) of the Klamath River Basin Fisheries Restoration Act (16 U.S.C. 460ss–2(c)) is amended—

(1) by redesignating paragraphs (4) and (5) as paragraphs (5) and (6); and

(2) by striking paragraph (3) and inserting the following:

"(3) A representative of the Yurok Tribe who shall be appointed by the Yurok Tribal Council.

"(4) A representative of the Department of the Interior who shall be appointed by the Secretary.".

**SEC. 10. ECONOMIC SELF-SUFFICIENCY.**

Section 10 of the Hoopa-Yurok Settlement Act (25 U.S.C. 1300i–9) is amended by striking subsection (a) and inserting the following:

"(a) PLAN FOR ECONOMIC SELF-SUFFICIENCY.—

"(1) NEGOTIATIONS.—Not later than 30 days after the date of enactment of the Hoopa-Yurok Settlement Amendment Act of 2004, the Secretary shall enter into negotiations with the Yurok Tribe to establish a plan for the economic self-sufficiency of the Yurok Tribe, which shall be completed not later than

18 months after the date of enactment of the Hoopa-Yurok Settlement Amendment Act of 2004.

"(2) SUBMISSION TO CONGRESS.—On the approval of the plan by the Yurok Tribe, the Secretary shall submit the plan to Congress.

"(3) AUTHORIZATION OF APPROPRIATIONS.—There is authorized to be appropriated $3,000,000 to establish the Yurok Tribe Self-Sufficiency Plan.".

**SEC. 11. EFFECT OF ACT.**

Nothing in this Act or any amendment made by this Act limits the existing rights of the Hoopa Valley Tribe or the Yurok Tribe Tribe.

○

# Congress of the United States
Washington, DC 20510

March 21, 2006

The Honorable David L. Bernhardt
Solicitor, Acting
U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

Dear Mr. Bernhardt:

We are writing in regard to the Hoopa-Yurok Settlement Act (P.L. 100-580) and the dispensation of monies remaining in the Hoopa-Yurok Settlement Act Fund.

Since the Secretary of Interior's Report to Congress was issued in March 2002, there has been no agreement between the two tribes on how to dispense of the remaining Settlement Act funds. Various legislative proposals have been advanced, but none of these has gained traction in Congress.

We understand that in an effort to reach a judgment, recent discussions have been held between the Solicitor's Office and the individual tribes. However, given the historic stalemate between the tribes, and to further our understanding of the legal ramifications surrounding the distribution process, we are seeking clarification on several issues and request your response to the following:

1) Of the original balance of the Settlement Fund, what was determined to be the Yurok share? And, what is the total value of the Settlement Fund today?

2) Is it the Solicitor's opinion that Congressional action is required to establish a distribution process for the Hoopa-Yurok Settlement Fund? Or, under the terms of the Act, does the Secretary continue to have the authority to make a determination on the status of the Fund?

3) Is it the Solicitor's opinion that the waiver provided for in the Hoopa-Yurok Settlement Act of 1988 remains an exercisable option for the Yurok tribe? If so, what is the legal basis for this conclusion?

4) Is it the Solicitor's opinion that the Hoopa Valley tribe has legal claim to a portion of the remaining funds, including interest accrued, since the initial dispersal of funds to the Hoopa in 1988?

5) Should the Secretary reach a decision, without benefit of additional Congressional action, is legal recourse available to either tribe to challenge the decision?

Nearly two decades have passed since the enactment of the 1988 Hoopa-Yurok Settlement Act. It was the intent of Congress to resolve the long-standing legal conflicts between these two tribes and to provide a mechanism for the equitable distribution of the trust funds set aside to benefit tribal members. In our opinion, a settlement needs to be reached and we welcome the Department of Interior's renewed participation at this time.

We look forward to your response to our inquiry and are available to answer any questions you may have.

Sincerely,

DIANNE FEINSTEIN
U.S. Senator

BARBARA BOXER
U.S. Senator

MIKE THOMPSON
Member of Congress

THE ASSOCIATE DEPUTY SECRETARY OF THE INTERIOR
WASHINGTON, DC 20240

JUL 19 2006

RECEIVED
JUL 26 2006
Chair/Council
HOOPA VALLEY
TRIBAL COUNCIL

Honorable Clifford Lyle Marshall
Chairman, Hoopa Valley Tribe
P.O. Box 1348
Hoopa, California 95546

Dear Chairman Marshall:

I write in response to your May 24, 2006, letter regarding the Hoopa-Yurok Settlement Fund (Fund) remainder. I appreciate the importance of this issue to the Hoopa Valley Tribe, and I appreciate the opportunities we have had to discuss this issue, including most recently our meeting on May 18, 2006.

Your letter suggests that your congressional delegation will not take action on this matter pending a "new report" from the Department of the Interior (Department). As noted, our meeting confirmed that the Department does not intend to submit to Congress a new report or a replacement to the report submitted in March 2002 pursuant to section 14(c) of the Hoopa-Yurok Settlement Act. Rather, as explained previously, the Department's Office of the Solicitor has undertaken an analysis of whether the Department has authority to release the Fund remainder administratively at this point in time and, if so, to whom. The Department has striven to keep the delegation informed as our efforts have proceeded on this matter and has communicated the points above to your congressional delegation's staff subsequent to our meeting. Accordingly, members of Congress may, or may not, choose to take legislative action, an area entirely within their realm.

Your letter also states that the Hoopa Valley Tribe has not had "an adequate opportunity to provide meaningful input" into this process and requests that the Department's draft legal views on this matter be immediately released. Both this Office and the Office of the Solicitor have hosted several meetings with, and have entertained even more telephone and written correspondence from, you and other Tribal representatives on this issue over the past several months. These communications have proved most important in the Office of the Solicitor's efforts thus far and have also shown that the issues being considered are well understood.

Again, I appreciate the importance of this matter for the Hoopa Valley Tribe and your continued advocacy on behalf of the Tribe. I also hope that this matter can be resolved in an effective and timely manner so that all interested parties can reach closure.

Sincerely,

James E Cason

James E. Cason

United States Department of the Interior
OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS
Washington, D.C. 20240

March 1, 2007

Honorable Clifford Lyle Marshall
Chairman, Hoopa Valley Tribe
P.O. Box 1348
Hoopa, California 95546

Honorable Maria Tripp
Chairperson, Yurok Tribe
190 Klamath Boulevard
Klamath, California 95548

Dear Chairman Marshall and Chairperson Tripp:

As you both know too well, issues related to the 1988 Hoopa-Yurok Settlement Act (Act), including the establishment and distribution of the Hoopa-Yurok Settlement Fund (Fund), have a long history. Notwithstanding resolution of decades of disputed issues between the two Tribes and their members, one final issue remains to be resolved nearly twenty years after the Act's passage: distribution of funds still held by the Department pursuant to the Act.

At the request of both the Hoopa Valley Tribe and the Yurok Tribe, as well as the Tribes' Congressional delegation, the Department has evaluated whether authority still exists to distribute these funds administratively or whether the parties must resolve this matter through the courts or Congress. As explained below, the Department has concluded it can distribute these funds to the Yurok Tribe administratively, consistent with the provisions of the Act, if the Yurok Tribe were to submit a new waiver of claims as required by the Act.

Discussion and Analysis

Pursuant to the Act, the Department placed into escrow monies from seven Indian trust fund accounts, representing the proceeds still held in trust by the Department from the resources of the former Joint Reservation, to establish the Fund. The Act envisioned three specific distributions of the Fund: certain individual payments based on tribal membership elections; distribution to the Hoopa Valley Tribe of roughly one-third of the Fund; and distribution to the Yurok Tribe of roughly one-third of the Fund plus the Fund's remainder once the individual payments were made. The Hoopa Valley Tribe received over $34 million between 1988 and 1991, its designated share under the Act. The Department continues to hold the remaining balance, representing the share set aside in 1991 for the benefit of the Yurok Tribe (roughly $37 million), with interest accrued over the past fifteen years (now totaling roughly $90 million), as well as funds authorized by the Act specifically for the Yurok Tribe (roughly $3.1 million).

The Department has not previously distributed these remaining funds because the Yurok Tribe did not provide the waiver required by the Act in order to receive benefits.

Although purporting to waive claims, the Department interpreted the 1993 Yurok Resolution to preserve the Tribe's claims and thus failed to satisfy the Act's waiver requirement. The Yurok Tribe brought a takings claim, which led to the decision rendered in *Karuk Tribe v. United States*, 41 Fed. Cl. 468 (1998), *aff'd*, 209 F.3d 1366 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 941 (2001).

Conclusion of this litigation triggered the Secretary's obligation under the Act to issue a Report to Congress. The Secretary, through the Bureau of Indian Affairs, submitted the Report in March 2002, and the Senate Indian Affairs Committee held a hearing in August 2002, in which the Department and both Tribes participated.

The Department stated then that, because the Yurok Tribe litigated its takings claims rather than waiving them, the Yurok did not meet the Act's condition precedent for the Yurok to receive its share of the Fund or other benefits. The Department stated also the Hoopa Valley Tribe had already received its benefits under the Act and was not entitled to further distributions. Based on those factors, the Department recommended, *inter alia*, that it would be inappropriate to make any general distribution without further instruction from Congress and that Congress should consider the need for additional legislation to address any issue regarding entitlement and to fulfill the Act's intent. Congress has not acted on the Department's recommendations to date.

The Yurok Tribe proposes now to provide the Department with a new, unconditional waiver of claims, a concept not proposed at the time of the 2002 hearing. The Hoopa Valley Tribe argues, in essence, that the Act's authority no longer remains viable and that the fully-litigated takings claim precludes the Yurok Tribe from providing a new waiver. After careful review of all the issues, the Department concludes that the Yurok Tribe can tender a new, unconditional waiver and that the Act provides authority to the Department to act administratively to distribute the remaining funds to the Yurok Tribe upon receipt of such a waiver if it otherwise comports with the waiver requirements under the Act.

Neither the Act nor its legislative history specifies whether proceeding under one provision would preclude the Yurok Tribe from proceeding under the other, *i.e.*, whether bringing a takings claim and providing a waiver, actions both authorized under the Act, were mutually exclusive. For a number of reasons, we conclude that the takings litigation in *Karuk Tribe* did not result in the Yurok Tribe's forfeiting the benefits established in the Act. For example, the Act does not specify a time limitation, like the limited period to bring a constitutional challenge, on the ability to provide a waiver. Moreover, the Act's Yurok waiver provision is not limited solely to the constitutionally-based property claims authorized by the Act and litigated by the Yurok Tribe. The Act did not provide any contingent distribution arrangements if the Yurok Tribe chose to assert a takings claim. Fundamentally, nothing in the Act states that the Yurok Tribe's choosing to litigate its takings claim would cause the Tribe to forfeit the benefits under the Act.

Because Congress acted as a trustee in passing the Act and because the Hoopa Valley Tribe received already all of its benefits established by the Act, including its designated

share of the Fund, we believe that any ambiguity in the Act should be read in favor of providing the other beneficiary, the Yurok Tribe, with its benefits established by the Act. Because the Act specifically authorized either Tribe to bring certain claims against the United States yet did not provide for an alternative distribution of benefits if a Tribe took such an action, we further believe that an interpretation of the Act that avoids penalizing a beneficiary for taking an authorized action and that avoids potentially troublesome constitutional issues to be necessary here. Thus, we believe that it would be unreasonable to read the Act to work a forfeiture of the Yurok's right to receive the monies from the Fund, and we decline to do so.

The Act authorized the Yurok Interim Council, an entity that ceased to exist in 1993, to provide the requisite waiver under the Act. The Act did not preclude or otherwise divest power from the permanent Yurok Council also to waive claims. Both the Department and the Hoopa Valley Tribe subsequently acknowledged that the Yurok Tribe, after the expiration of the Interim Council, could "cure" its conditional waiver. Therefore, we also conclude that the current governing body of the Yurok Tribe can submit the waiver required by the Act.

Conclusion

After careful consideration and for the reasons set out briefly above, the Department has concluded that, through administrative action, the remaining funds set aside pursuant to the Act can still be distributed to the Yurok Tribe. The better reading of the Act and the underlying circumstances is to allow the Yurok Tribe to submit an unconditional waiver and to authorize the Department to distribute these funds to the Yurok Tribe upon that proper submission.

The Department appreciates that the underlying issues of this dispute have been argued between the two Tribes (and others) for over 40 years. Both Tribes have argued vigorously and persuasively for their respective positions. In recognition of these divergent views, the Department will not take action on this final decision and distribute the remaining funds until thirty days after the Department has received an unconditional waiver from the Yurok Tribe consistent with the Act.

Sincerely,

Ross O. Swimmer
Special Trustee for American Indians

United States Department of the Interior

OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS
Washington, D.C. 20240

March 21, 2007

SENT VIA FACSIMILE

Honorable Clifford Lyle Marshall
Chairman, Hoopa Valley Tribe
P.O. Box 1348
Hoopa, California 95546

Honorable Maria Tripp
Chairperson, Yurok Tribe
190 Klamath Boulevard
Klamath, California 95548

Dear Chairman Marshall and Chairperson Tripp:

I received today a copy of Yurok Tribal Council Resolution 07-037. This resolution provides an unconditional waiver of claims that the Yurok Tribe may have against the United States arising out of the provisions of the 1988 Hoopa-Yurok Settlement Act.

Upon review, I find that the resolution meets the requirements of the Act. Therefore, the Department intends to distribute to the Yurok Tribe the funds still held by the Department pursuant to the Act, including the remaining balance of the Hoopa-Yurok Settlement Fund, based on my decision letter dated March 1, 2007.

As noted in the March 1 letter, however, the Department will not distribute the remaining funds to the Yurok Tribe until thirty days after the Department received the waiver required by the Act. Accordingly, the Department will not take further action consistent with this decision until April 20, 2007.

Sincerely,

Ross O. Swimmer
Special Trustee for American Indians

# YURQK TRIBE

190 Klamath Boulevard • Post Office Box 1027 • Klamath, CA 95548

**RESOLUTION**
**of the**
**YUROK TRIBAL COUNCIL**

**RESOLUTION NO.:** **07-037**

**DATE APPROVED:** **March 21, 2007**

**SUBJECT:** **Waiver of Certain Claims and Consent to Uses of Tribal Funds Pursuant to the Hoopa-Yurok Settlement Act**

**WHEREAS:** The Yurok Tribe is a Federally recognized Indian Tribe pursuant to a determination by the Bureau of Indian Affairs that was published in the *Federal Register* (60 Fed. Reg. 9,249 (February 16, 1995)), eligible for all rights and privileges afforded to Federally recognized tribes, including, but not limited to, the rights and privileges afforded under the Hoopa-Yurok Settlement Act, and the Yurok Tribal Council is the governing body of the Yurok Tribe under the authority of the Yurok Constitution of 1993; and,

**WHEREAS:** On April 26, 1988, Representative Doug Bosco introduced H.R. 4469, a version of which was enacted as the Hoopa-Yurok Settlement Act (the "Act") on October 31, 1988; and,

**WHEREAS:** Section 2(c) of the Act provides for certain benefits to the Yurok Tribe, including apportionment of funds, certain land transfers, and certain land acquisition authorities, provided that the Yurok Tribe adopt a resolution waiving certain claims, as required by the Act; and,

**WHEREAS:** The Senate Report accompanying the Act states that the waiver required by the Act does not prevent the Yurok Tribe "from enforcing rights or obligations created by this Act," S. Rep. 100-564 at 17; and,

**WHEREAS:** The Yurok Tribal Council has fully considered the claims to be waived under the Act and the consent to be granted and has balanced them against the benefits identified and mandates to the Yurok Tribe under the Act and has concluded that the Tribe would best be served by complying with the mandates identified in the Act; and,

**WHEREAS:** The Act provided for the establishment of the Yurok Interim Tribal Council, which on March 9, 1992 was authorized to submit the Waiver of Claims described in the Act; the permanent Yurok Tribal Council now has the authority originally granted by the Act to the Yurok Interim Tribal Council; and,



Phone: (707) 482-1350 • Fax: (707) 482-1377

**WHEREAS:** The Yurok Tribal Council has carefully considered the Tribe's Constitution and other Tribal law and custom concerning the method by which the resolution called for by the Act should be enacted; and,

**NOW THEREFORE BE IT RESOLVED:** That the Yurok Tribal Council has the authority and responsibility under the Constitution and Bylaws of the Yurok Tribe to approve, certify, and enact the resolution required by the Hoopa-Yurok Settlement Act; and,

**BE IT FURTHER RESOLVED:** That this Resolution is not intended, and shall not be construed, so as to prevent the Yurok Tribe from enforcing its rights and the obligations of the United States created by the Hoopa-Yurok Settlement Act, see S. Rep. 100-564 at 17; and,

**BE IT FURTHER RESOLVED:** That the Yurok Tribe hereby waives any claim the Yurok Tribe may have against the United States arising out of the provisions of the Hoopa-Yurok Settlement Act; and,

**BE IT FURTHER RESOLVED:** That the Yurok Tribe affirms tribal consent to the contribution of Yurok Escrow monies to the Settlement Fund, such contribution having already been made as provided in Section 4(a) of the Act, and for their use as payments to the Hoopa Tribe, such payments having already been made as provided in Section 4(c) of the Act, and to individual Yuroks, such payments having already been made as provided in Section 6(c)(3) of the Hoopa-Yurok Settlement Act; and,

**BE IT FURTHER RESOLVED:** That the Chairperson and Secretary of the Yurok Tribal Council are hereby authorized, directed and empowered to sign the resolution for and on behalf of the Yurok Tribe as its act and deed.

## CERTIFICATION

This is to certify that this **Resolution No. 07-037** was approved at a duly called meeting of the Yurok Tribe on **March 21, 2007,** at which a quorum was present and that this **Resolution No. 07-037** was adopted by a vote of 6 for and 0 opposed and 0 abstentions. This **Resolution No. 07-037** has not been rescinded or amended in any way.

**DATED THIS 21ST DAY OF MARCH, 2007**

Maria Tripp, Chair

ATTEST:

Cynthia McKernan

UNITED STATES DEPARTMENT OF THE INTERIOR
OFFICE OF HEARINGS AND APPEALS
INTERIOR BOARD OF INDIAN APPEALS
801 NORTH QUINCY STREET, SUITE 300
ARLINGTON, VA 22203

| | |
|---|---|
| HOOPA VALLEY TRIBE,<br><br>Appellant,<br><br>v.<br><br>ROSS SWIMMER, SPECIAL TRUSTEE FOR AMERICAN INDIANS, DEPARTMENT OF INTERIOR,<br><br>Appellee. | Docket No. IBIA 07-90-A<br><br>**PETITION FOR RECONSIDERATION**<br><br>April 17, 2007 |

## 1. Introduction

On March 27, 2007, the Board of Indian Appeals ("Board") docketed and dismissed the Hoopa Valley Tribe's Notice of Appeal and Statement of Reasons which the Board received the previous day. Pursuant to 43 C.F.R. § 4.315, the Hoopa Valley Tribe ("Tribe") respectfully petitions for reconsideration of the Board's decision, which is reported at 44 IBIA 210, and requests that the Board stay the effectiveness of the Special Trustee's decision subject to this appeal until the Board rules on the instant Petition.

As explained below, reconsideration should be granted and jurisdiction found to hear this appeal for the following reasons: (1) the Board has jurisdiction because this is a "dispute" within the meaning of 25 C.F.R. pt. 1200 and the related provisions in 25 C.F.R. pt. 115, subpart G; and (2) review by the Board, before the release of tribal trust funds in violation of federal law, is in the interests of justice because it might prevent substantial money damages liability for the United States for breach of trust. In addition, the Board may hear this appeal pursuant to

43 C.F.R. § 4.318, which allows the Board to broadly exercise the inherent authority of the Secretary of the Interior "to correct a manifest injustice or error where appropriate."[1] Manifest injustice results from the Special Trustee's unlawful action and the subsequent denial of jurisdiction to hear this appeal, which could be referred by the Secretary, before tribal trust funds are released in contravention of the Trust Reform Act and the Hoopa Yurok Settlement Act.

**2. Standard of Review**

43 C.F.R. § 4.315 empowers the Board to reconsider its decisions in extraordinary circumstances upon receipt of a petition containing "a detailed statement of the reasons why reconsideration should be granted." The Board has prudently exercised this authority and should do so in this instance. *E.g.*, *McKenzie v. Senior Awarding Official*, 39 IBIA 242 (2004); *Dragswolf*, 31 IBIA 228 (1997). The Board's very prompt ruling on this large and complex appeal overlooked facts concerning the unique and limited authority of the Special Trustee in this instance and evidence that jurisdiction exists under, at least, 25 C.F.R. pt. 1200 and the related provisions in 25 C.F.R. pt. 115, subpart G.[2] A manifest injustice will be done, and substantial

---

[1] "Manifest injustice" or "manifest error" arise when the injustice or the error is obvious. *Estates of Walter George and Minnie Racehorse George Snipe*, 9 IBIA 20, 22-23 (1981); *cf. Estate of Glenn Begay*, 16 IBIA 115, 118 (1988) (the Board has authority "in extraordinary cases" to correct manifest error); *Chitina Traditional Village Council v. Juneau Area Director, Bureau of Indian Affairs*, 31 IBIA 100 (1997) (using authority in 25 C.F. R. § 4.318 to "modify the Judge's procedural disposition" of the case because Judge erroneously relied on a prior Board decision).

[2] The Board believes that Mr. Swimmer's decisions "were made pursuant to the Department's administration of the Settlement Act." 44 IBIA at 212. This, however, is the ultimate issue on the merits: whether the Settlement Act authorizes the decisions by Mr. Swimmer. The Tribe believes the Settlement Act does not authorize Mr. Swimmer's decisions. However, this issue on the merits has no bearing on whether the Board may exercise jurisdiction over this appeal of Mr. Swimmer's egregious and very political decision that attempts to shrewdly deprive the Tribe of any forum for a remedy at law preventing distribution of the settlement funds. *Griffith v. Acting Portland Area Dir., Bureau of Indian Affairs*, 19 IBIA 14, 18 (1990) (Board serves to provide independent, objective administrative review of decisions of

liability for the United States will arise, if the Board declines to exercise its jurisdiction here to prevent the unlawful distribution of tribal trust monies in violation of federal law.

### 3. Actions Governed by the Reform Act Are Within the Board's Jurisdiction.

Upon a thorough examination of the exhibits in support of the Tribe's notice of appeal, together with the three additional exhibits provided herewith,[3] the Board should conclude that it has jurisdiction because this is a "dispute" within the meaning of 25 C.F.R. pt. 1200 and the related provisions in 25 C.F.R. pt. 115, subpart G. As explained below, the only lawful way the Special Trustee could have acted here is under the Reform Act, which makes his actions subject to review by the Board.

No Secretarial Order or special delegation of authority to the Special Trustee applies here. Secretarial Order No. 3259, Amendment No. 2 (Mar. 31, 2006) temporarily redelegated all functions of the Assistant Secretary-Indian Affairs to the Associate Deputy Secretary during the time that the Assistant Secretary-Indian Affairs position remained vacant. The Special Trustee's first decision, dated March 1, 2006, occurred just before Mr. Carl Artman was confirmed as Assistant Secretary-Indian Affairs on March 5, 2007. The second decision, dated March 21, 2006, came after the Assistant Secretary position was filled. Because the Special Trustee did not purport to be exercising either the authority of the Associate Deputy Secretary or the authority of

---

BIA officials and to prevent the politicization of those decisions). The Board's reference to the ultimate question on the merits is circular and cannot be used as grounds to deny jurisdiction.

[3] The Tribe is aware that the Board ordinarily declines to consider arguments or evidence presented for the first time in a petition for reconsideration. *Yeahquo v. Southern Plains Regional Dir.,* 36 IBIA 59 (2001). However, the new evidence could not have been presented at the time the notice of appeal was filed and was not relevant until the Board's decision. This is particularly true concerning Exhibit HVT-17 which was dated March 21, 2007 and received by the Tribe on March 30, 2007, after the notice of appeal was filed. This newly available evidence, which could not have been presented earlier, should be considered by the Board upon reconsideration.

the Assistant Secretary-Indian Affairs, any power the Special Trustee had must find its source in the Reform Act and the regulations implementing it.[4] The Board notes that 25 C.F.R. pt. 1200 provides it with jurisdiction "over the denial of a tribe's request under Section 202 of the . . . Reform Act." 44 IBIA 211. Those regulations are the only legal basis for the Special Trustee's involvement in this matter. It therefore follows that the Board has jurisdiction here. This appeal involves a disagreement over distribution of tribal trust funds which the Board has jurisdiction over to assure statutory compliance. 25 C.F.R. § 115.806; 25 C.F.R. pt. 1200.

The Trust Reform Act of 1994 has four parts. Subchapter I recognizes the United States' trust responsibility and the duty to account for balances of Indian trust funds. Subchapter II authorizes withdrawals from trust funds programs. Subchapter III creates the position of Special Trustee for American Indians. Subchapter IV authorizes appropriations. The Special Trustee is a creation of Subchapter III of the Reform Act which has as its purposes: more effective management of and accountability for the Secretary's trust responsibilities to tribes, the goal of reforming and carrying out in a unified manner the trust responsibilities, and overseeing certain reform efforts. *See* 25 U.S.C. § 4041-43. The Reform Act was adopted six years after the Hoopa-Yurok Settlement Act became law. Consequently, the Settlement Act makes no reference to the Reform Act and it gives no special authority to the Office of Special Trustee which was created after Congress passed the Settlement Act. This does not mean, however, that the Reform Act does not apply.

---

[4] The Comptroller General of the United States in Opinion B-290233, issued October 22, 2002, 2002 U.S. Comp. Gen. LEXIS 265, concluded that the Department of the Interior Associate Deputy Secretary was an "employee" rather than an "officer" either principal or inferior of the Department, and thus was not subject to the Appointment Clause's PAS or statutory delegation procedures. Accordingly, it is unclear that the Associate Deputy Secretary could ever have exercised the Secretary's authority under the Hoopa-Yurok Settlement Act here.

As a creature of the Reform Act, the authority and responsibilities of the Special Trustee are defined effective April 21, 2003, by Pt. 109, Chapter 11 of the Departmental Manual. "The Special Trustee exercises Secretarial direction and supervision, pursuant to the 1994 Reform Act, over of the Office of Special Trustee for American Indians." *Id*. § 11.3 (emphasis added). The regulations adopted under the Trust Reform Act delineate that authority. The final rule adopting 25 C.F.R. Pt. 1200 notes that "the Act, for the first time, permits American Indian tribes to take tribal funds out of trust status with the Department of the Interior." 61 Fed. Reg. 67931. The situation is analogous to *Estate of Madeline Bone Wells*, 15 IBIA 165 (1987). In *Wells*, the Agency Superintendent proposed to disperse funds from an IIM account for funeral expenses. However, after responsibility for Indian probate shifted to the Office of Hearings and Appeals, the IIM regulations were not updated. The Board held that the Superintendent's authority had been superseded by the new authority vested in administrative law judges by the Departmental Manual and regulations. Similarly, here the Reform Act governs any action by the Special Trustee to allow withdrawal from old trust funds such as those contained in the Hoopa-Yurok Settlement Fund.

Unlike the Secretary himself, or certain other Departmental officials, the Special Trustee only has authority to release Indian trust funds pursuant to Section 202 of the Reform Act and the related regulations.[5] The Hoopa-Yurok Settlement Act reserved to Congress the authority to further distribute resources such as this. 25 U.S.C. § 1300i-11(c). The Reform Act had not yet become law in 1988, but it clearly now does apply to the Special Trustee. The fact that the

[5] This limited authority is underscored by the provisions of 25 C.F.R. pt. 115 which govern trust funds for tribes and individual Indians. *See* 66 Fed. Reg. 7094 (Jan. 22, 2001). 25 C.F.R. § 115.806 provides for BIA review of requests for distribution to assure statutory compliance. Section 115.815 governs requests for access to tribal trust funds and points to the provisions of 25 C.F.R. pt. 1200.

Special Trustee's letters make no reference to the procedures required by the Reform Act adds nothing to his authority or his ability to act outside the Reform Act. It is a glaring omission by the Special Trustee that does not provide grounds to deny jurisdiction over this appeal.[6]

Plainly, the Special Trustee plans to withdraw from trust status and distribute to the Yurok Tribe the balance of the Hoopa-Yurok Settlement Fund on April 20, 2007. This is a clear example of a withdrawal of funds within the meaning of 25 C.F.R. § 1200.11 and it approves the Yurok Tribe's application for that withdrawal as provided in its waiver. Plainly, there is a "disagreement" concerning the lawfulness of the Special Trustee's action and "any disagreements over application approvals are subject to the criteria and procedures in § 1200.21 of the regulation." 61 Fed. Reg. 67,932 (Dec. 26, 1996) (emphasis added).[7] Because 25 C.F.R. § 1200.21 expressly authorizes appeal under 43 C.F.R. pt. 4, the Board has jurisdiction here. Because the Special Trustee's decision concerns trust funds held for tribes and individual Indians, and allows withdrawal of such funds and distributions to a tribe, it must conform to the requirements of the Reform Act. If this act walks like a duck, and quacks like a duck, it should be treated as a duck.

[6] The Board's statement that because the Special Trustee's decision "do not purport to be taken pursuant to 25 C.F.R Part 1200," jurisdiction to hear the appeal cannot vest, can lead to absurd results. 44 IBIA at 212. Taken to its logical conclusion, Department officials might simply fail to cite controlling authority for their action to avoid the Board's jurisdiction. Certainly, this cannot be a result that the Board desires.

[7] The Board makes too much of the "Hoopa Tribe's assertion that in this appeal it does not seek a share of the remainder of the Settlement Fund." 44 IBIA 212. This is because the equal division plan for the funds proposed by the Hoopa Valley Tribe requires new congressional authority. The Board cannot allocate the fund. Indeed, any change in the status of the funds requires congressional direction. *See* Hearing before the Committee of Indian Affairs United States Senate, S. Hrg. 107-648 at 88 (Aug. 1, 2002) (Testimony of Assistant Secretary—Indian Affairs Neal A. McCaleb).

The Special Trustee's limited authority here is also illustrated by Mr. Swimmer's minimal involvement in the matter prior to March 1, 2007. Attached as Exhibits HVT-15 and HVT-16 are the Hoopa Valley Tribe's March 22, 2006 letter to the Special Trustee (requesting a report on the Settlement Fund balance and investment information pursuant to the Reform Act) and the June 13, 2006 reply of the Deputy Special Trustee-Field Operation stating the balance of the Fund as of June 12, 2006. The Special Trustee's duties regarding these funds are no different than those for other Indian trust funds. Neither Congress nor the Secretary of the Interior has bestowed upon the Special Trustee a wide-ranging power to dispose of Indian trust funds. The Special Trustee is bound by the regulations and these create jurisdiction in the Board in the event of exactly these types of disputes over the disposition of trust funds.

There is an appealable disagreement within the meaning of 25 C.F.R. § 1200.21 concerning the Special Trustee's rejection of the Hoopa Valley Tribe's proposal for the funds and his approval of the Yurok Tribe's request for 100% of the funds.

**4. Reconsideration is in the Interest of Justice Because it Will Avoid a Likely Loss to the Judgment Fund.**

The Board should stay the effectiveness of Mr. Swimmer's decisions pending consideration of the merits and thus protect the United States from damages liability in the Court of Federal Claims for misapplication of trust funds. The trust funds at issue are subject to particular statutory and judicial constraints. To the extent that the Hoopa-Yurok Settlement Act does not authorize this expenditure, as the Tribe's Statement of Reasons shows, the standards of *Short v. United* and particularly *Short III*, 719 F.2d 1133, 1135 (Fed. Cir. 1983) and *Short VI*, 28 Fed. Cl. 590, 595 (1993), *aff'd*, 50 F.3d 994 (Fed. Cir. 1995), must be met or the United States will be liable in damages for breach of trust.

In *Short VI*, plaintiffs pointed to a 1991 distribution to members of the Hoopa Valley Tribe in which other Indians of the Reservation outside the Tribe did not share. The Court noted that the plain language of Section 7 of the Act, 25 U.S.C. § 1300i-6, permitted the distribution. The Court concluded that a reasonable construction of the Settlement Act is that it changed the nature of the government's discretion to make per capita distributions.

> Under the law of this case, it is within the Secretary of the Interior's discretion to make per capita distributions. *Short IV*, 12 Cl. Ct. at 44. The Secretary's discretion is constrained by statutes including 25 U.S.C. §§ 117a and 407, and by the fiduciary relationship between the Secretary and the Indians. *Short III*, 719 F.2d at 1135-37. The Settlement Act is simply another statute that constrains the Secretary's discretion in new ways.

*Short VI*, 28 Fed. Cl. 590, 594-95. In other words, the Settlement Act requires that the Secretary use the Settlement Fund for the benefit of all "Indians of the Reservation," unless another provision of the Act expressly allows another use. No provision of the Settlement Act allows this use for the distribution violates the plain language of 25 U.S.C. §§ 1300i-1(c)(4); 1300i-8(d). Moreover, the Yurok Tribe is now poised to distribute the tribal trust funds held as part of the Settlement Fund to its members through a per capita payment. Exhibit HVT-17 (attached hereto). There can be no mistaking that the *non sequitor* request by the Yurok Chairwoman that all members "contact the Enrollment Department . . . to update their details" telegraphs a per capita distribution. *Id.* Such a payment of federal trust monies committed to the benefit of all "Indians of the Reservation" to only Yurok members plainly violates the fiduciary relationship.

The Settlement Act did not supersede the rulings in *Short v. United States*. *See* 25 U.S.C. § 1300i-2. Those rulings require that all Indians of the Reservation, including the Hoopa Valley Tribe, be benefited by expenditures from these funds unless the Act otherwise provides. Thus, if

the Settlement Act does not authorize the distribution contemplated by the Special Trustee, and the funds are expended, the United States will be liable in the Court of Federal Claims.

The interests of justice should also compel the Board to act here because judicial review by a United States District Court of the administrative decisions here will likely not reach the merits of the action because of Fed. R. Civ. P. 19. A court might find that the Yurok Tribe has a legal interest in the litigation concerning the validity of the Special Trustee's decisions. Because the Yurok Tribe has sovereign immunity and cannot be compelled to participate in the litigation, the litigation would almost be certainly dismissed under Fed. R. Civ. P. 19. *See, e.g., Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992), *cert. denied*, 509 U.S. 903 (1993) (suit by Indians and tribe challenging implementation of Hoopa-Yurok Settlement Act dismissed because absent tribes were indispensable parties and were immune from suit).[8]

Importantly, the rigid limitations of Rule 19 do not restrict the Board. *E.g., Citizen Potawatomi Nation v. Dir., Office of Self-Governance*, 42 IBIA 160, 171 (2006); *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Anadarko Area Dir.*, 28 IBIA 169, 181, n. 16 (1995); *Indians of the Quinault Reservation v. Comm'r of Indian Affairs*, 9 IBIA 63, 65 ("it is not incumbent on administrative tribunals to invoke traditional rules of joinder and of necessary or indispensable parties. *Nat'l Licorice Co. v. NLRB,* 309 U.S. 350 (1960)"). Thus, it appears that the Board is the only tribunal which can review the Special Trustee's decision prior to its implementation. The Board can proceed to the merits of this appeal prior to exposing the United States to damages liability. The interests of justice require that these trust funds remain in their

[8] *See also, e.g., Dawavendewa v. Salt River Proj.*, 276 F.3d 1150, 1155 (9th Cir. 2002); *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999); *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999); *Cherokee Nation of Oklahoma v. Babbitt*, 944 F. Supp. 974, 979 (D.D.C. 1996), *rev'd on other grounds*, 117 F.3d 1489 (D.C. Cir. 1997); *Pit River Home Ass'n v. U.S.*, 30 F. 3d 1088, 1098 (9th Cir. 1994); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1459 (9th Cir. 1994); *Wichita & Affiliated Tribes v. Hodel,* 788 F.2d 765 (D.C. Cir. 1986).

current tribal trust fund status until the merits can be examined. The funds have been impounded since 1974, *see* Exhibit HVT-14, so no hardship will be created by maintaining the status quo.

**5. <u>Conclusion</u>**

For the foregoing reasons, the Board should reconsider its March 27, 2007 decision, exercise jurisdiction over this appeal, and grant the Hoopa Valley Tribe's petition for a stay pending appeal which was filed together with the Tribe's notice of appeal.

DATED this 17th day of April, 2007.

Respectfully submitted,

MORISSET, SCHLOSSER, JOZWIAK & McGAW

Thomas P. Schlosser WSBA# 06276
*Attorneys for the Appellant Hoopa Valley Tribe*

## PROOF OF SERVICE

I hereby certify that on April 17, 2007, I caused the foregoing document described as: ***Hoopa Valley Tribe's Petition for Reconsideration*** to be served as required by 43 C.F.R. 4.21(3), 4.310(b), 4.332(a), 4.333, and 25 C.F.R. 2.9 & 2.12(b) on the individual(s) listed below as follows:

**BY OVERNIGHT DELIVERY**

Director
Office of Hearings and Appeals
Interior Board of Indian Appeals
801 North Quincy Street, Suite 300
Arlington, VA 22203

Ross Swimmer
Special Trustee for American Indians
Office of the Special Trustee for American Indians
Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

**BY UNITED STATES MAIL**

Carl J. Artman
Assistant Secretary-Indian Affairs
Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

Associate Solicitor for Indian Affairs
Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

Clifford Lyle Marshall, Chairman
Hoopa Valley Tribal Council
Hoopa Valley Tribe
P.O. Box 1348
Hoopa, CA 95546

Maria Tripp, Chairperson
Yurok Tribal Council
190 Klamath Boulevard
Klamath, CA 95548

Executed April 17, 2007, at Seattle, Washington.

Nina Cordova

Nina Cordova

T:\WPDOCS\0020\09561\IBIAReconPet_fnl.doc
nmc:4/17/07



# Hoopa Valley Tribal Council

HOOPA VALLEY TRIBE
Regular Meetings on the First and Third Thursday of Each Month
P.O. Box 1348 • HOOPA, CALIFORNIA 95546 • Phone 625-4211 • Fax 625-4594



Clifford Lyle Marshall, Sr.
Chairman

March 22, 2006

***Via First-Class Mail & Facsimile - (202) 208-7545***

Ross O. Swimmer, Special Trustee
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

Re: Hoopa-Yurok Settlement Fund, Trust Account No. J50-501-7193

Dear Mr. Swimmer:

We would like to receive a report on the balance and composition of the Hoopa-Yurok Settlement Fund. This account was established pursuant to 25 U.S.C. § 1300i-3 which requires the Secretary to "invest and administer such fund as Indian trust funds pursuant to section 162a of this title."

We recently received a report on the status of this Fund as part of the report of the Assistant Secretary-Indian Affairs made pursuant to 25 U.S.C. § 1300i-11(c) (Mar. 15, 2002). The page summarizing the status of the account is attached. A full copy of the report is available from the Department or can be downloaded from http://www.schlosserlawfiles.com/Section14Report.pdf.

The Assistant Secretary's report declared that "the Fund dollars would be administered for the mutual benefit of both the Hoopa Valley and Yurok tribes." Proper administration requires regular reporting. Please provide us detailed information concerning the current balance and investment of the Fund.

Sincerely,

/s/

Clifford Lyle Marshall, Chairman
Hoopa Valley Tribal Council

Enclosure
cc: James Cason, Assistant Secretary-Indian Affairs
Carl Artman, Associate Solicitor-Indian Affairs

T:\WPDOCS\0020\09561\CORRESP\Swim032206_l01.DOC/tps:3/22/06

# United States Department of the Interior

OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS
Albuquerque, NM 87109

TAKE PRIDE IN AMERICA

JUN 13 2006

Honorable Clifford Lyle Marshall
Chairman, Hoopa Valley Tribal Council
P.O. Box 1348
Hoopa, California 95546

Dear Chairman Marshall:

We have been asked to provide the balance of the Hoopa/Yurok Settlement Act to Tom Schlosser, attorney at law. However, we do not have a current resolution from the Tribe authorizing the Office of the Special Trustee for American Indians (OST) to release any information to Mr. Schlosser. We have been provided guidance by the Solicitor's office authorizing us to release the information directly to you.

The balance in the Hoopa/Yurok Settlement Act fund is $89,639,816.77 as of June 12, 2006.

Sincerely,

Douglas A. Lords
Deputy Special Trustee-Field Operations

cc: Honorable Howard McConnell, Chairman, Yurok Tribe

4400 Masthead N.E.

# YURO K TRIBE

190 Klamath Boulevard • Post Office Box 1027 • Klamath, CA 95548

March 21, 2007

Aiy-yu-kwee' ni kee-chew:

As you are aware, the Yurok Tribal Council received notification on Thursday March 1, 2007 from the Department of the Interior that the Yurok Tribe will receive the accrued funds from the Hoopa-Yurok Settlement Act; an estimated $90 million dollars. This represents the hard work of many people over many years.

In the notification letter received from the Department of the Interior (enclosed with this letter), through the Office of the Special Trustee, the Tribal Council must provide a waiver of claims to the Interior Department. As stated in the letter from the Department to the Tribe "...the Department will not take action on this final decision and distribute the remaining funds until thirty (30) days after the Department has received an unconditional waiver from the Yurok Tribe consistent with the Act".

The Tribal Council passed a resolution providing the Interior Department with the required unconditional waiver. On March 21, 2007 the Department of the Interior accepted the Tribe's waiver. You will see within the acceptance letter (also enclosed with this letter) that the thirty (30) day waiting period has begun and is expected to conclude on April 20, 2007. On that date management of the settlement fund will transfer from Interior to the Tribe.

Council anticipates that there may be legal challenges to the Department's decision during the thirty (30) day period and we are preparing a strategy accordingly. Once we reach the end of the thirty (30) day period we will have a much clearer picture of how to proceed and at that time, we will be reaching out to the membership again. In the meantime, we thank you for your patience.

On a final note, Council is concerned about the number of undeliverable addresses that we have on our register. Enclosed with this letter is a list of those undeliverable addresses and we ask that if you know anyone on this list, to please have them contact the Enrollment Department in Klamath to update their details.

Wok-hlaw'

Maria Tripp

Maria Tripp, Chairperson
**YUROK TRIBAL COUNCIL**

| Fax Check | | |
|---|---|---|
| Log | (Y) | N |
| Chi/Mat | (Y) | N |
| | | |
| Copy | Y | (N) |
| Date | 3-30-7 | |
| Initial | NKC | |

**RECEIVED**

MAR 30 2007

MORISSET, SCHLOSSER,
JOZWIAK & McGAW
SEATTLE OFFICE VIA
☐HAND ☐MAIL ☐EXPRESS ☑FAXED

Phone: (707) 482-1350 • Fax: (707) 482-1377

United States Department of the Interior
OFFICE OF THE SPECIAL TRUSTEE FOR AMERICAN INDIANS
Washington, D.C. 20240

March 21, 2007

SENT VIA FACSIMILE

Honorable Clifford Lyle Marshall
Chairman, Hoopa Valley Tribe
P.O. Box 1348
Hoopa, California 95546

Honorable Maria Tripp
Chairperson, Yurok Tribe
190 Klamath Boulevard
Klamath, California 95548

Dear Chairman Marshall and Chairperson Tripp:

I received today a copy of Yurok Tribal Council Resolution 07-037. This resolution provides an unconditional waiver of claims that the Yurok Tribe may have against the United States arising out of the provisions of the 1988 Hoopa-Yurok Settlement Act.

Upon review, I find that the resolution meets the requirements of the Act. Therefore, the Department intends to distribute to the Yurok Tribe the funds still held by the Department pursuant to the Act, including the remaining balance of the Hoopa-Yurok Settlement Fund, based on my decision letter dated March 1, 2007.

As noted in the March 1 letter, however, the Department will not distribute the remaining funds to the Yurok Tribe until thirty days after the Department received the waiver required by the Act. Accordingly, the Department will not take further action consistent with this decision until April 20, 2007.

Sincerely,

Ross O. Swimmer
Special Trustee for American Indians

| Fax Check | | |
|---|---|---|
| Log | Y | N |
| Chi/Mat | Y | N |
| Copy | Y | N |
| Date | 3-30-7 | |
| Initial | NKC | |

RECEIVED

MAR 30 2007

MORISSET, SCHLOSSER, JOZWIAK & McGAW
SEATTLE OFFICE VIA
☐HAND ☐MAIL ☐EXPRESS ☒FAXED

Ex. HVT-17, p. 2
App. 392