LAW OFFICES
MORISSET, SCHLOSSER, JOZWIAK & MCGAW
A PROFESSIONAL SERVICE CORPORATION

SHARON I. HAENSLY (WA)
FRANK R. JOZWIAK (WA)
KYME A.M. MCGAW (WA, OK)
MASON D. MORISSET (WA)
THOMAS P. SCHLOSSER (WA)
ROB ROY SMITH (WA, OR, ID)
THANE D. SOMERVILLE (WA)

COMPTROLLER
M. ANN BERNHEISEL

1115 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WA 98104-1509

TELEPHONE: (206) 386-5200
FACSIMILE: (206) 386-7322

WWW.MSAJ.COM

# MEMORANDUM

**TO:** David Bernhardt, Solicitor

**FROM:** Thomas P. Schlosser

**DATE:** March 23, 2006

**RE:** Can the Yurok Interim Council's Failure to Satisfy 25 U.S.C. § 1300i-1(c)(4) be Cured?

---

This memorandum examines whether the Yurok Tribe or its current governing body can now satisfy the requirements of section 2(c)(4) of the Hoopa-Yurok Settlement Act by curing the failure of the Interim Council of the Yurok Tribe to adopt a resolution "waiving any claims such tribe may have against the United States arising out of the provisions of this Act." Briefly, the answer is "no."

This memorandum reviews the Act, Interior Department rulings concerning the Interim Council of the Yurok Tribe, the litigation initiated by the Interim Council and pursued by the Yurok Tribe's governing body, and the effect of *res judicata* and the concept of bar.

## 1. The Hoopa-Yurok Settlement Act Waiver Requirement

The Hoopa-Yurok Settlement Act, Pub. L. 100-580, *codified as amended at* 25 U.S.C. § 1300-i *et seq.*, offered monetary awards in exchange for claim waivers by individuals qualified for a Settlement Roll, the Hoopa Valley Tribe, and the Interim Council of the Yurok Tribe. The tribal claim waiver provisions appear in sections 2 and 9 of the Act. The waiver provisions arose from concerns by the United States Department of Justice that a taking of property protected by the Fifth Amendment could be found by a court reviewing the Act. The statement of Rodney R. Parker, for the Justice Department, expressed the understanding that waiver language in the Senate bill as introduced already evidenced tribal consent but he requested "a provision requiring express tribal consent [which] could provide a clearer acknowledgment by the tribal government that no taking has occurred." S. Rep. 100-564 at 40 (1988). Accordingly,

the final version of the bill expanded the claim waiver requirements of sections 2(a), 2(c)(4) and 9(d)(2) of the Act. The Senate Report explains that the authority for certain transfers of funds and lands:

> [S]hall not be effective unless the Interim Council of the Yurok Tribe adopts a resolution waiving any claims it might have against the United States under this Act and granting consent as provided in section 9(d)(2). Section 9 of the bill provides for an Interim Council to be elected by the General Council of the tribe.

S. Rep. 100-564 at 18 (1988).

**2. Application of the Waiver Requirement**

On December 7, 1988, the Interior Department published a notice that the Hoopa Valley Tribe had adopted a valid resolution which met the requirements of section 2(a)(2)(A) of the Act. 53 Fed. Reg. 49361.[1] Pursuant to the Act, a roll of eligible Indians was prepared and approximately 3,000 persons selected the option of membership in the Yurok Tribe. Pursuant to section 6(c)(4), persons electing Yurok membership waived their individual claims and also granted to members of the Interim Council a proxy directing them to approve a proposed resolution waiving any claim the Yurok Tribe may have against the United States arising out of the Act and granting necessary tribal consent. Under section 9(c), the Secretary of the Interior prepared a voter list for adults who elected the Yurok tribal membership option, convened a General Council meeting of the eligible voters, and conducted an election of a five-member Interim Council.

On November 19, 1991, Acting Associate Solicitor, Division of Indian Affairs, Scott Keep wrote to congressional aide Jason Conger concerning individuals who accepted the payments authorized to be made under section 6(c) of the Act ($5,000 or $7,500 each). He held they were “legally bound by the terms of the Act to accept the privileges and limitations associated with Yurok tribal membership,” although certain amounts had been withheld from the payments for attorney fees.

The BIA Sacramento Area Director requested an opinion on several issues that arose at the organizational meeting of the Interim Council held on November 25-26, 1991. Duard R. Barnes, Assistant Solicitor, Branch of General Indian Legal Activities, responded with a thorough opinion on February 3, 1992, which concluded:

(1) The Interim Council of the Yurok Tribe automatically dissolved two years after November 25, 1991;

[1] The approved resolution noted that “the waiver required by the Act does not prevent the Hoopa Valley Tribe “from enforcing rights or obligations created by this Act,” S. Rep. 100-564 at 17.” *Id.*

(2) The Settlement Act permits three separate Interim Council resolutions, if necessary, to address claim waiver, contribution of escrow monies, and receipt of grants and contracts;

(3) Refusal to pass resolution waiving claims against the United States and/or filing a claim would prevent the Yurok Tribe from receiving the apportionment of funds, the land transfers, and the land acquisition authorities provided by various sections of the Settlement Act, but would not preclude the Yurok Tribe from organizing a tribal government;

On March 11, 1992, the Yurok Interim Council filed *Yurok Indian Tribe v. United States*, No. 92-CV-173 (Fed. Cl.). The complaint asserted "claims for just compensation under the Fifth Amendment to the Constitution of the United States for the taking of compensable property and property rights of the Yurok Tribe by the United States under the Hoopa-Yurok Settlement Act of 1988." *Id*., ¶ 1.

On April 13, 1992, Assistant Secretary-Indian Affairs Eddie F. Brown wrote to the Chairman of the Hoopa Valley Tribe indicating that the Yurok Interim Council's decision to file the claims in *Yurok Tribe v. United States* "means that the same consequences follow as if it fails to enact a resolution waiving claims against the United States." Mr. Brown deferred responding to the Hoopa Valley Tribe's request for access to the funds remaining in the Hoopa-Yurok Settlement Fund as a result of the filing of *Yurok Tribe v. United States*.

On November 23, 1993, Assistant Secretary-Indian Affairs Ada E. Deer wrote to the Vice-Chairman of the Yurok Interim Council expressing willingness to accept the decision of the Yurok Tribe to organize outside the authority offered by the Settlement Act. Ms. Deer cautioned that the Yurok Interim Council would, on November 25, 1992, lose the legal powers vested in it by the Settlement Act. She said, "the authority vested in the Interim Council by section 2(c)(4) of the Act to waive claims against the United States will expire on November 25, 1993." Ms. Deer pointed out that "[a]ny subsequent waiver of claims by the Tribe will be legally insufficient."[2]

On April 4, 1994, Assistant Secretary-Indian Affairs Ada E. Deer wrote to the Chair of the Interim Tribal Council of the Yurok Tribe determining that Resolution No. 93-61, approved November 24, 1993, did not meet the requirements of the Act. She stated:

> It is quite clear that Resolution No. 93-61 specifically preserves, rather than waives, the Yurok tribe's taking claim against the United States. Indeed, the Yurok Tribe has filed a claim in the

[2] The Yurok Tribe could have challenged the Assistant Secretary's determination that any waiver after November 25, 1993, would be legally insufficient, but failed to do. The claim is now barred by the applicable six-year statute of limitations.

> U.S. Court of Federal Claims asserting that the Hoopa-Yurok Settlement Act effected a taking under the Fifth Amendment of the United States Constitution.

*Id*. at 3. The Assistant Secretary reaffirmed the February 3, 1992 Solicitor's Opinion conclusion that filing suit in the Claims Court would produce the same results as would the Interim Council's failure to enact a resolution waiving claims under the Act.[3]

On March 14, 1995, Assistant Secretary-Indian Affairs Ada E. Deer wrote the Chairperson of the Yurok Tribal Council rejecting the Tribal Council's request for reconsideration of her decision of April 4, 1994. Ms. Deer explained that the legislative history of the Act indicates that potential taking claims against the United States were precisely the type of claims Congress was most concerned about, which explained why waiver of such claims were essential elements to triggering key provisions of the Act. She stated:

> In our opinion, the Tribe's decision to prosecute its claim in this litigation is inconsistent with the waiver of claims required under the Act. Were there to be a settlement of the lawsuit, it would have to be accomplished before the case has proceeded to a determination on the merits. This is necessary to both save time, energy and money on costly legal proceedings and because a settlement will not be possible if the court has ruled on any portion of the merits.

Ms. Deer urged the Yurok Tribe to seek a stay of proceedings in *Yurok Tribe v. United States* in order to conduct a referendum and undertake settlement negotiations. The Yurok Tribe made no such motion nor did it conduct a referendum.

After another year, on May 17, 1996, the parties to *Yurok Tribe v. United States* (which had been consolidated with other claims under the heading of *Karuk Tribe of California, et al. v. United States, et al.*, No. 90-CV-3993), filed a joint motion to postpone oral argument on cross-motions for summary judgment on the merits. The court granted that motion, and related motions, delaying oral argument on the motions for summary judgment until January 29, 1998. Subsequently, on August 6, 1998, the court denied plaintiffs' motions for summary judgment and granted the cross-motions for summary judgment of the United States and the Hoopa Valley Tribe, and directed the clerk to dismiss the complaints. *See Karuk Tribe of California v. United States*, 41 Fed. Cl. 468 (1998), *aff'd*, 209 F.3d 1366 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 941 (2001).

During the period 1995-2001, the Yurok Tribe and the United States engaged in settlement negotiations concerning its claims. Indeed, the March 14, 1995 letter of Assistant Secretary-Indian Affairs Ada E. Deer, states a settlement position advanced by

---

[3] The 1994 decision of the Assistant Secretary also could have been challenged, but was not, and that claim is barred by the statute of limitations.

the United States, which was that the Yurok Tribal Council could cure the deficiencies in Resolution No. 93-61 of the Interim Council, even at that late date, if a settlement was accomplished before a final determination on the merits. The Hoopa Valley Tribe made similar proposals and urged the settlement of the case. Defendants were concerned that unless the Act's benefits could be made available there would be little incentive for the Yurok Tribe to settle. Defendants explored every option to bring the matter to a close. However, no settlement offer was accepted and the litigation was concluded on the merits by the U.S. Supreme Court's Order of March 26, 2001. Defendants' proposals, including the suggestion in the Assistant Secretary's March 14, 1995 letter, cannot change the requirements of the Act. Also, conduct or statements of this kind that were made in settlement negotiations during this period have no evidentiary value. *See* Fed. R. Evid. 408.

**3. Res Judicata and the Concept of Bar**

The takings claim that was to be waived by the Yurok Interim Council under the HYSA was instead litigated and lost by the Tribe. As explained below, the takings claim has been extinguished by the previous litigation and judgment on the merits in favor of the United States. As a matter of law, the Tribe no longer has a takings claim to waive.

Under the doctrine of claim preclusion, a party that litigates a claim to final judgment is forever barred from subsequent litigation of that same claim. *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (stating "[r]es judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action"); *Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1876) (holding "[T]he judgment, if rendered upon the merits, constitutes an absolute bar to the subsequent action. It is finality as to the claim or demand in controversy . . ."); *see also* 18 Moore's Federal Practice (3d. ed), § 131.01 (2005) (stating "[I]f the plaintiff loses the litigation, the resultant judgment acts as a *bar* to any further actions by the plaintiff on the same claim, with limited exceptions") (emphasis in original). The doctrine of claim preclusion is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *See Glickman*, 123 F.3d at 1192. When claim preclusion applies, as it does here, a party's claim is extinguished upon final judgment. *Hornback v. United States*, 405 F.3d 999, 1001 (Fed. Cir. 2005). Thus, a purported waiver of a claim that has been extinguished by a prior final judgment is void *ab initio*.

Claim preclusion, and the concept of "bar" prevents a party who loses in litigation from bringing a subsequent action based on the same transaction or series of transactions by simply asserting additional facts or proceeding under a different legal theory. *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1095 (9th Cir. 1990) (stating that claim preclusion precludes relitigation of all grounds supporting recovery regardless of whether they were asserted or determined in the prior proceeding); *Kasper Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978) (concluding that when defendant obtains favorable judgment, it acts as a "bar" to subsequent litigation on same claim by

plaintiff); Restatement 2d of Judgments §§ 19, 24 (1982). A valid judgment, even if erroneous, that is final and rendered on the merits can form the basis for claim preclusion. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). The judgment "puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever . . ." *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948).

**4. Claim Preclusion Extinguishes the Claim**

The doctrine of claim preclusion not only prohibits subsequent litigation of claims, but it wholly *extinguishes* the claim and any rights that a plaintiff has in the claim after final judgment is rendered. *Hornback*, 405 F.3d at 1001 (Fed. Cir. 2005) (holding that claim preclusion "extinguishes all rights of the plaintiff . . . with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose); *Gonzales v. Hernandez*, 175 F.3d 1202, 1205 (10th Cir. 1999) (stating that a final judgment extinguishes plaintiff's claims); *Kotsopoulos v. Asturia Shipping Co., S.A.*, 467 F.2d 91, 95 (2d. Cir. 1972) (stating "once a claim is reduced to judgment, the original claim is extinguished and merged into the judgment"); *see also* Restatement 2d of Judgments § 24(1) (1982) ("When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of [res judicata], the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose"). Thus, once a plaintiff litigates a claim to final judgment on the merits, as the Yurok Tribe did in litigation, the plaintiff no longer possesses a legal claim - - the plaintiff's claim is extinguished by the prior judgment.

The United States Supreme Court has emphasized that the doctrine of claim preclusion is more than a matter of procedure, it ensures that "rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound in it in every way." *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299 (1917). Extinguishing claims via the claim preclusion doctrine provides finality and a conclusive end to litigation, promotes judicial economy, and fosters reliance on court judgments. 18 Moore's Federal Practice (3d ed.), § 131.12 (2005).

Applying these well-established principles here, it is plain that the Yurok Tribe's takings claim against the United States arising out of the Act has been adjudicated in a final decision on the merits, is extinguished, and thus can no longer be "waived." *Karuk, et al*., 209 F.3d at 1366. The Tribe's Complaint against the United States, filed in March 1992, states that "plaintiff, a federally recognized Indian Tribe, asserts claims for just compensation under the Fifth Amendment to the Constitution of the United States for the taking of compensable property and property rights of the Yurok Tribe by the United States under the [HYSA of 1988]." The Tribe's Complaint requested the Court to enter "judgment awarding the Yurok Tribe just compensation for the taking of its compensable property rights . . . ." This takings claim was the claim that was to be waived by the Interim Council prior to November 25, 1993. 25 U.S.C. §§ 1300i-1(c)(4) and 1300i-11(a). Congress chose the term "claim," which has a well-recognized legal

meaning. The use of the term must be given its purposeful effect. *Russello v. United States*, 464 U.S. 16, 23 (1983).

Instead of waiving its takings claims against the United States in accordance with the Act, the Yurok Tribe opted to litigate. Having been determined with finality on the merits against the Yurok Tribe, the takings claim that was the subject of the litigation has been extinguished. Accordingly, as a matter of law, the takings claim arising out of the Act no longer exists. Because the claim that was to be waived in 1993 no longer exists, it simply cannot be waived now, even if the Interim Council purported to do so.

**5. Conclusion**

The Settlement Act conditioned some benefits upon waiver of precisely the claim that the Yurok Tribe litigated on the merits from 1992 through 2001 and lost. The Act authorized certain persons to elect a five-member Yurok Interim Council, a Council that would exercise specific statutory powers for a two-year period and then go out of existence. During the two-year lifespan of the Yurok Interim Council, it was also hoped that the Yurok Tribe would adopt a constitution and choose a governing body. In fact, it did that, although the Tribe was unable to use the Indian Reorganization Act authority which was also offered as a Settlement Act benefit, but conditioned upon waiver.

After filing *Yurok Indian Tribe v. United States* in 1992, the Yurok Interim Council managed that litigation for approximately 20 months before it ceased to exist on November 25, 1993. Thereafter, the Yurok Tribal Council assumed the reins and managed the litigation to its bitter end in 2001. There is no action that the Yurok Tribe can take today that could resuscitate the extinguished taking claim against the United States that arose out of this Act. Any attempt at a new or amended waiver by the Yurok Tribal Council would be legally insufficient, as the Department has repeatedly ruled. A new waiver would be void *ab initio* because having been litigated and extinguished, there is no claim to be waived now, nor does the Yurok Interim Council exist to take action. There can be no waiver of a claim that no longer exists. The Department of the Interior correctly concluded in its March 15, 2002 report to Congress pursuant to section 14(c) of the Act that “the Yurok Tribe did not meet the waiver conditions of the Act and is therefore not entitled to the benefits enumerated within the Act.” The Department should adhere to that conclusion.

T:\WPDOCS\0020\09561\CORRESP\Bern032306_m01.doc
tps:3/23/06