IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HOOPA VALLEY TRIBE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 08-72 L |
| | ) | Judge Thomas C. Wheeler |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S COMBINED MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to RCFC 12(b)(1), Defendant, the United States of America ("Defendant"), moves to dismiss the Complaint filed by Plaintiffs Hoopa Valley Tribe, et al., ("Plaintiffs"). Alternatively, Defendant moves for summary judgment in regard to Plaintiffs' claims. Plaintiffs lack standing to pursue their claims. In addition, the Hoopa-Yurok Settlement Act (the "Act" or the "1988 Act") expressly precludes Plaintiffs' claims. Plaintiffs also fail to meet the requirements of the Indian Tucker Act. Furthermore, Plaintiffs' arguments regarding the Yurok Interim Council and the sufficiency of the Yurok's Tribe's 2007 waiver lack merit. Finally, Plaintiffs' claims regarding the *Short* litigation also lack merit. Consequently, Defendant's Motion to Dismiss should be granted. Alternatively, Defendant's Motion for Summary Judgment should be granted and Plaintiffs' Motion for Partial Summary Judgment should be denied.

Respectfully submitted on July 22, 2008,

RONALD J. TENPAS
Assistant Attorney General

/s/ Sara E. Costello
Sara E. Costello, Trial Attorney
Devon Lehman McCune, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0466 (tel.)
(202) 305-0267 (fax)
sara.costello@usdoj.gov

Of Counsel:
Scott Bergstrom
Department of the Interior
Office of the Solicitor

Attorneys for Defendant.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HOOPA VALLEY TRIBE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 08-72 L |
| | ) | Judge Thomas C. Wheeler |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| ______________________________ | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF DEFENDANT'S COMBINED MOTION TO DISMISS, OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

**I. STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II. BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**III. STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**IV. ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**A. Plaintiffs Lack of Standing to Pursue Their Claims** . . . . . . . . . . . . . . . . . . . . 10

**1. Plaintiffs Lack Standing, Because They Received Their Full Entitlement of The Settlement Fund** . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**2. Plaintiff Hoopa Valley Tribe Cannot Bring Suit as *Parens Patriae*** . 14

**B. The 1998 Act Expressly Precludes Plaintiffs' Claims** . . . . . . . . . . . . . . . . . . . 15

**1. Plaintiffs Waived Their Ability to Bring Claims Against the United States Arising from the 1998 Act** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**2. The Statute of Limitations Included in the 1988 Act Also Bars the Claims of Individual Plaintiffs** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**C. Plaintiffs Fail to Meet The Requirements of the Indian Tucker Act** . . . . . . 18

**1. The 1864 Act Creates Only a General Fiduciary Duty to Plaintiffs** . 20

**2. 25 U.S.C. § 407 No Longer Applies to the Settlement Fund** . . . . . . . 21

**3. The 1988 Act Does Not Contain Specific Fiduciary Duties Owed to Plaintiffs in Regard to the Portion of the Settlement Fund Set Aside for the Yurok Tribe** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**D. Plaintiffs' Arguments Regarding the Yurok Interim Council And The Sufficiency of Tribe's 2007 Waiver Lack Merit** . . . . . . . . . . . . . . . . . . . . . . . 24

**E. Plaintiffs' Claims Regarding the *Short* Litigation Lack Merit** . . . . . . . . . . . 28

**V. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aldridge v. United States*,
59 Fed. Cl. 387 (Fed. Cl. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Alfred L. Snapp & Son v. Puerto Rico*,
458 U.S. 592 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Anderson v. Liberty Lobby, Inc*.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Argent v. United States*,
124 F.3d 1277 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Arizonians for Official English v. Arizona*,
520 U.S. 43 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Army & Air Force Exch. Serv. v. Sheehan*,
456 U.S. 728 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bugenig v. Hoopa Valley Tribe*,
266 F.3d 1201 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services Inc.*,
528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Karuk Tribe v. United States*,
41 Fed. Cl. 468 (1998), *aff'd*, 209 F. 3d 1366 (Fed. Cir. 2000),
*cert. denied*, 532 U.S. 941 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 20, 26

*KVOS, Inc. v. Associated Press*,
299 U.S. 269 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*LeBeau v. United States*,
474 F.3d 1334 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Leonardo v. United States*,
55 Fed. Cl. 344 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Mitchell v. United States (Mitchell I)*,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mitchell v. United States (Mitchell II)*,
463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

*Navajo Nation v. United States (Navajo Nation II)*,
501 F.3d 1327 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Navajo Nation v. Superior Court of State of Wash. for Yakima County*,
47 F. Supp. 2d 1233 (E.D. Wash. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*NCLN20, Inc. v. United States*,
– Fed. Cl. –, 2008 WL 2346189 * 16 (Fed. Cl. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Northern Paiute Nation v. United States*,
10 Cl. Ct. 401 (Ct. Ct. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Renne v. Geary*,
501 U.S. 312 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rocovich v. United States*,
933 F.2d 991 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Short v. United States (Short I)*,
202 Ct. Cl. 870 (1973), cert. denied, 416 U.S. 961 (1974) . . . . . . . . . . . . . . . . . . . *passim*

*Short v. United States (Short II)*,
228 Ct. Cl. 535 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

*Short v. United States (Short III)*,
719 F.2d 1133 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21, 22

*Short v. United States (Short IV)*,
12 Cl. Ct. 36 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Short v. United States (Short V)*,
25 Cl. Ct. 722 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Short v. United States (Short VI)*,
28 Fed. Cl. 590 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Short v. United States (Short VII)*,

50 F.3d 994 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Smith v. United States*,
58 Fed. Cl. 374 (Fed. Cl. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
775 F.2d 1107 (Fed. Cir. 1985) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*U.S. Dept. of Energy v. Ohio*,
503 U.S. 607 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. King*,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Navajo Nation (Nation I)*,
537 U.S. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Sherwood*,
312 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Testan*,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. White Mountain Apache Tribe*,
537 U.S. 465 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**FEDERAL STATUTES**

13 Stat. 39 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

41 Stat. 415 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

25 U.S.C. § 407 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-22

25 U.S.C. § 413 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

25 U.S.C. §1300i-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

25 U.S.C. § 1300i-5(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

25 U.S.C. § 1300i-6(b) . . . . . . . . . . 30

25 U.S.C. § 1300i-8(d)(1) . . . . . . . . . . 25-28

25 U.S.C. § 1300i-11(a) . . . . . . . . . . 6-8,16

28 U.S.C. § 1491(a)(1) . . . . . . . . . . 18

28 U.S.C. § 1505 . . . . . . . . . . 18

**FEDERAL RULES**

RCFC 12(b)(1) . . . . . . . . . . 9

RCFC 14(a) . . . . . . . . . . 9

RCFC 56(b) . . . . . . . . . . 10

**FEDERAL REGULATIONS**

25 C.F.R. § 2.4 . . . . . . . . . . 8

25 C.F.R. Part 1200 . . . . . . . . . . 8

43 C.F.R. § 4.2(b)(2)(ii) . . . . . . . . . . 8

**OTHER AUTHORITIES**

CHARLES J. KAPPLER, INDIAN AFFAIRS: LAWS AND TREATIES, 816-17 (1904) . . . . . 2

FELIX S. COHEN, HANDBOOK OF FEDERAL INDIAN LAW, 229-35, 246-57 (1982 ed.) 25

**EXHIBIT**

Defendant's Exhibit A [44 I.B.I.A. 210] . . . . . . . . . . 8, 9

## QUESTIONS PRESENTED

The following questions are presented:

1. Do Plaintiffs lack standing to pursue their claims?
2. Does the Hoopa-Yurok Settlement Act (the "Act" or the "1988 Act") expressly preclude Plaintiffs' claims?
3. Do Plaintiffs fail to meet the requirements of the Indian Tucker Act?
4. Do Plaintiffs' arguments regarding the Yurok Interim Council and the sufficiency of the Yurok's Tribe's 2007 waiver lack merit?
5. Do Plaintiffs' claims regarding the *Short* litigation lack merit?

## I. STATEMENT OF THE CASE

In 1988, Congress passed the Hoopa-Yurok Settlement Act (the "Act" or the "1988 Act"), Pub. L. No. 100-580 (codified as amended at 25 U.S.C. § 1300i *et seq.*). In doing so, Congress intended to resolve longstanding issues regarding the ownership, management, and revenue of the joint reservation which encompassed the Hoopa Valley Reservation, the Klamath River Reservation, and an additional strip of land along the Klamath River in California. The 1988 Act aimed to distribute equitably the trust funds derived from the joint reservation's resources between Plaintiff Hoopa Valley Tribe and the Yurok Tribe. 25 U.S.C. §§ 1300i-1, 1300i-3. On April 20, 2007, the Department of the Interior distributed a portion of the Settlement Fund, created by the 1988 Act, to the Yurok Tribe.

On February 1, 2008, Plaintiff Hoopa Valley Tribe, on its own behalf, and in its capacity as *parens patriae* on behalf of its members; Oscar Billings; Benjamin Branham, Jr.; William F. Carpenter, Jr.; Margaret Mattz Dickson; Freedom Jackson; William J. Jarnahgan, Sr.; Joseph LeMieux; Clifford Lyle Marshall ("Plaintiffs") filed a Complaint [Dkt. No. 1] challenging the distribution of such funds to the Yurok Tribe. Shortly after filing their complaint, Plaintiffs filed a Motion for Partial Summary Judgment [Dkt. No. 9], asking for "judgment as a matter of law that the United States is liable for breach of fiduciary obligation resulting from its discriminatory distribution of the proceeds of timber sales and management of the former Joint Hoopa Valley Indian Reservation to fewer than all of the Indians of the Reservation for whom the Indian trust funds were collected."

Plaintiffs, however, fail to prove that they have any entitlement to the portion of the Settlement Fund set aside for the Yurok Tribe. It is undisputed that the "Hoopa Valley Tribe is

not entitled to further distribution under the Settlement Act [1988 Act]." Pls.' Mem., 3 n.3. Likewise, the 1988 Act expressly provided that those individuals of the former joint reservation electing membership in the Hoopa Valley Tribe "shall no longer have any right or interest whatsoever in the tribal, communal, or unallotted land, property, resources, or rights of the Yurok Indian Reservation or the Yurok Tribe or in the Settlement Fund." *Id*. at § 1300i-5(b)(4) (emphasis added). As explained below, Plaintiffs' claims must be rejected for multiple reasons. First, Plaintiffs lack standing to pursue their claims. Second, the 1988 Act expressly precludes Plaintiffs' claims. Third, Plaintiffs fail to meet the requirements of the Indian Tucker Act. Fourth, Plaintiffs' arguments regarding the Yurok Interim Council and the sufficiency of the Yurok's Tribe's 2007 waiver lack merit. Finally, Plaintiffs' claims regarding the *Short* litigation also lack merit. Consequently, Defendant, the United States of America's (Defendant), Motion to Dismiss should be granted. Alternatively, Defendant's Motion for Summary Judgment should be granted and Plaintiffs' Motion for Partial Summary Judgment should be denied.

## II. BACKGROUND

Pursuant to statutes and executive orders, the federal government set aside lands in northern California in the mid- to late-1800s to establish what are known today as the Hoopa Valley and Yurok Reservations. In 1855, the government established the Klamath River Reservation (inhabited mainly by Yurok Indians), which included an area extending approximately 20 miles up the Klamath River from the Pacific Ocean with lands one-mile wide on each side. CHARLES J. KAPPLER, INDIAN AFFAIRS: LAWS AND TREATIES 816-17 (1904) (Kappler). In 1864, the government established the Hoopa Valley Reservation (inhabited mainly by Hoopa Indians), called the "Square," which "extended six miles on either side of a

twelve-mile stretch of the Trinity River, up to the junction of the Trinity and the Klamath Rivers." *Bugenig v. Hoopa Valley Tribe*, 266 F.3d 1201, 1204–05 (9th Cir. 2001). In 1891, President Harrison passed an executive order enlarging the Square and creating a joint reservation by joining the Square with the Klamath River Reservation. *Id.* at 1205.

In the years that followed, the Secretary sometimes treated the two reservations as separate reservations, despite the 1891 executive order. Extensive timber harvesting began within the Square in the mid-1940s. When the Hoopa Valley Tribe reorganized in 1950 by adopting a tribal constitution and electing a governing body for the management of the Square, it excluded most Yurok from membership. *Short v. United States*, 202 Ct. Cl. 870, 951-67 (1973), *cert. denied*, 416 U.S. 961 (1974) (*Short I*).[1/] Accordingly, in the 1950s and 1960s, the Secretary of the Interior distributed timber revenues generated from the Square to Hoopa tribal members only, not to the Yurok or other Indians of the Reservation. Pls.' Mot., Ex. 6 [Senate Report, S. Rep. 100-564 (Sept. 30, 1988)], App. 84-85.[2/]

The Yurok and other Indians challenged this distribution in 1963. *Short I*, 202 Ct. Cl. 870. This suit resulted in the Court of Claims holding that the statute and executive orders established a single reservation, revenues from which all Indians associated with the joint reservation were entitled to share. *Id*. at 873-75, 974-81. Accordingly, in 1974, BIA established

---

[1/] The protracted *Short* litigation is set forth in multiple opinions. *See, e.g.*, *Short I*, 202 Ct. Cl. at 870; *Short II*, 228 Ct. Cl. 535 (1981); *Short III*, 719 F.2d 1133 (Fed. Cir. 1983); *Short IV*, 12 Cl. Ct. 36 (1987); *Short V*, 25 Cl. Ct. 722 (1992); *Short VI*, 28 Fed. Cl. 590 (1993); *Short VII*, 50 F.3d 994 (Fed. Cir. 1995)).

[2/] For the Court's convenience, numbered exhibits refer to the exhibits attached to the Hoopa Valley Tribe and Individual Hoopa Tribal Members' Mem. in Supp. of Mot. for Partial Summ. J. on Question of Breach of Trust Responsibility [Dkt. No. 9-4]. Exhibit A is attached to this pleading.

separate accounts for future timber proceeds pursuant to *Short I*, with 70 percent set aside for the *Short* plaintiffs and 30 percent set aside for Hoopa members, based on the relative populations of each group.[3/] Pls.' Mot., Ex. 1 [Finale Memorandum Regarding Hoopa Valley Reservation Trust Funds (June 25, 1974)]. In 1979, BIA established a joint "reservation-wide" account for these funds, but divided the revenues in a similar fashion. Pls.' Mot., Ex. 3 [Assistant Secretary - Indian Affairs Gerard Message to Hoopa and Yurok People (November 20, 1978)], App. 8. The Hoopa subsequently received funds from the 30 percent account and at least a portion of its share of the joint account. *See, e.g.*, *Short IV*, 12 Cl. Ct at 39, 42 (noting six per capita payments between 1974 and 1980 to Hoopa members from the 30 percent account and also separate distributions to the Hoopa governing body). BIA held the remainder of the joint account and the entire 70 percent account pending resolution of an appropriate distribution in the *Short* litigation. *Id*. at 39.

Congress eventually sought to resolve the longstanding issues regarding the joint reservation's ownership, management, and revenue. In 1988, Congress passed the Act, which had three general objectives: (1) provide for formal Yurok organization; (2) partition the joint reservation between the Hoopa and Yurok; and (3) distribute equitably between the two Tribes the trust funds derived from the joint reservation's resources. *See* 25 U.S.C. §§ 1300i-1, 1300i-

---

[3/] Plaintiffs emphasize that the BIA clarified that all Indians of the Reservation were entitled to the 70% account. *See, e.g.*, Pls.' Mot., 22; Pls.' Compl., ¶ 23. Although technically accurate, the BIA clearly indicated that the separate account was to ensure that the United States not be held liable for further mismanagement of the trust funds through distributions solely to Hoopa members. Pls.' Mot., Ex. 2 [Finale letter to Chairman Masten Regarding Set Aside Trust Funds (Mar. 19, 1975)]. In addition, Assistant Secretary Gerard proposed to organize the Yurok, distribute its share of trust funds (including the 70% account), and then establish a "Reservation-wide body" to address management and allocation of the Reservation's assets. Pls.' Mot., Ex. 3, App. 7-8.

3. The Act established the Hoopa-Yurok Settlement Fund (the "Settlement Fund" or "Fund"), which contained funds that were to be equitably distributed to the Hoopa Valley and Yurok Tribes based on the provisions of the Act. 25 U.S.C. § 1300i-3. The funds came from the proceeds generated from the resources of the joint reservation and held in trust by the Secretary in seven separate accounts including the 70 percent, 30 percent, and joint accounts noted above. *Id*. at § 1300i(b)(1). Upon enactment, the Secretary deposited the monies from these accounts into the Fund. *Id*. at § 1300i-5(c)(3), -5(d)(1).

The Act required the Hoopa to waive claims against the United States in order to receive the benefits specified by the Act. Specifically, to effectuate the partition of the joint reservation, the Act required the Hoopa to pass a resolution that waived any claims against the United States arising from the Act and that consented "to the contribution of Hoopa Escrow monies to the Settlement Fund, and for their use as payments to the Yurok Tribe and to individual Yuroks" under the Act. *Id*. at § 1300i-1(a)(2)(A). The Hoopa Valley Tribe passed such a resolution, and the BIA published notice of the resolution in the Federal Register. Pls.' Mot., Ex. 8 [Notice Regarding Hoopa Valley Tribe Claim Waiver, 53 Fed. Reg. 49361 (Dec. 7, 1988)]. These actions partitioned the joint reservation, establishing the Square as the Hoopa Valley Reservation and the remaining lands as the Yurok Reservation. 25 U.S.C. § 1300i-1(a) to (c)(1).

For the Hoopa's share of the proceeds, the Act provided that "the Secretary shall immediately pay out of the Settlement Fund into a trust account for the benefit of the Hoopa Valley Tribe" the percentage specified by the 1988 Act once the Secretary published the election date for tribal membership settlement options. *Id*. at § 1300i-3(c). Including certain interim payments and the final distribution in 1991, the Hoopa received $34,006,551.87, the amount

determined to be its share of the Fund pursuant to the Act. Pls.' Mot., Ex. 13 [Memorandum to Area Director Regarding Distribution of Funds (Aug., 22, 1991)], App. 152-53.

The Act also required the Yurok to waive claims against the United States in order to receive the benefits specified by the Act. In particular, the Act provided that the "apportionment" of the Settlement Fund, as well as the specified land transfer, acquisition, and tribal organizational authorities "shall not be effective unless and until the Interim Council of the Yurok Tribe has adopted a resolution waiving any claim such tribe may have against the United States arising out of the provisions of this Act." 25 U.S.C. §§ 1300i-1(c)(2)–(4); 1300i-3(c).

In 1993, the Yurok Interim Council passed a resolution stating that "[t]o the extent which the [Act] is not violative of the rights of the Yurok Tribe . . . under the Constitution...or has not effected a taking without just compensation of vested Tribal or individual [rights with respect to the Square," the Tribe waived any claim against the United States arising from the Act. The Department interpreted this provision as failing to satisfy the Act's requirements because it included a conditional waiver that acted to preserve, rather than waive, the Tribe's claims. In fact, the Yurok intervened in a constitutional challenge to the Act in 1992, arguing that the Act effected a Fifth Amendment taking of their property interests in the Hoopa Valley Reservation. *Karuk Tribe v. United States*, 41 Fed. Cl. 468 (1998). The *Karuk* litigation concluded in 2001, with the federal courts finding that the plaintiffs were not deprived of vested rights and, therefore, that no taking occurred. *Karuk Tribe v. United States*, 41 Fed. Cl. 468 (1998), *aff'd*, 209 F.3d 1366 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 941 (2001).

Upon the conclusion of the *Karuk* litigation, the Secretary submitted a report to Congress and the BIA gave testimony before the Senate Indian Affairs Committee describing the claim

against the United States in *Karuk* and giving recommendations on how to proceed. *See* 25 U.S.C. § 1300i-11(c); Pls.' Mot., Ex. 24 [Letter of Assistant Secretary-Indian Affairs to Hon. J. Dennis Hastert Regarding Department's Section 14(c) Report (Mar. 15, 2002)], 25 [Committee on Indian Affairs, United States Senate, Oversight Hearing on Hoopa-Yurok Settlement Act, S. Hrg. 107-648 (Aug. 1, 2002)]. With respect to the Hoopa, the Department concluded that it had "received its portion of the benefits under the Act" and that the Hoopa Valley Tribe "is not entitled to further distributions" from the Fund. Pls.' Mot., Ex. 25, App. 251-52. The Department informed Congress that, because the Yurok litigated its takings claims rather than waiving them, the Yurok did not meet the Act's condition precedent in order to receive its share of the Settlement Fund or other benefits. *Id*. at 249. The Department explained that it did not believe the Act contemplated such a result, and recommended, among other things, that Congress consider the need for additional legislation to address any issue regarding entitlement to the Settlement Fund and to fulfill the Act's intent. *Id*. at 252. Despite repeated efforts by both tribes to persuade Congress to bring closure to this issue, Congress did not take any action.

As trustee, therefore, until 2007, the Department of the Interior held certain funds that were originally intended to be distributed nearly 15 years earlier. Both Tribes requested that the Department evaluate whether it might distribute such funds administratively. Pls.' Mot., Ex. 30 [Letter of Special Trustee for American Indians to Clifford Lyle Marshall (Mar. 1, 2007)], App. 372. After substantial review, on March 1, 2007, Ross O. Swimmer, Special Trustee for American Indians, wrote a letter to the chairpeople of the Hoopa Valley and Yurok tribes informing them of the Department of the Interior's conclusion that it could distribute the funds to the Yurok administratively, consistent with the provisions of the Act, if the Yurok were to

submit a new waiver of claims. Pls.' Mot., Ex. 30. On March 21, 2007, the Special Trustee accepted a resolution from the Yurok Tribal Council as a waiver of claims that met the requirements of the Settlement Act, and stated that the Department intended to distribute to the Yurok the funds the Department held pursuant to the Act, including the remaining balance of the Settlement Fund. Pls.' Mot., Ex. 31 [Letter of Special Trustee for American Indians to Clifford Lyle Marshall (Mar. 21, 2007)]. Accordingly, approximately $92 million was distributed to the Yurok Tribe. *Id.*; *see also* Pls.' Mot., Ex. 30, App. 372 (noting amount remaining in the Fund).[4/]

On March 26, 2007, the Hoopa Valley Tribe filed a notice of appeal of the March 1 and 21 letters with the Interior Board of Indian Appeals (IBIA). Def.'s Ex. A. On March 27, 2008, the IBIA held that it lacked jurisdiction to hear the Hoopa's appeal. Specifically, the IBIA held that none of the jurisdictional bases the Hoopa asserted — 43 C.F.R. § 4.2(b)(2)(ii), 25 C.F.R. § 2.4 (e), and 25 C.F.R. Part 1200 — provided a basis for the IBIA's jurisdiction. According to the IBIA, 43 C.F.R. §4.2(b)(2)(ii) provides for IBIA review of matters decided by the Secretary, the Director of the Office of Hearings and Appeals, or the Assistant Secretary - Indian Affairs, but not of the Special Trustee. The IBIA also held that 25 C.F.R. 2.4(e) gives the IBIA jurisdiction only over appeals from decisions made by an Area or Regional Director or a Deputy to the Assistant Secretary - Indian Affairs (other than the Deputy to the Assistant Secretary - Indian Affairs for Indian Educations Programs). Finally, the IBIA held that 25 C.F.R. Part 1200 did not provide a basis for jurisdiction because the Special Trustee's actions were not taken pursuant to that section, nor could they be so characterized. "Instead, what the two decisions and

---

[4/] The $92 million distribution included the $37 million that the Yurok would have received if the Tribe had initially provided a sufficient waiver of claims plus accrued interest.

the notice of appeal and supporting documentation indicate, and what the Hoopa Valley Tribe itself acknowledges, is that the Special Trustee's decisions were made pursuant to the Department's administration of the Settlement Act, and constitute a determination that the Yurok Tribe is entitled to the remaining monies in the Settlement Fund." Def.'s Ex. A, 44 IBIA 212. Accordingly, the IBIA found that it did not have jurisdiction over the Hoopa's appeal and dismissed it. *Id*., 44 IBIA 213.

Plaintiffs filed their Complaint in the Court of Federal Claims on February 1, 2008. They allege that the United States breached its trust and fiduciary duties to the tribe and tribal members by distributing the Settlement Fund remainder exclusively to the Yurok and not holding the funds for all "Indians of the Reservation." *See generally* Pls.' Compl. On April 2, 2008, Plaintiffs filed a Motion for Partial Summary Judgment, asking for "judgment as a matter of law that the United States is liable for breach of fiduciary obligation resulting from its discriminatory distribution of the proceeds of timber sales and management of the former Joint Hoopa Valley Indian Reservation to fewer than all of the Indians of the Reservation for whom the Indian trust funds were collected." Pls.' Mot., 1.

In response, Defendant files its Combined Motion to Dismiss, or in the Alternative for Summary Judgment, and Response in Opposition to Plaintiff's Motion for Partial Summary Judgment and the instant Memorandum in Support. Defendant contends that: 1) Plaintiffs lack standing to pursue their claims; 2) the 1988 Act expressly precludes Plaintiffs' claims; 3) Plaintiffs fail to meet the threshold requirements of the Indian Tucker Act; 4) Plaintiffs' arguments regarding the Yurok Interim Council and the sufficiency of the Tribe's 2007 waiver lack merit; and, 5) Plaintiffs' claims regarding the *Short* litigation lack merit. In addition,

Defendant is filing a motion pursuant to RCFC 14(a) seeking the issuance of a summons to the Yurok Tribe.

## III. STANDARD OF REVIEW

RCFC 12(b)(1) provides for dismissal of a claim if the court lacks jurisdiction over the subject matter of a claim. The Supreme Court presumes that federal courts lack jurisdiction unless the contrary appears affirmatively from the record. *U.S. Department of Energy v. Ohio*, 503 U.S. 607, 614 (1992); *Renne v. Geary*, 501 U.S. 312, 315 (1991). "A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists." *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991) (citing *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278 (1936)). "Subject matter jurisdiction is strictly construed." *Leonardo v. United States*, 55 Fed. Cl. 344, 346 (2003).

The standard for granting summary judgment in this case is provided by Rule 56 of this Court, which allows a party against whom a claim is asserted to move for summary judgment "at any time." RCFC 56(b). Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Argent v. United States*, 124 F.3d 1277, 1280-81 (Fed. Cir. 1997) (quoting RCFC 56(c)). In considering whether summary judgment should be granted, a court must "view the evidence in a light most favorable to the non-movant and draw all reasonable inferences in its favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord, SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc).

## IV. ARGUMENT

### A. Plaintiffs Lack Standing to Pursue Their Claims.

Plaintiffs lack standing, because they cannot show that they have suffered the requisite "injury in fact." In addition, Plaintiff Hoopa Valley Tribe cannot bring suit as *parens patriae*.

**1. Plaintiffs Lack Standing Because They Received Their Full Entitlement of The Settlement Fund.**

Plaintiffs lack standing to pursue their claims that the Department of the Interior breached its trust and fiduciary duties to the tribe and tribal members. "[T]he doctrine of standing goes to the heart of the constitutional separation of powers because it defines the contours of the judicial power." *Smith v. United States*, 58 Fed. Cl. 374, 375 (Fed. Cl. 2003). "It 'serves to identify those disputes which are appropriately resolved through the judicial process.'" *Id*. (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "In the absence of standing the court has no jurisdiction to decide the merits of a claim." *Aldridge v. United States*, 59 Fed. Cl. 387, 389 (Fed. Cl. 2004) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). In this case, Plaintiffs cannot demonstrate that they were injured by the distribution of the monies held in trust for the Yurok.

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court explained that "the irreducible constitutional minimum" of standing contains three elements. First, the plaintiff must have suffered an "'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" 504 U.S. at 560; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Services Inc.*, 528 U.S. 167, 180-81 (2000). Second, there must be a causal connection between the injury and the conduct complained of, *i.e.*, the injury has to be fairly traceable to the challenged action of the defendant. *Lujan*, 504 U.S. at 560-61. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id*. As the Supreme Court noted in *Lujan*, the

elements of standing are "not mere pleading requirements but rather an indispensable part of [Plaintiffs'] case." *Id*. at 561. Additionally, the Court emphasized that, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but is ordinarily 'substantially more difficult' to establish." *Id.* at 562.[5] Furthermore, "the party invoking federal jurisdiction bears the burden of establishing standing." *NCLN20, Inc. v. United States*, – Fed. Cl. –, 2008 WL 2346189 * 16 (Fed. Cl. 2008) (citing *Lujan*, 504 U.S. at 561).

In this case, Plaintiffs cannot show that they have suffered the requisite "injury in fact" because they received their full entitlement of the Settlement Fund that Congress established pursuant to the Act. As noted above, the 1988 Act expressly delineated the Tribes' respective entitlements to the Fund. Congress estimated the equitable distribution of the Settlement Fund to be roughly one-third to the Hoopa and then one-third plus the remainder (after specified individual payments) to the Yurok. Pls.' Mot., Ex. 6, App. 96-97, 102. Furthermore, Congress expressly defined the Hoopa's share of the Settlement Fund based on the percentage of Hoopa members divided by the total number of persons on the Settlement Roll. 25 U.S.C. § 1300i-3(c); *see also id.* at §§ 1300i-4, 1300i-5(b). Congress defined the Yurok's share similarly and specified that any remainder in the Settlement Fund after distributions to the Hoopa and to certain individuals was also to be held in trust for the Yurok. *Id.* at §§ 1300i-3(d), 1300i-6(a). Ultimately, the Hoopa Valley Tribe received over $34 million from the Settlement Fund, the amount determined to be Hoopa's entitlement pursuant to the 1988 Act. Pls.' Mot., Ex. 13, 152-

---

[5] "The Court of Federal Claims, though an Article I court, 28 U.S.C. § 171 (2000), applies the same standing requirements enforced by other federal courts created under Article III." *Anderson v. United States*, 344 F.3d 1343, 1350 n. 1 (Fed. Cir. 2003) (citing *Glass v. United States*, 258 F.3d 1349, 1355-56 (Fed. Cir. 2001); *CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 557-58 (2000)) (additional citation omitted).

53. Thus, the Hoopa received nearly 40 percent of the Settlement Fund, which is more than the one-third share originally estimated by Congress. At no time in 1991 or thereafter has the Hoopa Valley Tribe asserted that the Department of the Interior failed to distribute the appropriate share of the Settlement Fund as provided in the 1988 Act to the Hoopa. As the Department of Interior stated in its congressional testimony, "the Hoopa . . . already received its portion of the benefits under the Act and is not entitled to further distributions from the [] Fund [.]" Pls.' Mot., Ex. 25, App. 337.

Indeed, Plaintiffs cannot establish that an "invasion of a legally protected interest" occurred in this matter. Nothing establishes or even suggests that Plaintiffs, whether the Hoopa as a Tribe or its members, have any entitlement to the remainder of the Settlement Fund. Plaintiffs, themselves, concede that the Hoopa Valley Tribe has no residual entitlement to the Fund whatsoever. Pls.' Mem., 3 n.3 ("the Hoopa Plaintiffs . . . do not contest the Interior Department's conclusion in 2002 that the Hoopa Valley <u>Tribe</u> is not entitled to further distribution under the Settlement Act") (emphasis in original). Likewise, Plaintiffs cannot bring claims in this matter as individuals. Individual entitlements were recognized by Congress in the 1988 Act for those Indians of the former joint reservation who chose not to become a member of either Tribe. This opt-out provision entitled those individuals to a one time lump-sum payment of $15,000. 25 U.S.C. § 1300i-5(d). Conversely, the 1988 Act specified that those Indians of the former joint reservation electing membership in the Hoopa Valley Tribe "shall no longer have any right or interest whatsoever in the tribal, communal, or unallotted land, property, resources, or rights of the Yurok Indian Reservation or the Yurok Tribe <u>or in the Settlement Fund</u>." *Id*. at § 1300i-5(b)(4) (emphasis added).

Accordingly, the only remaining funds held by the Department of the Interior in trust and disbursed in 2007 were set aside specifically for the Yurok pursuant to the 1988 Act. The Act specifically recognized the Yurok's entitlement, and no other, to this portion of the Fund. Plaintiffs clearly have no legally protected interest in the funds the Department of the Interior distributed to the Yurok. Consequently, Plaintiffs cannot demonstrate the requisite injury necessary to establish that they possess standing to pursue their claims.

**2. Plaintiff Hoopa Valley Tribe Cannot Bring Suit as *Parens Patriae*.**

In addition, Plaintiff Hoopa Valley Tribe cannot sue as *parens patriae* of its membership. "*Parens patriae* is a doctrine whereby a sovereign, usually a state or federal government, may in appropriate circumstances sue as 'parent of the country' to vindicate interests of their citizens." *Navajo Nation v. Superior Court of State of Wash. for Yakima County*, 47 F. Supp. 2d 1233, 1240 (E.D. Wash. 1999). To proceed as *parens patriae*, a sovereign must: 1) allege injury to a sufficiently substantial segment of its population; 2) articulate an interest apart from the interests of particular private parties; and, 3) express a quasi-sovereign interest. *Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 607-08 (1982)).

In this case, the plaintiffs include the Hoopa Valley Tribe and a handful of tribal members. The Hoopa Valley Tribe, however, cannot meet the standards necessary to proceed as *parens patriae*. As set forth above, both the Hoopa and the individuals specified by Congress in the 1988 Act received their full entitlement to the Settlement Fund. Thus, the Hoopa cannot establish an injury to any member of its population let alone a substantial segment. *Northern Paiute Nation v. United States*, 10 Cl. Ct. 401, 407 (Cl. Ct. 1986) (rejecting tribal assertion of the doctrine regarding damage claims for allotted lands and stating "[t]he court believes it would be

improper to allow the Tribe to advance individual claims indirectly, under the doctrine of *parens patriae*, when it could not do so directly”). Furthermore, the Hoopa Valley Tribe cannot demonstrate an interest beyond those of its members. *See* Pls.’ Mem., 3 n.3 (conceding that the Hoopa received its full entitlement to the Fund as prescribed by Congress in the 1988 Act).

In their memorandum, Plaintiffs state that they “seek to enforce their rights . . . acknowledged in *Short*.” Pls.’ Mem., 3. Plaintiffs reliance on *Short*, however, directly undercuts their assertion regarding *parens patriae*. In *Short II*, the court held that the Yurok Tribe could not be substituted for the individual plaintiffs because the Department of the Interior made *per capita* distributions to individual Hoopa members and the law of the case entitled recovery by non-Hoopa individuals. 228 Ct. Cl. at 541-42. In accordance with *Short II*, the Hoopa Valley Tribe cannot substitute for its members in asserting individuals claims.

Throughout this matter, Plaintiffs ignore the effect of the 1988 Act. Congress specifically intended to resolve the *Short* litigation forever and preclude the “individualization of tribal communal assets . . . that conflict with the general federal policies and laws favoring recognition and protection of tribal property rights[.]” Pls.’ Mot., Ex. 6, App. 79. Thus, as noted above, Congress established a specific formula to distribute the Settlement Fund only to the Hoopa Valley and Yurok Tribes (or those who chose nearly 20 years ago to opt out of being a member of either tribe). Because no individual rights remain in regard to the disbursement of the Settlement Fund, Plaintiff Hoopa Valley Tribe’s assertion of *parens patriae* must be rejected.

**B. The 1988 Act Expressly Precludes Plaintiffs’ Claims.**

Congress expressly precluded Plaintiffs from bringing the claims asserted in this lawsuit. In conjunction with the Act’s requirements, Plaintiffs waived their ability to bring claims against

the United States arising from the 1988 Act. Furthermore, the strict statute of limitations included in the 1988 Act bars the claims of individual Plaintiffs.

**1. Plaintiffs Waived Their Ability to Bring Claims Against the United States Arising from the 1988 Act.**

Plaintiffs' claims should be rejected because Plaintiffs expressly waived their ability to bring the claims asserted in this lawsuit pursuant to the 1988 Act. The 1988 Act required the Hoopa to "waive[] any claim such tribe may have against the United States arising out of the provisions of this subchapter . . . ." 25 U.S.C. § 1300i-1(a). As authorized by its members, and set forth in a tribal resolution, the Hoopa Valley Tribe did waive any claims against the United States arising from the 1988 Act and consented to the use of Hoopa monies as part of the Settlement Fund. Pls.' Mot., Ex. 8. Thus, Plaintiffs have waived their ability to bring this action.

Anticipating this argument, Plaintiffs claim that the waiver made by the Hoopa Valley Tribe did not waive "*future* claims against the United States arising from disregard of the [1988 Act] and other law." Pls.' Mem., 10-11, n.8 (emphasis added). Plaintiffs further argue that the 1988 Act's legislative history and the waiver, itself, excepted the ability of the Hoopa to enforce rights and obligations created by the Act. Plaintiffs, however, fail to cite or describe the "rights and obligations" under the 1988 Act that might trigger this exception. Indeed, the 1988 Act expressly required the waiver of any claim challenging the Act as effecting a taking or otherwise providing inadequate compensation including those of the Hoopa as a tribe or as individuals. 25 U.S.C. § 1300i-11(a), (b)(1)-(2).[6]

---

[6] To the extent that the 1988 Act established any rights or obligations with respect to the Yurok Tribe's designated share of the Settlement Fund, such duties run only to the Yurok.

In 1988, Plaintiff Hoopa Valley Tribe, expressly waived the ability to bring claims arising from the Act against the United States. Thus, Plaintiffs attempt to now avoid the effects of this waiver should be disregarded and their claims dismissed.

**2. The Statute of Limitations Included in the 1988 Act Also Bars the Claims of Individual Plaintiffs.**

In addition, any claims that Plaintiffs seek to bring as individuals are time-barred. The 1988 Act included a strict statute of limitations regarding any challenge that could be made to the Act and its distribution of the Settlement Fund as effecting a taking or as providing inadequate compensation. The Act specified that:

> Any such claim by any person or entity, other than the Hoopa Valley Tribe or the Yurok Tribe, shall be forever barred if not brought within the later of 210 days from the date of the partition of the joint reservation as provided in section 1300i-1 of this title or 120 days after the publication in the Federal Register of the option election date as required by section 1300i-5(a)(4) of this title.

§ 1300i-11(b)(1) (emphasis added).[7/]

An examination of the relevant events clearly shows that the statute of limitations has expired for such claims. The partition of the joint reservation was effected by the waiver adopted by the Hoopa Valley Tribe, dated November 28, 1988. Further, the BIA published the option election date on May 17, 1991. Pls.' Mot., Ex. 10 [Notice of Settlement Option Deadline, 56 Fed. Reg. 22998 (May 17, 1991)]. Consequently, the statute of limitations to bring individual claims expired on September 16, 1991. *See also* Pls.' Mot., Ex. 11 [Notice of Statute of

---

[7/] The Act established a different statute of limitations for claims that might be brought by the Hoopa Valley Tribe. It provided that such claims "shall be barred 180 days after October 31, 1988, or such earlier date as may be established by the adoption of a resolution waiving such claims pursuant to section 1300i-1(a)(2) of this title." § 1300i-11(b)(2). As discussed above, the Hoopa Valley Tribe adopted a resolution waiving its claims regarding the Act.

Limitations for Certain Claims, 56 Fed. Reg. 22998 (May 17, 1991)]. Accordingly, nearly seventeen years have passed since the expiration of the statute of limitations and any claims that Plaintiffs seek to bring as individuals are time-barred.

**C. Plaintiffs Fail to Meet the Requirements of the Indian Tucker Act.**

Plaintiffs also fail to meet the requirements of the Indian Tucker Act. Thus, Plaintiffs' claims should be dismissed for lack of jurisdiction. "It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Mitchell v. United States*, 445 U.S. 535, 538 (1980) ("*Mitchell I*") (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). In determining whether such consent is present, the Supreme Court has long held that "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Id.* (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

Congress has consented to suit against the United States for certain claims for money damages in the Court of Federal Claims. The Tucker Act grants the Court of Federal Claims jurisdiction with respect to any claim against the United States founded either upon the Constitution, any Act of Congress, any regulation of an executive department, upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. 28 U.S.C. § 1491(a)(1). The Indian Tucker Act was enacted in 1946 to ensure that Indian or tribal claimants would enjoy the "same" rights and remedies in suits against the United States as non-Indians, but no more. *Mitchell I*, 445 U.S. at 539; *see Mitchell v. United States*, 463 U.S. 206, 212 n.8 (1983) ("*Mitchell II*"). The Indian Tucker Act grants jurisdiction to the same court with respect to claims by an Indian Tribe against the United States, "whenever

such [a] claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe." 28 U.S.C. § 1505.

The Tucker Acts themselves do "not create any substantive right enforceable against the United States for money damages." *Mitchell II*, 463 U.S. at 216; *see also Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 738 (1982); *United States v. Testan*, 424 U.S. 392, 398 (1976). Thus, in order to state a claim cognizable under the Tucker Acts one "must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties." *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003) (citing *Mitchell II*, 463 U.S. at 216-17). "If that threshold is passed, the court must then determine whether the relevant source of substantive law 'can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [the governing law] impose[s]." *Id*. The existence of a general trust relationship between the United States and an Indian tribe is insufficient, standing alone, to support jurisdiction under the Indian Tucker Act. *Id.* Instead, "the analysis [of a breach-of-trust claim under the Indian Tucker Act] must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions." *Id.*

In their memorandum, Plaintiffs claim that the United States breached certain fiduciary duties by distributing the remainder of the Settlement Fund to the Yurok. In support of their claim, Plaintiffs rely on three statutes including the Act of April 8, 1864 ("1864 Act"), 13 Stat. 39; 25 U.S.C. § 407; and, the 1988 Act. Pls.' Mem., 1-3; 19-37. An examination of these statutes, however, demonstrates that Plaintiffs fail to meet the requirements of the Indian Tucker

Act. Namely, Plaintiffs cannot establish that any of these statutes are sufficient to support jurisdiction pursuant to the Indian Tucker Act.

**1. The 1864 Act Creates Only a General Fiduciary Duty to Plaintiffs.**

It is clear that the 1864 Act is insufficient to establish jurisdiction for Plaintiffs' claims. The 1864 Act set the number of Indian reservations in California and provided for the organization of the Indian Service in California. Pursuant to the 1864 Act, the joint reservation was established. Pls.' Mem., 6. The 1864 Act, however, did not establish specific fiduciary or other duties related to the Joint Reservation or any Indian trust funds. Accordingly, it certainly did not include specific duties in regard to the Settlement Fund that was established by Congress over one hundred years later in the 1988 Act.

Moreover, Plaintiffs do not identify any specific fiduciary duties included in the 1864 Act. Rather, Plaintiffs assert that 1864 Act creates a general fiduciary duty to Plaintiffs and all the Indians of the former joint reservation on the part of the United States and that the statute helps show that a fiduciary relationship existed. Pls.' Mem., 19; *see also id.* at 6, n. 4. "Although 'the undisputed existence of a general trust relationship between the United States and the Indian people' can 'reinforc[e]' the conclusion that the relevant statute or regulation imposes fiduciary duties, that relationship alone is insufficient to support jurisdiction under the Indian Tucker Act." *Navajo Nation*, 537 U.S. at 506 (quoting *Mitchell II*, 463 U.S. at 225) (citation omitted). Indeed, as this Court has already held, neither the 1864 Act nor any law established a vested right in the Square or the joint reservation in any entity prior to the 1988 Act. *Karuk*, 41 Fed. Cl. at 471-73, *aff'd*, 209 F.3d at 1375-76. *See also Short I*, 202 Ct. Cl. at 876-64, 899-906. Thus, the 1864 Act creates nothing more than a general fiduciary duty to

Plaintiffs.

**2. 25 U.S.C. § 407 No Longer Applies to the Settlement Fund.**

In addition, section 407 does not mandate compensation to Plaintiffs. Section 407, originally enacted in 1910 and later amended, states:

> The timber on unallotted trust land in Indian reservations or on other land held in trust for tribes may be sold in accordance with the principles of sustained-yield management or to convert the land to a more desirable use. After deduction, if any, for administrative expenses under the Act of February 14, 1920 (41 Stat. 415; 25 U.S.C. 413), the proceeds of the sale shall be used –
> (1) as determined by the governing bodies of the tribes concerned and approved by the Secretary, or
> (2) in the absence of such a governing body, as determined by the Secretary for the tribe concerned.

Plaintiffs claim that "25 U.S.C. § 407, which authorized the cutting of timber from the Hoopa Square that led to the proceeds placed in the escrow accounts . . ., conclusively establish[es] a trust relationship to manage and invest the trust corpus." Pls.' Mem., 21. Plaintiffs also cite *Short III* for the proposition that 25 U.S.C. § 407 establishes a fiduciary relationship. *Id*. Plaintiffs, however, ignore the fact that Congress explicitly established a new funding distribution scheme in the 1988 Act. Indeed, the Federal Circuit has confirmed that a claim for breach of trust and for money damages will not lie where Congress has made reallocations regarding the share of judgment fund money going to a certain group because to do so "would defeat Congressional intent." *LeBeau v. United States*, 474 F.3d 1334, 1343 (Fed. Cir. 2007). Furthermore, Congress intended that the 1988 Act would take precedence over any contrary holdings in *Short.* Pls.' Mot., Ex. 6, App. 96 ("While the Committee does not believe that this legislation, as a prospective settlement of this dispute, is in any way in conflict with the law of the case in the *Short* cases, to the extent there is such a conflict, it is intended that this

legislation will govern."). Thus, contrary to Plaintiffs' assertion, section 407 and any fiduciary duties that might be associated with this statute no longer apply to the Settlement Fund.

Moreover, it is important to note that, in the 1988 Act, Congress amended section 407 to remove the language originally relied upon by the *Short* courts. Pub. L. No. 100-580, § 13. In *Short III*, when the court analyzed section 407, the statute provided that "the proceeds from such sales . . . shall be used for the benefit of the Indians who are members of the tribe or tribes concerned . . . ." *Short III*, 719 F.2d at 1136. In the 1988 Act, Congress amended the statute and established that proceeds from timber are to be used only by the tribe rather than individuals. Accordingly, even if section 407 applied, any fiduciary duties included in the statute would be duties owed to the Hoopa Valley or Yurok Tribes – not to individual tribe members. As noted above, Plaintiffs concede that the Hoopa Valley Tribe no longer has any entitlement to the Settlement Fund. Pls.' Mem., 3 n.3 ("the Hoopa Plaintiffs . . . do not contest the Interior Department's conclusion in 2002 that the Hoopa Valley Tribe is not entitled to further distribution under the Settlement Act") (emphasis in original). Further, as noted more fully below, Congress directed that the Settlement Fund remainder be set aside solely for the Yurok. Thus, section 407 does not mandate compensation to Plaintiffs.

**3. The 1988 Act Does Not Contain Specific Fiduciary Duties Owed to Plaintiffs in Regard to the Portion of the Settlement Fund Set Aside for the Yurok Tribe.**

In the 1988 Act, Congress directed the Department of the Interior on how to divide, invest, and disburse the Settlement Fund. Such duties are money-mandating. Plaintiffs, however, make no claims in regard to the Department's division of the original Settlement Fund. Similarly, Plaintiffs do not challenge the Department's distribution of a portion of the Settlement

Fund to the Hoopa Valley Tribe and certain individuals pursuant to the 1988 Act. Rather, Plaintiffs' Complaint challenges only the Department's distribution of the portion of the Settlement Fund set aside for the Yurok. An examination of the 1988 Act, however, shows that Plaintiffs are not beneficiaries of this portion of the Fund. Thus, the 1988 Act contains no specific fiduciary duties owed to Plaintiffs in regard to such funds.

The 1988 Act contains four provisions related to the portion of the Settlement Fund set aside for the Yurok. First, Congress specified that "the Secretary shall pay out of the Settlement Fund into a trust account for the benefit of the Yurok Tribe . . . ." a percentage of the Settlement Fund. 25 U.S.C. § 1300i-3(d). The statute directed this task to be completed "[e]ffective with the publication of the option election date pursuant to section 1300i-5(a)(4)." *Id.* Second, Congress provided that "[a]ny funds remaining" after specified payments to certain individuals "shall be paid to the Yurok Tribe and shall be held by the Secretary in trust for such tribe." § 1300i-6(a). Third, Congress directed the Department of the Interior to "make [the] distribution" from the Settlement Fund as prescribed in the 1988 Act, and pending the specified individual payments and the dissolution of funds apportioned to each Tribe "invest and administer [the Settlement Fund] as Indian trust funds pursuant to section 162a." § 1300i-3(b). Finally, Congress specified that the "apportionment of funds to the Yurok Tribe . . . shall not be effective unless and until the Interim Council . . . has adopted a resolution waiving any claim such tribe may have against the United States" based on the 1988 Act. § 1300i-1(c)(4).

Plaintiffs are not beneficiaries to the portion of the Settlement Fund set aside for the Yurok Tribe. Indeed, Plaintiffs can identify no "specific rights-creating or duty-imposing statutory or regulatory prescriptions" owed to them for this portion of the Settlement Fund.

*Navajo Nation*, 537 U.S. at 506. The investment duties established by the 1988 Act regarding the portion of the Settlement Fund at issue inure only to the Yurok Tribe. § 1300i-3(b). Plaintiffs maintain that Congress intended the remainder of the Settlement Fund to benefit "all Indians of the Reservations." Pls.' Mem., 21-22 (citing *Short IV*, 12 Cl. Ct. at 41-42). The plain language of the 1988 Act, however, refutes that assertion. Congress directed that an equitable distribution be made of the Fund among the Hoopa Valley Tribe, the Yurok Tribe, and those Indians of the joint reservation who chose not to become a member of either Tribe. Further, Congress established a formula to divide the Fund into specified shares for each group and specified that those shares were to be distributed as directed. Moreover, as noted above, the 1988 Act specified that those Indians of the former joint reservation electing membership in the Hoopa Valley Tribe "shall no longer have any right or interest whatsoever in the tribal, communal, or unallotted land, property, resources, or rights of the Yurok Indian Reservation or the Yurok Tribe or in the Settlement Fund." *Id*. at § 1300i-5(b)(4) (emphasis added).

The Yurok Tribe, not Plaintiffs, are the sole beneficiary of the remainder of the Settlement Fund. There is nothing to support the assertion that the 1988 Act contained specific duties owed to Plaintiffs in regard to these monies. Because the 1988 Act contains no specific fiduciary duties owed to Plaintiffs related to the funds set aside for the Yurok Tribe, their claims should be dismissed.

**D. Plaintiffs' Arguments Regarding the Yurok Interim Council And The Sufficiency of Tribe's 2007 Waiver Lack Merit.**

Plaintiffs make a number of arguments challenging the ability of the Yurok Tribal Council to provide a waiver of claims and the sufficiency of the Yurok Tribal Council's waiver made in 2007. An examination of each argument, however, shows that such claims lack merit.

Plaintiffs' argument that the 1988 Act requires that the Yurok claim waiver be made by the Yurok Interim Council rather than by the Yurok Tribal Council misses the mark. Pls.' Mem., 29-33. Congress certainly authorized the Interim Council to waive all claims against the United States that may arise pursuant to the 1988 Act. 25 U.S.C. § 1300i-1(c)(4); 1300i-8(d)(2). The assertion that Congress precluded the Yurok Tribal Council from also exercising this authority finds no support in the Act. The Yurok Interim Council, which ceased to exist in 1993, was a special entity established pursuant to the 1988 Act. Accordingly, the Yurok Interim Council had only those limited powers that Congress specifically delineated. 25 U.S.C. § 1300i-8(d)(1) ("The Interim Council shall have no powers other than those given to it by this subchapter."). On the other hand, the formal Yurok Tribal Council possesses not only those limited powers but the full range of powers inherent in a tribal sovereign. *See, e.g.*, FELIX S. COHEN'S HANDBOOK OF FEDERAL INDIAN LAW 229-35, 246-57 (1982 ed). *See also* Pls.' Mot., Ex. 23 [Letter of Assistant Secretary - Indian Affairs to Susie L. Long (Mar. 14, 1995)], App. 188. In essence, Plaintiffs' arguments elevate form over substance. The Yurok Tribal Council, as the formally constituted tribal government, possesses the inherent power to provide a waiver of claims. Nothing in the 1988 Act shows that Congress chose to preclude the formal Yurok Council from exercising its sovereign power to waive claims. Plaintiffs have failed to show otherwise.[8/]

---

[8/] Plaintiffs place importance on a change made by the Senate Committee in the legislation that became the 1988 Act. The Committee changed a reference from Yurok General Council to the Interim Council in one provision, 25 U.S.C. § 1300i-8(a)(1). This provision relates to the membership roll of the Yurok, not the waiver provision, although the section then cross-references the waiver provision. The Committee, however, did not explain the change. Plaintiffs reliance on this unexplained piece of legislative history simply goes too far. The change can more appropriately be interpreted as empowering the congressionally established Interim Council with an additional, limited power, rather than vesting power in the Interim Council to the exclusion of the General Council.

Moreover, Plaintiffs' assertion that the Department of the Interior interpreted the 1988 Act to limit the Yurok Tribe's ability to waive claims to the Interim Council is mistaken. Plaintiffs, themselves, attach correspondence of March 14, 1995 from the Department of the Interior acknowledging that pursuant to tribal law, the authority of the former Yurok Interim Council was transferred to the Yurok Tribal Council. Pls.' Mot., Ex. 23, App. 188. The Department also acknowledged the Yurok Tribal Council had the ability to amend the initial waiver made by the Interim Council and that such action would be consistent with the provisions of the 1988 Act. *Id.*[9]

Throughout their memorandum, Plaintiffs argue that the 1988 Act, in essence, established a mutually exclusive choice for both Tribes. Plaintiffs contend the Act required both Tribes to either waive claims and receive benefits or litigate a takings claim and forego all benefits. Pls.' Mem., 11, 13, 33-35. In its correspondence of March 1, 2007, the Department explained that after careful review, it concluded that the *Karuk* litigation did not result in the Yurok Tribe's forfeit of its share of the Settlement Fund. The Department explained that:

> The Act does not specify a time limitation, like the limited period to bring a constitutional challenge, on the ability to provide a waiver. Moreover, the Act's Yurok waiver provision is not limited solely to the constitutionally-based property claims authorized by the Act and litigated by the Yurok Tribe.

Pls.' Mot., Ex. 30, App. 373. It is also important to note that neither the 1988 Act nor the

---

[9] Correspondence of November 23, 1993 from the Department did state that "the authority vested in the Interim Council by section 2(c)(4) of the Act to waive claims against the United States will expire on November 25, 1993. Any subsequent waiver of claims by the Tribe will be legally insufficient to effectuate the apportionment of funds to the Tribe . . . ." Pls.' Mot., Ex. 21 [Letter of Assistant Secretary - Indian Affairs to Susie L. Long (Apr. 4, 1994)]. On March 14, 1995, however, after considering correspondence from the Yurok Tribal Council, the Department clearly acknowledged the authority of this entity. Pls.' Mot., Ex. 23, App. 188.

legislative history underlying the Act discuss the consequences of either Tribe bringing a takings claim. *Id*. Further, neither the 1988 Act nor its legislative history specifies that bringing such a claim would preclude either Tribe from later receiving benefits or, conversely, would result in a forfeit of benefits. *Id*.

Plaintiffs also argue that Department of the Interior has taken inconsistent positions regarding the 1988 Act's waiver requirements. Pls.' Mem., 34-35. Plaintiffs, however, fail to acknowledge that until very recently, discussions regarding the remainder of the Settlement Fund focused on the status of the 1993 waiver provided by the Yurok Interim Council. The congressional testimony provided by BIA to the Senate Indian Affairs Committee also focused on the conditional nature of the 1993 waiver. The possibility of the Yurok Tribal Council providing a new, unconditional waiver was simply not discussed at the Senate Committee's hearing. Subsequently, "[t]he Yurok Tribe propose[ed] . . . to provide the Department with a new, unconditional waiver of claims, a concept not proposed at the time of the 2002 hearing." Pls.' Mot., Ex. 30, App. 373. Neither the congressional testimony provided by BIA nor any earlier statements of the Department of the Interior foreclosed it from re-evaluating its ability to distribute the remainder of the Settlement Fund based upon this new proposal.

As set forth above, the Department of the Interior gave careful consideration to this proposal and concluded that the Yurok Tribal Council could provide a new waiver of claims that would meet the requirements of the 1988 Act. Pls.' Mot., Ex. 30. The Yurok Tribal Council ultimately provided such a waiver. Pls.' Mot., Ex. 31. Consequently, the Department of the Interior complied with the requirements of the 1988 Act concerning distribution of the remainder of the Settlement Fund that had been specifically set aside for the Yurok Tribe. Accordingly, the

Plaintiffs' contention that the Department of the Interior violated its trust duties lacks merit.

## E. Plaintiffs' Claims Regarding the *Short* Litigation Lack Merit.

Plaintiffs make various claims regarding the *Short* litigation. As explained below, Plaintiffs' arguments completely ignore the import and effect of the 1988 Act. *See, e.g.*, Pls.' Mot., Ex. 6, App. 92 ("The intent of this legislation is to resolve a long-standing controversy between the Hoopa Valley Tribe . . . and persons who are primarily, but not exclusively, of Yurok Indian descent."). Accordingly, such claims must be disregarded. Furthermore, *Short* does not provide Plaintiffs with a basis to challenge the Department's distribution to the Yurok Tribe.

Plaintiffs argue that "in many respects, the instant litigation mirrors that in [*Short*]." Pls.' Mem., 2. In particular, Plaintiffs place importance on *Short IV*, in which the court ruled that any *per capita* distribution must go to all Indians of the former joint reservation. *Id.*; *see also id.* at 5-6, 8, 18-23. Plaintiffs' arguments are flawed, because Congress specifically established a new funding distribution scheme in the 1988 Act. Accordingly, contrary to Plaintiffs' assertion, the remainder of the Settlement Fund was not "unallotted" and held in trust for all Indians of the former joint reservation. Rather, the remainder of the Settlement Fund was expressly reserved for the Yurok Tribe. Indeed, Congress directed that the Yurok share of the Fund and any remainder after payments to the Hoopa Valley Tribe and certain individuals be held in trust solely for the Yurok – not for all Indians of the former joint reservation. 25 U.S.C. §§ 1300i-3(d) ("Effective with the publication of the option election date pursuant to section 1300i-5(a)(4) of this title, the Secretary shall pay out of the Settlement Fund into a trust account <u>for the benefit of the Yurok Tribe</u> . . . .") (emphasis added); *see also* § 1300i-6(a)). Plaintiffs cannot revive the

*Short* litigation in order to rewrite the congressionally established distribution scheme. *See also* Pls.' Mot., Ex. 6, App. 96 ("While the Committee does not believe that this legislation, as a prospective settlement of this dispute, is in any way in conflict with the law of the case in the *Short* cases, to the extent there is such a conflict, it is intended that this legislation will govern.").

Plaintiffs' allegation that the Department of the Interior violated its fiduciary trust duties by making *per capita* distributions to Yurok tribal members also misses the mark. Pls.' Mem., 4. The Yurok Tribal Council chose to make *per capita* distributions after it conducted a referendum of its membership pursuant to the Yurok constitution. *FERC, HYSA fund, gaming moving ahead*, YUROK TODAY, November/December 2007, at 2, 5, 12, 14.[10/] The Department did not make *per capita* distributions to tribal members. Pls.' Mot., Ex. 31 (stating the Department's intent to distribute the remainder of the Settlement Fund to the Yurok Tribe); Pls. Mot., Ex. 34 [Resolution of Yurok Tribal Council No. 07-41 Regarding Distribution of Assets Held in Trust (April 19, 2007)], App. 394 (directing funds be delivered to custodian for the benefit of the Yurok Tribal Reserve); Pls. Mot., Ex. 38 [Letter of Deputy Special Trustee - Trust Services to SEI Private Trust Company Regarding Free Delivery of Hoopa-Yurok Settlement Account (April 20, 2007)). In any event, the 1988 Act expressly allows the Yurok to make *per capita* distributions to their members after ten years have lapsed from the division of the funds made pursuant to the Act. 25 U.S.C. §§ 1300i-6(b). Because sufficient time had passed since the division of funds, the Yurok Tribe's distribution was in accordance with the Act.

Plaintiffs' attempt to ignore the distribution scheme enacted by Congress in the 1988 Act should be rejected.

---

[10/] This article is available at http://www.yuroktribe.org/news&issues/news/news.htm.

## V. CONCLUSION

Based on the aforementioned, Defendant's Motion to Dismiss should be granted. Alternatively, Defendant's Motion for Summary Judgment should be granted and Plaintiffs' Motion for Partial Summary Judgment should be denied.

Respectfully submitted on July 22, 2008,

RONALD J. TENPAS
Assistant Attorney General

/s/ Sara E. Costello

Sara E. Costello, Trial Attorney
Devon Lehman McCune, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0466 (tel.)
(202) 305-0267 (fax)
sara.costello@usdoj.gov

Of Counsel:
Scott Bergstrom
Department of the Interior
Office of the Solicitor

Attorneys for Defendant.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2008, the foregoing document was electronically sent via the CM/ECF system of the Court of Federal Claims to the following party:

Thomas P. Schlosser
Email: tschlosser@msaj.com

s/ Sara E. Costello
Sara E. Costello, Trial Attorney