IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HOOPA VALLEY TRIBE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 08-72 L |
| | ) | Judge Thomas C. Wheeler |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S RCFC 14(a) MOTION FOR ISSUANCE OF SUMMONS TO THIRD PARTY AND MEMORANDUM IN SUPPORT**

Pursuant to RCFC 14(a), the Defendant hereby moves this court for issuance of a summons to the following entity:

Yurok Tribe
190 Klamath Boulevard
Klamath, California 95548

c/o:

Maria Tripp, Chairperson of the Yurok Tribal Council
190 Klamath Boulevard
Klamath, California 95548

John Corbett, Senior Attorney of the Yurok Tribe
190 Klamath Boulevard
Klamath, California 95548

Jonathan L. Abram
Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004

Defendant states that, on information and belief, the Yurok Tribe has the legal capacity to sue and be sued, and alleges that it has an interest in the subject matter of the pending lawsuit.

Respectfully submitted on July 22, 2008,

RONALD J. TENPAS
Assistant Attorney General

/s/ Sara E. Costello

Sara E. Costello, Trial Attorney
Devon Lehman McCune, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0466 (tel.)
(202) 305-0267 (fax)
sara.costello@usdoj.gov

Of counsel:

Scott Bergstrom
Department of the Interior
Office of the Solicitor

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

**QUESTION PRESENTED** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**A. FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**B. PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**A. Rule 14(a) and 41 U.S.C. § 144** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**B. Application of Rule 14(a) and Section 114(b) in this Case** . . . . . . . . . . . . . . . 10

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bowser v. United States*,
420 F.3d 1057 (Ct. Cl. 1970) . . . . . . . . . . 10, 11, 12

*Bugenig v. Hoopa Valley Tribe*,
266 F.3d 1201 (9th Cir. 2001) . . . . . . . . . . 2-3

*Christy Corp. v. United States*,
387 F.2d 395 (Cl. Ct. 1967) . . . . . . . . . . 10, 11

*Fisherman's Harvest, Inc. v. United States*,
74 Fed. Cl. 681(2006) . . . . . . . . . . 10

*John R. Sand & Gravel Co. v. United States*,
60 Fed. Cl. 272 (Fed. Cl. 2004) . . . . . . . . . . 8

*Karuk Tribe v. United States*,
41 Fed. Cl. 468 (1998), *aff'd*, 209 F.3d 1366 (Fed. Cir. 2000),
*cert. denied*, 532 U.S. 941 (2001) . . . . . . . . . . 3, 4, 5

*Maryland Cas. Co. v. U.S.*,
141 F. Supp. 900 (Ct. Cl. 1956) . . . . . . . . . . 9, 10

*Oak Forest, Inc. v. United States*,
26 Cl. Ct. 1397 (1992) . . . . . . . . . . 9

*S. California Edison Co. v. United States*,
226 F.3d 1349 (Fed. Cir. 2000) . . . . . . . . . . 9-11

*Short v. United States*,
202 Ct. Cl. 870 (1973) . . . . . . . . . . 3

*Wolfchild v. United States*,
68 Fed. Cl. 779 (2005); . . . . . . . . . . *passim*

## FEDERAL STATUTES

25 U.S.C. § 1300i-1 . . . . . . . . . . 4

25 U.S.C. § 1300i-11(c) . . . . . . . . . . 5, 6

41 U.S.C. § 114 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

**FEDERAL RULES**

RCFC 14(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**FEDERAL REGULATIONS**

25 C.F.R. § 2.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

25 C.F.R. Part 1200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

43 C.F.R. § 4.2(b)(2)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**EXHIBIT**

Defendant's Exhibit A [44 I.B.I.A. 210] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## QUESTION PRESENTED

Whether a summons should be issued to the Yurok Tribe pursuant to Rule 14(a) of the Court of Federal Claims?

## STATEMENT OF THE CASE

The Plaintiff Hoopa Valley Tribe and individual Plaintiffs (collectively, the "Hoopa Plaintiffs") brought suit against the United States for an alleged breach of trust and fiduciary responsibilities based on the United States Department of the Interior Special Trustee for American Indians' ("Special Trustee") decision to disburse the remaining balance of the Hoopa-Yurok Settlement Fund to the Yurok Tribe. Because the United States has already distributed the funds in question to the Yurok Tribe and because joining the Yurok Tribe in the suit would serve the underlying goal of Rule 14(a) of the Court of Federal Claims ("RCFC 14(a)") and judicial economy, the United States moves this Court to issue a summons to the Yurok Tribe.[1/]

## BACKGROUND

### A. Factual Background

Pursuant to statutes and executive orders, the federal government set aside lands in northern California in the mid- to late-1800s to establish what are known today as the Hoopa Valley and Yurok Reservations. *See, e.g.*, Pls.' Mot., Ex. 6 [S. Rep. 564, 100th Cong., 2d Sess. at 4-7 (1988)].[2/] In 1855, the government established the Klamath River Reservation (inhabited mainly by Yurok Indians), which included an area extending approximately 20 miles up the Klamath River from the Pacific Ocean with lands one-mile wide on each side. *Id.* In 1864, the government established the Hoopa Valley Reservation (inhabited mainly by Hoopa Indians),

---

[1/] Pursuant to RCFC 14(a)(2), the United States' Third Party Complaint is attached to this pleading.

[2/] For the Court's convenience, numbered exhibits refer to the exhibits attached to the Hoopa Tribe and Individual Hoopa Tribal Members' Mem. in Supp. of Mot. for Partial Summ. J. on Question of Breach of Trust Responsibility [Dkt. No. 9-4]. Exhibit A is attached to this motion.

called the "Square," which "extended six miles on either side of a twelve-mile stretch of the Trinity River, up to the junction of the Trinity and the Klamath Rivers." *Bugenig v. Hoopa Valley Tribe*, 266 F.3d 1201, 1204–05 (9th Cir. 2001). In 1891, President Harrison passed an executive order enlarging the Square and creating a joint reservation by joining the Square with the Klamath River Reservation. *Id.* at 1205.

In the years that followed, the Secretary sometimes treated the two reservations as separate reservations, despite the 1891 executive order. *See, e.g.,* Pls.' Mot., Ex. 6, App. 84-85. Extensive timber harvesting began within the Square in the mid-1940s. *Id.* When the Hoopa Tribe reorganized in 1950 by adopting a tribal constitution and electing a governing body for the management of the Square, it excluded most Yurok from membership. *Id.* In the 1950s and 1960s, the Secretary distributed timber revenues generated from the Square to Hoopa tribal members only, not to Yurok or other Indians of the Reservation. *Id.*

The Yurok and other Indians challenged this distribution in 1963. *Short v. United States,* 202 Ct. Cl. 870 (1973). This suit resulted in the Court of Claims holding that the statute and executive orders established a single reservation, revenues from which all Indians associated with the joint reservation were entitled to share. *Id.* Accordingly, in 1974, BIA established separate accounts for future timber proceeds pursuant to *Short I,* with 70 percent going to the *Short* plaintiffs (e.g., Yurok and other Indians of the Reservation) and 30 percent going to Hoopa members, based on the relative populations of each group. In 1979, BIA established a joint "reservation-wide" account for these funds, but divided the revenues in a similar fashion.

Congress eventually sought to resolve the longstanding issues regarding the joint reservation's ownership, management, and revenue. In 1998, Congress passed the Hoopa-Yurok

Settlement Act (the "Act"), Pub. L. 100-580 (codified as amended at 25 U.S.C. § 1300i *et seq*.). The Act had three general objectives: (1) provide for formal Yurok organization; (2) partition the joint reservation between the Hoopa and Yurok; and (3) distribute equitably between the two Tribes the trust funds derived from the Joint Reservation's resources. *See* 25 U.S.C. §§ 1300i-1, 1300i-3. The Act established the Hoopa-Yurok Settlement Fund (the "Fund"), which contained funds that were to be equitably distributed to the Hoopa and Yurok Tribes based on the provisions of the Act. The funds came from the proceeds generated from the resources of the Joint Reservation and held in trust by the Secretary in seven separate accounts. The Secretary then deposited the monies from these accounts into the Fund.

The Act required the Yurok Interim Council, as well as the Hoopa, to waive claims against the United States in order to receive the benefits specified by the Act. In particular, the Act provided that the "apportionment" of the Settlement Fund, as well as the specified land transfer, acquisition, and tribal organizational authorities "shall not be effective unless and until the Interim Council of the Yurok Tribe has adopted a resolution waiving any claim such tribe may have against the United States arising out of the provisions of this Act." 25 U.S.C. §§ 1300i-1(c)(2)–(4); 1300i-3(c).

The Yurok intervened in a constitutional challenge to the Act in 1992, arguing that the Act effected a Fifth Amendment taking of their property interests in the Hoopa Valley Reservation. *Karuk Tribe v. United States*, 41 Fed. Cl. 468 (1998). In 1993, the Yurok Interim Council passed a resolution stating that "[t]o the extent which the [Act] is not violative of the rights of the Yurok Tribe . . . under the Constitution...or has not effected a taking without just compensation of vested Tribal or individual [rights with respect to the Square]," the Tribe

waived any claim against the United States arising from the Act." The Department informed the Yurok that its resolution did not satisfy the Act's requirements because the "conditional waiver" acted to preserve, rather than waive, its claims. Pls.' Mot., Ex. 22 [Letter from Assistant Secretary Ada Deer to Yurok Interim Council Chair Susie L. Long, at 1, 3 (April 4, 1994)]. The *Karuk* litigation concluded in 2001, with the federal courts finding that the plaintiffs were not deprived of vested rights and, therefore, that no taking occurred. *Karuk Tribe v. United States*, 41 Fed. Cl. 468 (1998), *aff'd*, 209 F.3d 1366 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 941 (2001).

Upon the conclusion of the *Karuk* litigation, the Secretary submitted a report to Congress and the BIA gave testimony before the Senate Indian Affairs Committee describing the claim against the United States in *Karuk* and giving recommendations on how to proceed. *See* 25 U.S.C. § 1300i-11(c); Pls.' Mot., Ex. 24 [Letter from Assistant Secretary to Hon. J. Dennis Hastert (March 15, 2002)], Pls.' Mot., Ex. 25 [Testimony of Assistant Secretary Neal McCaleb before the Senate Indian Affairs Committee (August 1, 2002)]. The Department informed Congress that, because the Yurok litigated its takings claims rather than waiving them, the Yurok did not meet the Act's condition precedent in order to receive its share of the Settlement Fund or other benefits. The Department also stated, however, that the Hoopa already received its benefits under the Act and was not entitled to further distributions. The Department explained that it did not believe the Act contemplated such a result, and recommended, *inter alia*, that Congress consider the need for additional legislation to address any issue regarding entitlement to the Fund and to fulfill the Act's intent. Testimony of Assistant Secretary Neal McCaleb before the Senate Indian Affairs Committee (August 1, 2002). Despite repeated efforts by both tribes to persuade Congress to bring closure to this issue, Congress did not take any action.

On March 1, 2007, Ross O. Swimmer, Special Trustee for American Indians, wrote a letter to the chairpeople of the Hoopa and Yurok tribes informing them of the Department of the Interior's conclusion that it could distribute the funds to the Yurok administratively, consistent with the provisions of the Act, if the Yurok were to submit a new waiver of claims. *See* Pls.' Mot., Ex. 30 [Letter from Swimmer to Marshall and Tripp ( March 1, 2007)]. On March 21, 2007, the Special Trustee accepted a resolution from the Yurok Tribal Council as a waiver of claims that meets the requirements of the Settlement Act, and stated that the Department intends to distribute to the Yurok the funds the Department held pursuant to the Act, including the remaining balance of the Settlement Fund. Pls.' Mot., Ex. 31 [Letter from Swimmer to Marshall and Tripp (March 21, 2007)].

On March 26, 2007, the Hoopa filed a notice of appeal of the March 1 and 21 letters with the Interior Board of Indian Appeals (IBIA). Ex. A. On March 27, 2008, the IBIA held that it lacked jurisdiction to hear the Hoopa's appeal. *Id*. Specifically, the IBIA held that none of the jurisdictional bases the Hoopa asserted — 43 C.F.R. § 4.2(b)(2)(ii), 25 C.F.R. § 2.4 (e), and 25 C.F.R. Part 1200 — provided a basis for the IBIA's jurisdiction. According to the IBIA, 43 C.F.R. §4.2(b)(2)(ii) provides for IBIA review of matters decided by the Secretary, the Director of the Office of Hearings and Appeals, or the Assistant Secretary - Indian Affairs, but not of the Special Trustee. The IBIA also held that 25 C.F.R. 2.4(e) gives the IBIA jurisdiction only over appeals from decisions made by an Area or Regional Director or a Deputy to the Assistant Secretary - Indian Affairs (other than the Deputy to the Assistant Secretary - Indian Affairs for Indian Educations Programs). Finally, the IBIA held that 25 C.F.R. Part 1200 did not provide a basis for jurisdiction because the Special Trustee's actions were not taken pursuant to that

section, nor could they be so characterized. "Instead, what the two decisions and the notice of appeal and supporting documentation indicate, and what the Hoopa Tribe itself acknowledges, is that the Special Trustee's decisions were made pursuant to the Department's administration of the Settlement Act, and constitute a determination that the Yurok Tribe is entitled to the remaining monies in the Settlement Fund." 44 IBIA 212. Accordingly, the IBIA found that it did not have jurisdiction over the Hoopa's appeal and dismissed it. 44 IBIA 213.

**B. Procedural Background**

The Hoopa filed their complaint in the Court of Federal Claims on February 1, 2008. Compl. [Dkt. No. 1]. They allege that the United States breached its trust and fiduciary duties to the tribe and tribal members by distributing funds from the Settlement Fund exclusively to the Yurok. Compl. ¶¶ 68–105. The United States' answer or other response is currently due on June 2, 2008.

On April 2, 2008, Plaintiffs filed a motion for partial summary judgment, asking for "judgment as a matter of law that the United States is liable for breach of fiduciary obligation resulting from its discriminatory distribution of the proceeds of timber sales and management of the former Joint Hoopa Valley Indian Reservation to fewer than all of the Indians of the Reservation for whom the Indian trust funds were collected." Hoopa Valley Tribe and Individual Hoop Tribal Members' Mot. for Partial Summ. J. on Question of Breach of Trust Responsibility at 2 [Dkt. No. 9]. On July 22, 2008, Defendant filed its Combined Motion to Dismiss, or in the Alternative for Summary Judgment, and Response in Opposition to Plaintiff's Motion for Partial Summary Judgment [Dkt. No. 20].

## ARGUMENT

United States seeks the issuance of a summons to the Yurok Tribe to whom the Department distributed funds on April 20, 2007. Joining the Yurok would serve judicial economy, protect the United States from double payment and inconsistent judgments, and allow the Yurok to represent their interests in this matter.

### A. Rule 14(a) and 41 U.S.C. § 114

Rule 14 is titled "Third Party Practice" and governs the participation of third parties in Court of Federal Claims proceedings. Rule 14 includes two separate provisions: Rule 14(a) contains a summons procedure, while Rule 14(b) contains a procedure to notify interested parties. RCFC 14(a)(1) provides:

> On motion of the United States, the Court may summon any third person against whom the United States may be asserting a claim or contingent claim for the recovery of money paid by the United States *in respect of the transaction or matter that constitutes the subject matter of the suit* to appear as a party and defend the third party's interest, if any, in such suit.[3/]

(Emphasis supplied.)

"RCFC 14 implements the authority set forth in 41 U.S.C. § 114." *See* Rules Committee Note, Rule 14, 2002 Revision; *John R. Sand & Gravel Co. v. United States,* 60 Fed. Cl. 272, 273 n.2 (Fed. Cl. 2004). Under 41 U.S.C. § 114 (originally enacted as Section 14 of the Contract Settlement Act of 1944, Pub. L. No. 78 - 395, § 14, 58 Stat. 649, 663), the Court, acting *sua sponte* or on motion, has authority to summon a third party in a number of circumstances:

---

[3/] Rule 14 was substantially revised in the 2002 amendments to the Rules of the Court of Federal Claims. Rules Committee Note for Rule 14. The Committee Note suggests that the revision was intended to "more clearly [distinguish] between the two types of actions it permits with respect to entities that are not yet parties to the suit" by consolidating the summons procedures available to the United States in subsection (a). Subsection (b) now deals with motions for notice to inform non-parties of an action and provide them with the opportunity to join as parties.

> The United States Court of Federal Claims, on motion of either of the parties, or on its own motion, may summon any and all persons with legal capacity to be sued to appear as a party or parties in any suit or proceeding of any nature whatsoever pending in said court to assert and defend their interests, if any, in such suits or proceedings, within such period of time prior to judgment as the United States Court of Federal Claims shall prescribe.

Section 114(b) also provides that if a party is summoned, but fails to appear, "the court shall have jurisdiction to enter judgment pro confesso upon any claim or contingent claim asserted on behalf of the United States . . . to the same extent and with like effect as if such person had appeared and had admitted the truth of all allegations made on behalf of the United States." *Id.* As the Court of Federal Claims noted, this provision "permits the court to issue a summons for persons against whom the United States wishes to assert a claim or contingent claim. Section 114(b) thus allows the government a means by which to offensively bind persons other than the plaintiff: by summoning them as third-party defendants." *Oak Forest, Inc. v. United States*, 26 Cl. Ct. 1397, 1400 (1992).

Section 114(b) has been invoked in instances "where the government may have transferred property erroneously or disbursed or paid over funds to the wrong party, and the property or funds may have been put at issue in the case at hand." *Wolfchild v. United States*, 68 Fed. Cl. 779, 800 (2005)[4]; *see also S. California Edison Co. v. United States*, 226 F.3d 1349, 1355 (Fed. Cir. 2000) (Section 114(b) "provides for jurisdiction in situations where the government is seeking the recovery of a sum of money disbursed to the wrong party"). In *Maryland Casualty*, the Court of Claims addressed "whether, in a case where the Government is

---

[4] In *Wolfchild v. United States*, Defendant objected to the plaintiff's attempt to move for a summons of a third party pursuant to 41 U.S.C. § 114(b). 72 Fed. Cl. 511, 533( Fed. Cl. 2006) (summarizing Defendant's assertion that the authority prescribed in subsection 114(b) for issuing summons is available only to the government).

sued by one person for money which the Government, at one time, admittedly had in its hands, but which it has disbursed to another person under a mistake of fact or law, the Government has the legal right to have that other person brought into the case so that if the plaintiff prevails against the Government, the Government may have a judgment against the other person to recover the money erroneously paid to it." 141 F. Supp. 900, 901 (Ct. Cl. 1956). In that case, the court found that Section 114(b) gives the government the right to protect itself against double liability by having the rights of all parties adjudicated in one suit. *Id*. at 905. Courts have repeatedly upheld this finding. *See S. California Edison*, 226 F.3d at 1355; *Christy Corp. v. United States*, 387 F.2d 395, 397 (Cl. Ct. 1967); *Bowser v. United States*, 420 F.3d 1057, 1062 (Ct. Cl. 1970).

Likewise, this Court has recognized that "RCFC 14 serves to protect Defendant from double liability because the rules [of the Court of Federal Claims] do not provide for interpleader as in [Federal Rule of Civil Procedure] 14." *Fisherman's Harvest, Inc. v. United States*, 74 Fed. Cl. 681, 684 n.4 (2006). In addition, the section acts "to promote judicial economy by avoiding repetitive litigation of the same issues, as well as to protect the government from potentially inconsistent judgments." *Wolfchild*, 68 Fed. Cl. at 534 (citing *Maryland Casualty*). "With joinder, if the government lost to the original plaintiff, the government might simultaneously obtain a judgment against the third party to recover the money erroneously paid over." *Wolfchild*, 68 Fed. Cl. at 800 (citing *Maryland Casualty*); *see also Christy Corp.*, 387 F.2d at 397.

**B. Application of Rule 14(a) and Section 114(b) in this Case**

In this case, joining the Yurok would serve the purposes of RCFC 14(a) and Section

114(b). The Hoopa Plaintiffs assert that the United States wrongfully distributed the remainder of the Settlement Fund to the Yurok Tribe. Should this Court find that the Hoopa Plaintiffs are correct, the United States would seek to recover the money paid to the Yurok in order to avoid having the United States Treasury paying twice for the same transaction. Joining the Yurok in the instant case would allow the United States to recover the funds it has already distributed to the Yurok Tribe. *See S. California Edison*, 226 F.3d at 1355 (Section 114(b) "provides for jurisdiction in situations where the government is seeking the recovery of a sum of money disbursed to the wrong party"); *Bowser*, 420 F.3d at 1062–63 ("If the court decides the Government should have paid the money to plaintiff instead of to the third party, the Government is then entitled to judgment on its contingent claim against the third party."). "In such instances, the Government's claim against the third party is contingent in the sense that if the plaintiff prevails against the Government in the main action, the Government is entitled to recover over against the third person." *Christy Corp.*, 387 F.2d at 397.

Further, "the transaction or matter that constitutes the subject matter of this suit" would be the same in a case by the United States against the Yurok as in the instant case. *See* RCFC 14(a). There is no question that the monies in the Settlement Fund are the subject matter of this case, and would also be the subject matter of any case by the United States against the Yurok. Likewise, the same issues of law and fact would be addressed in a case by the United States against the Yurok as in the instant case: did the United States properly disburse the Settlement Fund to the Yurok? Plaintiffs' motion for partial summary judgment argues that the United States breached its fiduciary duties and trust responsibilities because it should have held the fund in trust for the benefit of all Indians of the Reservation. *See* Pls.' Mem., 19 – 37. Judicial

efficiency, therefore, would be served by joining the Yurok and "avoiding repetitive litigation of the same issues." *Wolfchild*, 72 Fed. Cl. at 535; *see Bowser*, 420 F.2d at 1063 (deciding that joinder was not appropriate in case where determination of third party's liability to United States would "require the resolution of factual and legal issues separate and distinct from those involved in plaintiff's suit against" the United States). Joinder would also protect the United States against the possibility of inconsistent judgments. *See Wolfchild*, 72 Fed. Cl. at 534.

Finally, joinder would allow the Yurok an opportunity to assert its interests in the case at bar. *See Bowser*, 420 F.2d at 1060. In *Bowser*, the court noted that a third party has a right to protect its interests by participating in the case: "It may assist the United States in the defense of the case, or it may offer additional evidence on its own behalf and advance such legal contentions as it deems appropriate in the protection of its interest." *Id.* Joining the Yurok would allow it to assert its interests, as any judgment against the United States may adversely affect the Yurok.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court grant its request to issue a summons to the Yurok Tribe.

Respectfully submitted on July 22, 2008,

RONALD J. TENPAS
Assistant Attorney General

/s/ Sara E. Costello
Sara E. Costello, Trial Attorney
Devon Lehman McCune, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0466 (tel.)
(202) 305-0267 (fax)
sara.costello@usdoj.gov

Of counsel:

Scott Bergstrom
Department of the Interior
Office of the Solicitor

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2008, the foregoing document was electronically sent via the CM/ECF system of the Court of Federal Claims to the following party:

Thomas P. Schlosser
Email: tschlosser@msaj.com

s/ Sara E. Costello
Sara E. Costello, Trial Attorney