**Electronically Filed September 10, 2008**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HOOPA VALLEY TRIBE, on its own behalf, and in its capacity as *parens patriae* on behalf of its members; Elton Baldy; Oscar Billings; Benjamin Branham, Jr.; Lila Carpenter; William F. Carpenter, Jr.; Margaret Mattz Dickson; Freedom Jackson; William J. Jarnaghan, Sr.; Joseph LeMieux; Clifford Lyle Marshall; Leonard Masten, Jr.; Danielle Vigil-Masten | Case No. 08-72-TCW |
| Plaintiff, | Judge Thomas C. Wheeler |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**SUPPLEMENTAL APPENDIX OF EXHIBITS TO HOOPA MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## SUPPLEMENTAL CONTENTS


| Exhibit No. | Document Description | Page |
|---|---|---|
| Exhibit 41 | T. Schlosser Memo to Bernhardt Regarding Can the Yurok Interim Council's Failure to Satisfy 25 U.S.C. § 1300i-1(c)(4) be Cured? (Mar. 23, 2006) | 406 |
| Exhibit 42 | T. Schlosser e-mail to E. Passarelli and C. Alexander Regarding Identity of the Indians for Whom the Funds of the Hoopa-Yurok Settlement Fund were Collected (June 15, 2006) | 413 |
| Exhibit 43 | Chairman Marshall letter to Kempthorne Regarding Department's Policy Decision to Release the Hoopa-Yurok Settlement Fund and Block Hoopa Appeal (May 21, 2007) | 414 |
| Exhibit 44 | Memo of Pretrial Conference held May 17, 1974 - *Short v. U.S.*, No. 102-63 (May 24, 1974) | 416 |
| Exhibit 45 | Hogan & Hartson, LLP Memo to Honorable Sue Ellen Wooldridge Regarding Critical Issues Facing the Yurok Tribe (Oct. 21, 2005) | 424 |
| Exhibit 46 | Iudicello letter to Chairman Marshall Regarding Cason Recusal (Apr. 3, 2007) | 429 |
| Exhibit 47 | Sacramento Area Director letter to T. Schlosser Regarding Hoopa Valley Tribal Council and Enrollment Committee Appeal Upheld (Sept. 17, 1992) | 430 |


**Exhibits 1-40 previously filed with the Court.**


| Exhibit No. | Document Description | Page |
|---|---|---|
| Exhibit 1 | Finale Memorandum Regarding Hoopa Valley Reservation Trust Funds (June 25, 1974) | 1 |
| Exhibit 2 | Finale letter to Chairman Masten Regarding Set Aside Trust Funds (Mar. 19, 1975) | 4 |

| | | |
|---|---|---|
| Exhibit 3 | Assistant Secretary-Indian Affairs Gerard Message to Hoopa and Yurok People (Nov. 20, 1978) | 6 |
| Exhibit 4 | S. 2723, 100th Cong., 2d Sess., A Bill to Partition Certain Reservation Lands between the Hoopa Valley Tribe and Yurok Indians to Clarify the use of Tribal Timber Proceeds (Aug. 10, 1988) | 9 |
| Exhibit 5 | Memorandum of Congressional Research Service to House Committee Regarding Questions Concerning Hoopa Valley Reservation Settlement as Proposed in H.R. 4469 (Sept. 13, 1988) | 35 |
| Exhibit 6 | Senate Report, S. Rep. 100-564 (Sept. 30, 1988) | 78 |
| Exhibit 7 | Public Law 100-580 (Oct. 31, 1988) | 119 |
| Exhibit 8 | Notice Regarding Hoopa Valley Tribe Claim Waiver, 53 Fed. Reg. 49361 (Dec. 7, 1988) | 133 |
| Exhibit 9 | Notice of Options for Persons on the Hoopa- Yurok Settlement Roll (Apr. 12, 1991) | 135 |
| Exhibit 10 | Notice of Settlement Option Deadline, 56 Fed. Reg. 22996 (May 17, 1991) | 148 |
| Exhibit 11 | Notice of Statute of Limitation for Certain Claims, 56 Fed. Reg. 22998 (May 17, 1991) | 149 |
| Exhibit 12 | Notice to Convene General Council Meeting of the Yurok Tribe to Nominate the Yurok Interim Tribal Council (Aug. 14, 1991) | 150 |
| Exhibit 13 | Memorandum to Area Director Regarding Distribution of Funds (Aug. 22, 1991) | 152 |

| | | |
|---|---|---|
| Exhibit 14 | Memorandum to Superintendent Regarding Issuance of Per Capita Checks (Oct. 24, 1991) | 156 |
| Exhibit 15 | Memorandum of Assistant Solicitor-- to Area Director Regarding Issues Raised at Organizational Meeting of the Yurok Interim Council (Feb. 3, 1992) | 159 |
| Exhibit 16 | Testimony of Richard Haberman, Chairman Interim Council of the Yurok Tribe (Mar. 5, 1992) | 166 |
| Exhibit 17 | *Yurok Indian Tribe* v. *United States of America* Complaint, No. 92-173 L (Mar. 10, 1992) | 170 |
| Exhibit 18 | Letter of Assistant Secretary - Indian Affairs to Honorable Dale Risling, Sr. (Apr. 13, 1992) | 176 |
| Exhibit 19 | Letter of Assistant Secretary - Indian Affairs to Honorable Richard Haberman (Apr. 15, 1992) | 178 |
| Exhibit 20 | Letter of Susie L. Long, Vice-Chair, Yurok Interim Tribal Council to Honorable Ada Deer (Aug. 20, 1992) | 180 |
| Exhibit 21 | Letter of Assistant Secretary - Indian Affairs to Susie L. Long (Nov. 23, 1993) | 182 |
| Exhibit 22 | Letter of Assistant Secretary - Indian Affairs to Susie L. Long (Apr. 4, 1994) | 183 |
| Exhibit 23 | Letter of Assistant Secretary - Indian Affairs to Susie L. Long (Mar. 14, 1995) | 187 |
| Exhibit 24 | Letter of Assistant Secretary - Indian Affairs to Hon. 1. Dennis Hastert Regarding Department's Section 14(c) Report (Mar. 15, 2002) | 189 |
| Exhibit 25 | Committee on Indian Affairs, United States Senate, Oversight Hearing on Hoopa-Yurok Settlement Act, S. Hrg. 107-648 (Aug. 1, 2002) | 241 |

| | | |
|---|---|---|
| Exhibit 26 | Proposed Amendments to the Hoopa Yurok Settlement Act Developed in Formal Mediation (Dec. 3, 2003) | 348 |
| Exhibit 27 | S. 2878, 108th Cong., 2d Sess., A Bill to Amend the Hoopa-Yurok Settlement Act (Sept. 30, 2004) | 353 |
| Exhibit 28 | Letter of Feinstein, Boxer and Thompson to Hon. David L. Bernhardt, Acting Solicitor (Mar. 21, 2006) | 368 |
| Exhibit 29 | Letter of Associate Deputy Secretary of Interior to Clifford Lyle Marshall (July 19, 2006) | 370 |
| Exhibit 30 | Letter of Special Trustee for American Indians to Clifford Lyle Marshall (Mar. 1, 2007) | 372 |
| Exhibit 31 | Letter of Special Trustee for American Indians to Clifford Lyle Marshall (Mar. 21, 2007) | 375 |
| Exhibit 32 | Yurok Tribal Council Resolution 07-037 (Mar. 21, 2007) | 376 |
| Exhibit 33 | Hoopa Petition for Reconsideration, IBIA No. 07-90-A (Apr. 17,2007) | 378 |
| Exhibit 34 | Resolution of Yurok Tribal Council No. 07-41 Regarding Distribution of Assets Held in Trust (Apr. 19, 2007) | 393 |
| Exhibit 35 | Letter of Deputy Solicitor to Clifford Lyle Marshall (Apr. 20, 2007) | 395 |
| Exhibit 36 | Fax of Cindee McKernan to Donna Erwin Regarding Acceptability of Draft Resolution (Apr. 20, 2007) | 396 |
| Exhibit 37 | Letter of Special Trustee for American Indians to Clifford Lyle Marshall (Apr. 30, 2007) | 399 |
| Exhibit 38 | Letter of Deputy Special Trustee - Trust Services to SEI Private Trust Company Regarding Free-Delivery of Hoopa-Yurok Settlement Account (Apr. 20, 2007) | 400 |
| Exhibit 39 | Letter from Assistant Secretary - Indian Affairs to Clifford Lyle Marshall (June 29, 2007) | 403 |

| | | |
|---|---|---|
| Exhibit 40 | Check from Morgan Stanley to Yurok tribal member (Jan. 15, 2008) | 405 |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2008, a copy of, SUPPLEMENTAL APPENDIX OF EXHIBITS TO HOOPA MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT, was electronically sent via the CM/ECF system by the United States Court of Federal Claims on the following parties:

Devon Lehman McCune
Email: devon.mccune@usdoj.gov

Sara E. Costello
Email: Sara.costello@usdoj.gov

*s/ Thomas P. Schlosser*____________________
Thomas P. Schlosser, Attorney of Record
MORISSET, SCHLOSSER, JOZWIAK & McGAW
801 Second Avenue, Suite 1115
Seattle, WA 98104-1509
Tel: (206) 386-5200
Fax: (206) 386-7322
t.schlosser@msaj.com

T:\WPDOCS\0020\09561\Pleadings\HVTSuppAppList090808_01.doc
nmc:9/10/08

LAW OFFICES
MORISSET, SCHLOSSER, JOZWIAK & McGAW
A PROFESSIONAL SERVICE CORPORATION

SHARON I. HAENSLY (WA)
FRANK R. JOZWIAK (WA)
KYME A.M. McGAW (WA, OK)
MASON D. MORISSET (WA)
THOMAS P. SCHLOSSER (WA)
ROB ROY SMITH (WA, OR, ID)
THANE D. SOMERVILLE (WA)

COMPTROLLER
M. ANN BERNHEISEL

1115 NORTON BUILDING
801 SECOND AVENUE
SEATTLE, WA 98104-1509

TELEPHONE: (206) 386-5200
FACSIMILE: (206) 386-7322

WWW.MSAJ.COM

# MEMORANDUM

**TO:** David Bernhardt, Solicitor

**FROM:** Thomas P. Schlosser

**DATE:** March 23, 2006

**RE:** Can the Yurok Interim Council's Failure to Satisfy 25 U.S.C. § 1300i-1(c)(4) be Cured?

---

This memorandum examines whether the Yurok Tribe or its current governing body can now satisfy the requirements of section 2(c)(4) of the Hoopa-Yurok Settlement Act by curing the failure of the Interim Council of the Yurok Tribe to adopt a resolution "waiving any claims such tribe may have against the United States arising out of the provisions of this Act." Briefly, the answer is "no."

This memorandum reviews the Act, Interior Department rulings concerning the Interim Council of the Yurok Tribe, the litigation initiated by the Interim Council and pursued by the Yurok Tribe's governing body, and the effect of *res judicata* and the concept of bar.

## 1. The Hoopa-Yurok Settlement Act Waiver Requirement

The Hoopa-Yurok Settlement Act, Pub. L. 100-580, *codified as amended at* 25 U.S.C. § 1300-i *et seq.*, offered monetary awards in exchange for claim waivers by individuals qualified for a Settlement Roll, the Hoopa Valley Tribe, and the Interim Council of the Yurok Tribe. The tribal claim waiver provisions appear in sections 2 and 9 of the Act. The waiver provisions arose from concerns by the United States Department of Justice that a taking of property protected by the Fifth Amendment could be found by a court reviewing the Act. The statement of Rodney R. Parker, for the Justice Department, expressed the understanding that waiver language in the Senate bill as introduced already evidenced tribal consent but he requested "a provision requiring express tribal consent [which] could provide a clearer acknowledgment by the tribal government that no taking has occurred." S. Rep. 100-564 at 40 (1988). Accordingly,

the final version of the bill expanded the claim waiver requirements of sections 2(a), 2(c)(4) and 9(d)(2) of the Act. The Senate Report explains that the authority for certain transfers of funds and lands:

> [S]hall not be effective unless the Interim Council of the Yurok Tribe adopts a resolution waiving any claims it might have against the United States under this Act and granting consent as provided in section 9(d)(2). Section 9 of the bill provides for an Interim Council to be elected by the General Council of the tribe.

S. Rep. 100-564 at 18 (1988).

**2. Application of the Waiver Requirement**

On December 7, 1988, the Interior Department published a notice that the Hoopa Valley Tribe had adopted a valid resolution which met the requirements of section 2(a)(2)(A) of the Act. 53 Fed. Reg. 49361.[1] Pursuant to the Act, a roll of eligible Indians was prepared and approximately 3,000 persons selected the option of membership in the Yurok Tribe. Pursuant to section 6(c)(4), persons electing Yurok membership waived their individual claims and also granted to members of the Interim Council a proxy directing them to approve a proposed resolution waiving any claim the Yurok Tribe may have against the United States arising out of the Act and granting necessary tribal consent. Under section 9(c), the Secretary of the Interior prepared a voter list for adults who elected the Yurok tribal membership option, convened a General Council meeting of the eligible voters, and conducted an election of a five-member Interim Council.

On November 19, 1991, Acting Associate Solicitor, Division of Indian Affairs, Scott Keep wrote to congressional aide Jason Conger concerning individuals who accepted the payments authorized to be made under section 6(c) of the Act ($5,000 or $7,500 each). He held they were "legally bound by the terms of the Act to accept the privileges and limitations associated with Yurok tribal membership," although certain amounts had been withheld from the payments for attorney fees.

The BIA Sacramento Area Director requested an opinion on several issues that arose at the organizational meeting of the Interim Council held on November 25-26, 1991. Duard R. Barnes, Assistant Solicitor, Branch of General Indian Legal Activities, responded with a thorough opinion on February 3, 1992, which concluded:

(1) The Interim Council of the Yurok Tribe automatically dissolved two years after November 25, 1991;

---

[1] The approved resolution noted that "the waiver required by the Act does not prevent the Hoopa Valley Tribe "from enforcing rights or obligations created by this Act," S. Rep. 100-564 at 17." *Id.*

(2) The Settlement Act permits three separate Interim Council resolutions, if necessary, to address claim waiver, contribution of escrow monies, and receipt of grants and contracts;

(3) Refusal to pass resolution waiving claims against the United States and/or filing a claim would prevent the Yurok Tribe from receiving the apportionment of funds, the land transfers, and the land acquisition authorities provided by various sections of the Settlement Act, but would not preclude the Yurok Tribe from organizing a tribal government;

On March 11, 1992, the Yurok Interim Council filed *Yurok Indian Tribe v. United States*, No. 92-CV-173 (Fed. Cl.). The complaint asserted "claims for just compensation under the Fifth Amendment to the Constitution of the United States for the taking of compensable property and property rights of the Yurok Tribe by the United States under the Hoopa-Yurok Settlement Act of 1988." *Id.*, ¶ 1.

On April 13, 1992, Assistant Secretary-Indian Affairs Eddie F. Brown wrote to the Chairman of the Hoopa Valley Tribe indicating that the Yurok Interim Council's decision to file the claims in *Yurok Tribe v. United States* "means that the same consequences follow as if it fails to enact a resolution waiving claims against the United States." Mr. Brown deferred responding to the Hoopa Valley Tribe's request for access to the funds remaining in the Hoopa-Yurok Settlement Fund as a result of the filing of *Yurok Tribe v. United States*.

On November 23, 1993, Assistant Secretary-Indian Affairs Ada E. Deer wrote to the Vice-Chairman of the Yurok Interim Council expressing willingness to accept the decision of the Yurok Tribe to organize outside the authority offered by the Settlement Act. Ms. Deer cautioned that the Yurok Interim Council would, on November 25, 1992, lose the legal powers vested in it by the Settlement Act. She said, "the authority vested in the Interim Council by section 2(c)(4) of the Act to waive claims against the United States will expire on November 25, 1993." Ms. Deer pointed out that "[a]ny subsequent waiver of claims by the Tribe will be legally insufficient."[2]

On April 4, 1994, Assistant Secretary-Indian Affairs Ada E. Deer wrote to the Chair of the Interim Tribal Council of the Yurok Tribe determining that Resolution No. 93-61, approved November 24, 1993, did not meet the requirements of the Act. She stated:

> It is quite clear that Resolution No. 93-61 specifically preserves, rather than waives, the Yurok tribe's taking claim against the United States. Indeed, the Yurok Tribe has filed a claim in the

[2] The Yurok Tribe could have challenged the Assistant Secretary's determination that any waiver after November 25, 1993, would be legally insufficient, but failed to do. The claim is now barred by the applicable six-year statute of limitations.

> U.S. Court of Federal Claims asserting that the Hoopa-Yurok Settlement Act effected a taking under the Fifth Amendment of the United States Constitution.

*Id.* at 3. The Assistant Secretary reaffirmed the February 3, 1992 Solicitor's Opinion conclusion that filing suit in the Claims Court would produce the same results as would the Interim Council's failure to enact a resolution waiving claims under the Act.[3]

On March 14, 1995, Assistant Secretary-Indian Affairs Ada E. Deer wrote the Chairperson of the Yurok Tribal Council rejecting the Tribal Council's request for reconsideration of her decision of April 4, 1994. Ms. Deer explained that the legislative history of the Act indicates that potential taking claims against the United States were precisely the type of claims Congress was most concerned about, which explained why waiver of such claims were essential elements to triggering key provisions of the Act. She stated:

> In our opinion, the Tribe's decision to prosecute its claim in this litigation is inconsistent with the waiver of claims required under the Act. Were there to be a settlement of the lawsuit, it would have to be accomplished before the case has proceeded to a determination on the merits. This is necessary to both save time, energy and money on costly legal proceedings and because a settlement will not be possible if the court has ruled on any portion of the merits.

Ms. Deer urged the Yurok Tribe to seek a stay of proceedings in *Yurok Tribe v. United States* in order to conduct a referendum and undertake settlement negotiations. The Yurok Tribe made no such motion nor did it conduct a referendum.

After another year, on May 17, 1996, the parties to *Yurok Tribe v. United States* (which had been consolidated with other claims under the heading of *Karuk Tribe of California, et al. v. United States, et al.*, No. 90-CV-3993), filed a joint motion to postpone oral argument on cross-motions for summary judgment on the merits. The court granted that motion, and related motions, delaying oral argument on the motions for summary judgment until January 29, 1998. Subsequently, on August 6, 1998, the court denied plaintiffs' motions for summary judgment and granted the cross-motions for summary judgment of the United States and the Hoopa Valley Tribe, and directed the clerk to dismiss the complaints. *See Karuk Tribe of California v. United States*, 41 Fed. Cl. 468 (1998), *aff'd*, 209 F.3d 1366 (Fed. Cir. 2000), *cert. denied*, 532 U.S. 941 (2001).

During the period 1995-2001, the Yurok Tribe and the United States engaged in settlement negotiations concerning its claims. Indeed, the March 14, 1995 letter of Assistant Secretary-Indian Affairs Ada E. Deer, states a settlement position advanced by

---

[3] The 1994 decision of the Assistant Secretary also could have been challenged, but was not, and that claim is barred by the statute of limitations.

the United States, which was that the Yurok Tribal Council could cure the deficiencies in Resolution No. 93-61 of the Interim Council, even at that late date, if a settlement was accomplished before a final determination on the merits. The Hoopa Valley Tribe made similar proposals and urged the settlement of the case. Defendants were concerned that unless the Act's benefits could be made available there would be little incentive for the Yurok Tribe to settle. Defendants explored every option to bring the matter to a close. However, no settlement offer was accepted and the litigation was concluded on the merits by the U.S. Supreme Court's Order of March 26, 2001. Defendants' proposals, including the suggestion in the Assistant Secretary's March 14, 1995 letter, cannot change the requirements of the Act. Also, conduct or statements of this kind that were made in settlement negotiations during this period have no evidentiary value. *See* Fed. R. Evid. 408.

**3. Res Judicata and the Concept of Bar**

The takings claim that was to be waived by the Yurok Interim Council under the HYSA was instead litigated and lost by the Tribe. As explained below, the takings claim has been extinguished by the previous litigation and judgment on the merits in favor of the United States. As a matter of law, the Tribe no longer has a takings claim to waive.

Under the doctrine of claim preclusion, a party that litigates a claim to final judgment is forever barred from subsequent litigation of that same claim. *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997) (stating "[r]es judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action"); *Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1876) (holding "[T]he judgment, if rendered upon the merits, constitutes an absolute bar to the subsequent action. It is finality as to the claim or demand in controversy . . ."); *see also* 18 Moore's Federal Practice (3d. ed), § 131.01 (2005) (stating "[I]f the plaintiff loses the litigation, the resultant judgment acts as a *bar* to any further actions by the plaintiff on the same claim, with limited exceptions") (emphasis in original). The doctrine of claim preclusion is applicable whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *See Glickman*, 123 F.3d at 1192. When claim preclusion applies, as it does here, a party's claim is extinguished upon final judgment. *Hornback v. United States*, 405 F.3d 999, 1001 (Fed. Cir. 2005). Thus, a purported waiver of a claim that has been extinguished by a prior final judgment is void *ab initio*.

Claim preclusion, and the concept of "bar" prevents a party who loses in litigation from bringing a subsequent action based on the same transaction or series of transactions by simply asserting additional facts or proceeding under a different legal theory. *Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1095 (9th Cir. 1990) (stating that claim preclusion precludes relitigation of all grounds supporting recovery regardless of whether they were asserted or determined in the prior proceeding); *Kasper Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978) (concluding that when defendant obtains favorable judgment, it acts as a "bar" to subsequent litigation on same claim by

plaintiff); Restatement 2d of Judgments §§ 19, 24 (1982). A valid judgment, even if erroneous, that is final and rendered on the merits can form the basis for claim preclusion. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). The judgment "puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever . . ." *Comm'r v. Sunnen*, 333 U.S. 591, 597 (1948).

**4. Claim Preclusion Extinguishes the Claim**

The doctrine of claim preclusion not only prohibits subsequent litigation of claims, but it wholly *extinguishes* the claim and any rights that a plaintiff has in the claim after final judgment is rendered. *Hornback*, 405 F.3d at 1001 (Fed. Cir. 2005) (holding that claim preclusion "extinguishes all rights of the plaintiff . . . with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose); *Gonzales v. Hernandez,* 175 F.3d 1202, 1205 (10th Cir. 1999) (stating that a final judgment extinguishes plaintiff's claims); *Kotsopoulos v. Asturia Shipping Co., S.A.,* 467 F.2d 91, 95 (2d. Cir. 1972) (stating "once a claim is reduced to judgment, the original claim is extinguished and merged into the judgment"); *see also* Restatement 2d of Judgments § 24(1) (1982) ("When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of [res judicata], the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose"). Thus, once a plaintiff litigates a claim to final judgment on the merits, as the Yurok Tribe did in litigation, the plaintiff no longer possesses a legal claim - - the plaintiff's claim is extinguished by the prior judgment.

The United States Supreme Court has emphasized that the doctrine of claim preclusion is more than a matter of procedure, it ensures that "rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound in it in every way." *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299 (1917). Extinguishing claims via the claim preclusion doctrine provides finality and a conclusive end to litigation, promotes judicial economy, and fosters reliance on court judgments. 18 Moore's Federal Practice (3d ed.), § 131.12 (2005).

Applying these well-established principles here, it is plain that the Yurok Tribe's takings claim against the United States arising out of the Act has been adjudicated in a final decision on the merits, is extinguished, and thus can no longer be "waived." *Karuk, et al.*, 209 F.3d at 1366. The Tribe's Complaint against the United States, filed in March 1992, states that "plaintiff, a federally recognized Indian Tribe, asserts claims for just compensation under the Fifth Amendment to the Constitution of the United States for the taking of compensable property and property rights of the Yurok Tribe by the United States under the [HYSA of 1988]." The Tribe's Complaint requested the Court to enter "judgment awarding the Yurok Tribe just compensation for the taking of its compensable property rights . . . ." This takings claim was the claim that was to be waived by the Interim Council prior to November 25, 1993. 25 U.S.C. §§ 1300i-1(c)(4) and 1300i-11(a). Congress chose the term "claim," which has a well-recognized legal

meaning. The use of the term must be given its purposeful effect. *Russello v. United States*, 464 U.S. 16, 23 (1983).

Instead of waiving its takings claims against the United States in accordance with the Act, the Yurok Tribe opted to litigate. Having been determined with finality on the merits against the Yurok Tribe, the takings claim that was the subject of the litigation has been extinguished. Accordingly, as a matter of law, the takings claim arising out of the Act no longer exists. Because the claim that was to be waived in 1993 no longer exists, it simply cannot be waived now, even if the Interim Council purported to do so.

**5. Conclusion**

The Settlement Act conditioned some benefits upon waiver of precisely the claim that the Yurok Tribe litigated on the merits from 1992 through 2001 and lost. The Act authorized certain persons to elect a five-member Yurok Interim Council, a Council that would exercise specific statutory powers for a two-year period and then go out of existence. During the two-year lifespan of the Yurok Interim Council, it was also hoped that the Yurok Tribe would adopt a constitution and choose a governing body. In fact, it did that, although the Tribe was unable to use the Indian Reorganization Act authority which was also offered as a Settlement Act benefit, but conditioned upon waiver.

After filing *Yurok Indian Tribe v. United States* in 1992, the Yurok Interim Council managed that litigation for approximately 20 months before it ceased to exist on November 25, 1993. Thereafter, the Yurok Tribal Council assumed the reins and managed the litigation to its bitter end in 2001. There is no action that the Yurok Tribe can take today that could resuscitate the extinguished taking claim against the United States that arose out of this Act. Any attempt at a new or amended waiver by the Yurok Tribal Council would be legally insufficient, as the Department has repeatedly ruled. A new waiver would be void *ab initio* because having been litigated and extinguished, there is no claim to be waived now, nor does the Yurok Interim Council exist to take action. There can be no waiver of a claim that no longer exists. The Department of the Interior correctly concluded in its March 15, 2002 report to Congress pursuant to section 14(c) of the Act that "the Yurok Tribe did not meet the waiver conditions of the Act and is therefore not entitled to the benefits enumerated within the Act." The Department should adhere to that conclusion.

T:\WPDOCS\0020\09561\CORRESP\Bern032306_m01.doc
tps:3/23/06

**Subject:** Identity of the Indians for whom the funds in the Hoopa-Yurok Settlement fund were collected
**From:** Tom Schlosser <t.schlosser@msaj.com>
**Date:** Thu, 15 Jun 2006 12:44:27 -0700
**To:** "Passarelli, Edward" <edward.passarelli@usdoj.gov>, "Alexander. Craig" <craig.alexander@usdoj.gov>

Gentlemen:

While looking at Hoopa-Yurok documents today, I noted that Section 4(b) of the Hoopa-Yurok Settlement Act requires the Secretary to administer the Settlement Fund "as Indian trust funds." So..oo.. perhaps you ask, who are the beneficiaries?

The identity of the Indians for whom the funds are held in trust is revealed by looking at the source of "the funds in the escrow funds," from which the Settlement Fund in Section 4(a) derived. (Certain federal funds were added to the HYSF also but these were entirely used to fund individual lump sum payments, the so-called "buy-outs." See Section 4(e) and the Senate Oversight Hearing page 89 (August 1, 2002))

All of nearly all of the escrow funds came from the resources, particularly timber harvest pursuant to 25 U.S.C. 407, of the Square portion of the Hoopa Valley Indian Reservation. Interior Memo at 2-3 (Oct. 24, 1991). Several other Hoopa-Yurok documents shed light on Interior's determination of Indian beneficiaries of proceeds from the Hoopa Square, particularly the Sacramento Area Director William Finale Memo (June 25, 1974)(Indians of the Res) the Finale Letter (Mar. 19, 1975)(Indians of the Res includes Hoopas) and the Assistant Secretary Forrest Gerard Plan (Nov. 20, 1978)(designating the H & Y tribes)

Of course, rights to the escrow funds was often at issue in the *Short* litigation and was definitely addressed in *Short* IV, *Short* VI, and upheld in *Short* VII. The *Short* litigation determined that no party could compel distributions from the escrow funds, and concluded plaintiffs were not entitled to damages based upon unexpended monies in the escrow funds.

Today I was reminded that *Short* and the underlying administrative determinations by the Interior Department still shed some light on the identity on the Indian beneficiaries for whom the funds were originally collected and are currently being administered. I hope this is helpful.

Tom
--
Important notices




# Hoopa Valley Tribal Council

HOOPA VALLEY TRIBE

Regular Meetings on the First and Third Thursday of Each Month

P.O. Box 1348 • HOOPA, CALIFORNIA 95546 • Phone 625-4211 • Fax 625-4594





Clifford Lyle Marshall, Sr.
Chairman


May 21, 2007

Honorable Dirk Kempthorne, Secretary
Department of the Interior
1849 C Street, NW
Washington, D.C. 20240

Re: Lawless Handling of the Hoopa-Yurok Settlement Fund

Dear Secretary Kempthorne:

Last month I informed you of the mismanagement of the Hoopa-Yurok Settlement Fund proposed on March 1, 2007 by Special Trustee Ross Swimmer. I asked you to refer the issue to the Interior Board of Indian Appeals so that impartial attorneys could consider the merits before the Hoopa-Yurok Settlement Fund left federal hands contrary to law.

On April 20, 2007, Lawrence J. Jensen, Deputy Solicitor, responded on your behalf and rejected IBIA review on the ground that it "would not be appropriate." On the same day, the IBIA denied the Hoopa Valley Tribe's separate petition for reconsideration of its appeal while pointing out that they "expressed no opinion on the merits of whether or not the action was authorized by the Settlement Act." The Board also remarked that no delegation of authority "grants the Board jurisdiction to review a decision of the Special Trustee on the ground that the decision may expose the United States to liability." 44 IBIA 250-51. Also on April 20, 2007, the Special Trustee "advised the custodian of the account holding the remaining balance of the Hoopa-Yurok Settlement Fund that its ownership has been transferred solely to the Yurok Tribe." Preparations for withdrawal of the money from the federal accounts are now underway, but we believe over $90 million remains in trust today.

Breach of trust by the United States is, of course, compensable in the U.S. Court of Federal Claims. But the result of suing there is that the Treasury Department pays damages for the naked assertion of power by a few individuals within the Interior Department's Office of the Solicitor and the Special Trustee. Mr. Jensen's April 20 letter mocked us by asserting that a "30-day period established in the Special Trustee's decisions provides the Tribe an opportunity to explore further steps." The Solicitors fully understood that sovereign immunity and the rules on indispensable parties blocked equitable relief in U.S. District Court by the Hoopa Valley

Tribe. The Solicitors were careful to evade review and to oppose a referral that would have clarified IBIA jurisdiction. We were denied a right to appeal.

As you know, faithless actions by the United States Trustee led to litigation in the *Cobell* case, which has revealed widespread trust mismanagement that is extremely difficult and expensive to resolve. Here we go again. The Hoopa Valley Tribe cannot accept this latest move to rob us of revenues generated from our lands, and our rightful inheritance. We will file suit against the United States if the funds are withdrawn from the trust account.

On August 1, 2002, Assistant Secretary-Indian Affairs Neal McCaleb testified to the Senate Indian Affairs Committee that "the Settlement Fund should be administered for the mutual benefit of both Tribes and their respective reservations . . . [and] it would be inappropriate for the Department to make any general distribution from the Fund without further instruction from Congress." S. Hrg. 107-648 at 88 (2002). Neither the law nor the facts has changed since that testimony was given. Instead, the personal views of a few unsupervised employees of the Department have prevailed. They have turned a blind eye to the clear language of the Settlement Act and accepted as valid a resolution of the wrong Council and the "waiver" of a "claim" the Yurok Tribe litigated and lost. No law supports their decision to hand over the entire Settlement Fund to one tribe only. If you can suggest any alternative to litigation of this breach of trust in the Court of Federal Claims, we would welcome your consideration.

Sincerely yours,

HOOPA VALLEY TRIBE

/s/

Clifford Lyle Marshall, Chairman

cc: Senator Byron Dorgan
Senator Dianne Feinstein
Senator Barbara Boxer
Representative Nick Rahall
Representative Mike Thompson
Hon. Maria Tripp
Scott Bergstrom

T:\WPDOCS\0020\09561\CORRESP\Kemp051707_l01.DOC
nmc:5/18/07

IN THE UNITED STATES COURT OF CLAIMS

No. 102-63

(Filed May 24, 1974)

---

JESSIE SHORT et al.,

Plaintiffs

v.

THE UNITED STATES

Defendant

HOOPA VALLEY TRIBE et al.,

Intervenor

---

MEMORANDUM OF PRETRIAL CONFERENCE
HELD MAY 17, 1974

---

Present for plaintiffs: Harold C. Faulkner, Esq. and William C. Wunsch, Esq. For defendant: Herbert Pittle, Esq., Department of Justice, accompanied by Duard R. Barnes, Esq., Assistant Solicitor, Indian Division, Department of Interior, and William Wirtz, Esq., Office of the Solicitor, Department of Interior, Sacramento, California. For intervenor: Jerry C. Straus, Esq., Angelos A. Iadorola, Esq. and Alan P. Rubinstein, Esq., attorneys for intervenor, The Hoopa Valley Tribe, accompanied by Wesley L. Barker, Esq., counsel for The Hoopa Valley Tribe, Sacramento, California.

1. This conference is convened at the call of the trial judge. While counsel have agreed to attend, their participation is subject to a petition for rehearing of the denial of the petition for <u>certiorari</u>, now in process.

2. Counsel have met and are working on a form of questionnaire to be filled out by each plaintiff, to determine eligibility to share in distributions of proceeds of reservation timber sales. The questionnaire would be signed under penalties of perjury but not before a notary. Counsel will exchange drafts within 2 weeks, and comments on each others' drafts one week later. The questionnaire will contain questions proposed by all the parties.

3. Defendant and intervenor may either concede the admissibility of the answers by agreeing that the plaintiff if called would so testify, or, if convinced of the untruth or ambiguity of any answers, demand that the plaintiff appear to be cross-examined. Defendant and intervenor also reserve the right, even if admission of the answers in evidence is agreed to, to introduce contrary or supplementary evidence and to draw factual or legal conclusions from the questionnaire answers.

The trial judge will expect that if defendant or intervenor cannot agree, on the basis of a completed questionnaire, to the eligibility of the plaintiff, they will voice their doubts and objections to counsel for plaintiff, and make every effort to resolve the

T OF CLAIMS

problem without a formal hearing, or, at least, to agree on a part of the matters in issue and limit their disagreement to a precise issue, framed for a hearing.

4. Intervenor advised that it had suggested an expedited briefing of the issues raised by the four cases ordered to be reargued. Plaintiffs wish, however, to proceed first with discovery.

5. On the subject of discovery, defendant and intervenor recognize their obligation to make full voluntary discovery. Plaintiffsshould present their requests in writing, clearly specifying what they wish.

6. The trial judge pointed out to counsel for the defendant that the plaintiff Yuroks, having been held to be Indians of the one reservation, are now entitled from the Government to more than it might owe to an ordinary litigation adversary. Defendant's position has changed from that of a defendant in an entirely adversary relation to plaintiffs to that of a stake-holder or trustee who should remain neutral as between plaintiffs and the members of the intervenor tribe and seek to be helpful to both of them. Defendant's position may thus be compared to that of a trustee of an intervivos trust, once a new group of persons has been held as a group, subject to proof of individual geneology, equally entitled with those formerly receiving income, to be beneficiaries.

More specifically, the plaintiffs as individuals-- Yuroks of the reservation having been held to be Indians

COURT OF CLAIMS

of the reservation—are owed by the trustee a duty of assistance in establishing their individual claims. This duty is no more, but no less than that owed to an individual Indian engaged in proving his individual entitlement to a share in a distribution—whether under a statute or a judgment—for the benefit of the individual members of a tribe or group.

In the light of the defendant's failure in the past to recognize the rights of Yuroks of the reservation and, indeed, the denial of those rights, defendant owes the individual plaintiffs a special duty to assist them in recovering as expeditiously as possible their full rights, retrospectively. Performance of this duty may in some circumstances call for affirmative action by the United States through the Department of Interior and the Bureau of Indian Affairs. For instance, defendant should in the performance of this duty sympathetically consider requests for data whose collection and compilation will require some effort or expense or both, in circumstances where if an adversary made the request it would not be unfair to produce papers and put the burden of compilation on the party making the request.

7. Defendant stated that it has considered proposing that the identification of eligible plaintiffs be accomplished, to the extent possible, by the Department of Interior, as is done in cases of determining what individuals should share in a judgment for a tribe. Both intervenor and plaintiffs are opposed.

OF CLAIMS

The trial judge noted that defendant has a duty, if it thinks any particular course is in the best interests of its wards and will advance the early and just disposition of the case, to propose it and support it. Defendant may wish to reconsider its position on this subject, in the light of the views expressed above and other views expressed at the conference, among them the comments of Assistant Solicitor Barnes as to the difficulties of any assumption by the Department of the Interior of responsibilities for supervising proof of eligibility. It should also be remembered that defendant has a duty to confess judgment where it is just to do so, and the question is really one of alternative methods of developing the facts calling for confessions of judgment in individual cases.

8. The trial judge inquired whether the parties could not agree, before distributing the questionnaire, on rules of eligibility. Intervenor responded that this is the question on which they proposed expedited briefing, and that their research has not yet been completed. Plaintiffs are opposed to agreement on rules at this time.

The trial judge appreciates that plaintiffs' counsel may not find it easy to agree to rules which may disqualify some of their clients. The suggestion as to agreement, now, on eligibility rules is nevertheless renewed, and directed primarily to defendant, which as trustee for all is obligated in equity to seek out those who are entitled, and should be in the forefront of the

effort to arrive at and to propose, either for adoption by the trial judge or, at least, for discussion and comment by the parties, a set of principles for determining eligibility, else the efforts devoted to the questionnaire will be wasted to an extent now avoidable.

9. A question was raised as to any duty on the part of plaintiffs' counsel to solicit evidence of possible entitlement of others than the named plaintiffs. The trial judge rules that there is no such duty. This is an action by some 3,000 Indians who are the named plaintiffs. Only party plaintiffs may recover a judgment. Questionnaires are to be distributed only to plaintiffs.

10. Plaintiffs' counsel should consult with the Clerk as to motions to substitute successors to plaintiffs who have died, and like matters. Counsel for intervenor and the Government are expected not to oppose such motions.

11. Questions were raised by plaintiffs' counsel as to the place, in the litigation on the entitlement of particular Yurok plaintiffs, of issues as to the propriety of the entitlement to receive distributions of particular Hoopas who have been receiving distributions. Such issues might arise in two ways; one would be a direct challenge to the propriety of a distribution to a particular Hoopa. Another might be an argument that a particular plaintiff having a certain relationship to the reservation or the Yurok Tribe should be held to be entitled, because a Hoopa has been held entitled to receive distributions on the basis of a comparable relationship by him to the reservation or to his tribe.

OF CLAIMS

The trial judge notes that this is an action by individuals for a money judgment. The judgment will presumably be a compilation of decisions that a particular plaintiff who is held to be an Indian of the reservation is entitled to a certain fraction of the total available for distribution.

It is apparently relevant, as evidence on the issue of a plaintiff's entitlement to a share, that a Hoopa receives distributions on the basis similar to one that a plaintiff proposes as justifying his right. A judgment that a particular Hoopa who has in the past received distributions shall henceforth not receive them, however, does not seem to be within the pleadings, or, indeed, within the jurisdiction of the court.

At the conference, there was a discussion of possible circumstances in which the fractional or monetary share of the several successful plaintiffs might be greater than otherwise, if it were made to appear that Hoopas were receiving distributions on a basis rejected by the court as a ground for entitlement of a plaintiff or plaintiffs. Comments by the trial judge on this subject were tentative, and not intended to decide any issues. The question is open for decision on motion or issue appropriately raised by any party. The only issue immediately presented is one of discovery. The trial judge rules that plaintiffs are entitled to voluntary discovery aimed at showing what rules of eligibility are applied in making distributions to Hoopas.

...RT OF CLAIMS

12. A question was raised as to diversity of interest and possible conflicting positions among plaintiffs. This is in the first instance a question for plaintiffs' counsel. No question for decision is now presented.

13. A question was raised by plaintiffs as to distributions to the Hoopas or the Hoopa Tribe, from the funds in question, of moneys which are used to defend the case. No issue on such question is presented for decision.

14. The trial judge inquired as to the status of payments and was advised by counsel for the Government that payments to Hoopas have continued until recently, and now will be suspended, except for payments to the Tribe. The trial judge cautioned, generally and without intending to approve or disapprove any particular course of action, that any overpayments could lead to double or individual liability, once judgment is rendered.

15. Counsel will please report status and progress of questionnaire completion two months from the date of this memorandum and thereafter bimonthly whenever no report of specific action has been made for the two preceding months. Counsel for defendant is asked to take the lead in making such reports, and should use them as a vehicle for reporting on the performance of its duties to all the plaintiffs and to the members of the intervenor Tribe, abovementioned. Counsel for other parties should add any supplementary comment they have.

DAVID SCHWARTZ

Trial Judge

# HOGAN & HARTSON
L.L.P.

COLUMBIA SQUARE
555 THIRTEENTH STREET, N.W.
WASHINGTON, DC 20004-1109
TEL (202) 637-5600
FAX (202) 637-5910
WWW.HHLAW.COM

## MEMORANDUM

October 21, 2005

TO: Hon. Sue Ellen Wooldridge

FROM: Hogan & Hartson, L.L.P.

RE: **Critical Issues Facing the Yurok Tribe**

On behalf of the Yurok Tribe and us at Hogan & Hartson, thank you very much for your continued willingness to understand the Tribe's concerns and for all your efforts in addressing those concerns. We appreciate also the work of Scott Bergstrom on matters of importance to the Tribe.

In anticipation of a possible meeting on or discussion of these issues with you soon, we wanted to be sure that we have accurately expressed to you the Tribe's clear priorities. The most urgent matter for the Yurok Tribe is to obtain a speedy release of the $3 million for land acquisition and associated expenses as mandated by the Hoopa-Yurok Settlement Act of 1988 ("the Act"). *See* 25 U.S.C. § 1300i-1(c)(3)(B). As you are aware, the land acquisition monies have already been appropriated[1] and the Tribe's claim to those monies is undisputed. The distribution of the monies intended for the Tribe under the Act and currently being held in the Settlement Fund also is important to the Tribe. However, due to the immediate need that the Tribe has for the land acquisition monies and the fact that those monies will serve as a first step to helping the Tribe address its urgent priorities, including a pending transaction to acquire substantial additional forested acreage, the Tribe considers its request for prompt release of this $3 million to be its most urgent current claim.

---

1 We understand from Bureau of Indian Affairs staff that two separate appropriations have been made: one for $2.5 million and another for $500,000.

The Tribe's strong preference is to find an acceptable arrangement by which the $3 million for land acquisition could be provided to the Tribe administratively, without need of further intervention by the Congress. By this we mean that the Tribe is eager to learn what waivers or other conditions the Department of the Interior ("the Department") would require the Tribe to meet in order to receive the $3 million for land acquisition and the basis for any such conditions. The Tribe strongly urges the Department to look to such an administrative resolution. As explained below, the Tribe believes that: (1) it is clear that the Department has legal authority for administrative resolution of such matters; 2) such administrative resolution would effectuate the clearly-expressed intention of Congress; and (3) no further expression of Congressional intent is required.

<u>The Department Has Authority Under the Law to Make Such Distribution Once the Yurok Tribe Meets Interior's Conditions</u>

While the Act may provide for certain minimal conditions that must be met by the Tribe, such as execution of a complete waiver of claims arising under the Act and certain organizational requirements, the Act clearly provides the Department with the discretion and authority to disburse funds to the Tribe once those conditions are met. Indeed, as we understand it, the Department maintains the Yurok's portion of the funds and manages them on behalf of the Yurok with the expectation that they will ultimately be disbursed for the Tribe's benefit.

The Department is still entitled to rely upon the provisions of the Act, notwithstanding what has transpired since its enactment, including the initiation and resolution of litigation. The settlement of litigation pertaining to takings claims against the United States was <u>not</u> the primary purpose of the Act. Rather, the primary purposes of the Act were to establish an adequate land base for the Yurok, settle ongoing disputes between the Hoopa and Yurok pertaining to land distribution and equitably distribute the Settlement Funds to the Tribes and their members. Indeed, the Act itself anticipates the possibility of a takings claim arising from the Act and specifically provides for it. *See* 25 U.S.C. § 1300i-11. The final judgment against the Yurok's claim completes a cycle of events specifically contemplated by the Act and allows the Yurok and the Department now to proceed with accomplishing the underlying purposes of the Act, including the disbursement of the Yurok's portion of the funds to the Tribe.

The Act neither states nor implies that additional Congressional direction is necessary for disbursement of funds under the Act. Specifically, Section

14(c) of the Act, requiring a report to Congress following the final judgment of a takings claim against the United States, does not diminish the Department's discretion nor require the Department to seek Congressional approval before acting within its authority to disburse the funds. As evidenced by the legislative history and plain language of the Act, the intent of Section 14(c) was to provide Congress with recommendations if additional funds or management authorities were needed and, most importantly, to afford time for Congress to correct the language of the Act to avoid having to pay a final judgment in the event the claims were successful. *See* 25 U.S.C. § 1300i-11(c)(2); S. Rep. 100-564, at 30, 40 (1988).

Finally, the Act does not specify a time-certain in which the waiver conditions must be met. Nor does the Act indicate that pursuit of a takings claim against the government would nullify the Tribe's ability to obtain, or the Department's obligation to provide, the funds authorized by Congress. Instead, as noted above, the Act specifically contemplates the filing of a takings claim. As evidenced by other settlement acts with other tribes employing much stronger language in their waiver provisions, Congress certainly knew how to limit the Tribe's ability to obtain access to its portion of the funds, if that is what Congress so intended. It is not. According to the plain language of the Act, Congress intended for the Department to handle the details of disbursement of the Yurok's portion of the funds under the Act once the Tribe met certain conditions.

<u>Distributing the Funds Is Consistent with Congressional Intent</u>

The intent of Congress in enacting the Hoopa-Yurok Settlement Act was to deal fairly with the interests of both of the Tribes. As time has passed, however, the inequities of the Yurok's treatment under the Act have become apparent. Nevertheless, Congressional intent that the Yurok be entitled to certain funds under the Act is plain. The Department's disbursement of those funds, in particular the land acquisition funds and the remainder of the Settlement Fund, would be consistent with that intent.

The $3 million of land acquisition funds has already been authorized and appropriated in two installments to the Department for disbursement solely to the Yurok. No other party has any rightful claim to those funds.

With regard to the remainder of the Settlement Fund, the Tribe recognizes its own role in contributing to the delay of the Fund's disbursement. However, to deny the Yurok Tribe access to the Settlement Fund now would be in direct opposition to clear Congressional intent. Even though portions of the

Settlement Fund were derived from Yurok tribal members' settlement of previous litigation and the Yurok's portion of the joint reservation (i.e., the Yurok Escrow funds), the Tribe has yet to receive its distribution as provided for by Congress. *See* 25 U.S.C. § 1300i-3(d). Conversely, the Hoopa have already received their portion of the funds under the Act. In its Section 14(c) Report, the Department acknowledged the Hoopa's receipt of their benefits under the Act[2] and stated that "it is the position of the Department that Hoopa Valley Tribe is not entitled [to] any further portion of funds or benefits under the existing Act." DOI Report to Congress at 2 (2002).

Finally, no one but the Yurok Tribe is prejudiced by the passage of time that has occurred between enactment of the Act, the disbursement of the Hoopa's portion of funds, and, what can hopefully be, a final disbursement of the Yurok's funds. The Yurok's delay in executing what the Department considers a complete waiver does not somehow negate Congress' intent that the Yurok receive their portion of the funds specifically provided for the Tribe under the Act. As stated in the original legislative history of the Act, Congress did not intend that the waiver conditions would prevent the tribes from enforcing rights or obligations created by the Act. *See* S. Rep. 100-564 at 17 (1988). Once the waiver conditions of the Act are met, the Department is free to distribute the funds to which the Yurok are entitled as intended by Congress and clearly expressed in the original Act. The Hoopas' claim to Settlement Funds having been met, and their waiver to further claims against the United States having been executed, a distribution of the Yuroks' share remains the principal unfinished business of the Department under the Act.

<u>No Further Action by Congress Is Required</u>

The Act was a landmark piece of legislation that took an important first step in addressing Congress' concerns regarding the Yurok and Hoopa tribes. Owing to the inequities noted above, the Congress has since recognized that it must do more (i.e., S.2878, proposed amendments to the Act, introduced in the 108th Congress). Similar legislation is being considered by Members of the 109th Congress. However, before the Congress can take further action it is necessary for the U.S. government and the parties involved to allow the already-expressed intention of Congress to be fully realized. It is not necessary for the Department to seek to obtain additional Congressional guidance before distributing the funds clearly intended by Congress to be received by the Yurok Tribe. Additional issues yet to be addressed include

---

2 The Department also noted that the Hoopa had executed a tribal resolution "waiving <u>any</u> claim such tribe may have against the United States arising out of the provisions of the Act." 53 Fed. Reg. 49,361 (1988) (emphasis added).

expansion of the Reservation boundaries, acquisition of land, public and private, within the expanded boundaries, and authorization of infrastructure improvements on the Reservation.

Furthermore, although Congressional guidance *may* have been necessary during the period when the Yurok Tribe's waiver was not considered complete, such guidance would not be necessary today if the Yurok were to execute a complete waiver that met the Department's conditions. Similarly, if the Yurok had succeeded in their claim against the government a case might be made for the necessity of further Congressional guidance. However, the Yurok's claim was not successful and the Tribe is now willing seriously to consider promptly meeting the Department's conditions. The Tribe is eager to move forward in cooperation with the Department to help achieve both the Department's and the Tribe's goals. Such cooperation is a very high priority for the Yurok's new leadership. To that end, the Tribe looks forward to a constructive discussion, and hopefully quick resolution, of these matters with the Department.

We look forward to discussing these matters with you as your schedule permits.

Hogan & Hartson, L.L.P.

cc: Scott Bergstrom

United States Department of the Interior

OFFICE OF THE SECRETARY
WASHINGTON, D.C. 20240

TAKE PRIDE IN AMERICA

APR 0 3 2007

The Honorable Clifford Lyle Marshall
Chairman
Hoopa Valley Tribal Council
Hoopa Valley Tribe
P.O. Box 1348
Hoopa, California 95546

RECEIVED
MORISSET, SCHLOSSER, JOZWIAK & MCGAW
APR 0 9 2007
☒ MAIL ☐ EXPRESS ☐ HAND
☐ FAX ☐ E-MAIL ☐ INTERNET

Dear Chairman Marshall:

This is to acknowledge receipt on March 26, 2007, by Associate Deputy Secretary of the Interior James E. Cason of a copy of the Hoopa Valley Tribe's Petition for Stay and Notice of Appeal and Statement of Reasons in the matter of *Hoopa Valley Tribe v. Ross Swimmer*, No. ______, before the Interior Board of Indian Appeals. For your information, Mr. Cason has recused himself from this case.

Thank you for your attention to this matter.

Sincerely,

Fay S. Iudicello
Director
Office of the Executive Secretariat

cc: Nina Cordova, Morisset, Scholsser et al.

U.S. DEPARTMENT OF THE INTERIOR MARCH 3, 1849

IN REPLY REFER TO:

United States Department of the Interior

BUREAU OF INDIAN AFFAIRS
Sacramento Area Office
2800 Cottage Way
Sacramento, California 95825

TAKE PRIDE IN AMERICA

SEP 17 1992

RECEIVED
SEP 21 1992
PIRTLE, MORISSET SCHLOSSER & AYER

CERTIFIED MAIL # P 423 394 958
RETURN RECEIPT REQUESTED

Mr. Thomas P. Schlosser
Pirtle, Morisset, Schlosser & Ayer
1115 Norton Building
801 Second Avenue
Seattle, Washington 98104-1509

Dear Mr. Schlosser:

The Hoopa Valley Tribal Council and the Enrollment Committee of the Hoopa Valley Tribe filed an appeal regarding the April 16, 1992 determination of the Acting Superintendent, Northern California Agency, that four individuals met the criteria of § 6(b) of the Hoopa-Yurok Settlement Act and are entitled to be enrolled with the Hoopa Valley Tribe.

Section 6(b) of the Hoopa-Yurok Settlement Act reads as follows:

(b) Hoopa Tribal Membership Option.--(1) Any person on the Settlement Roll, eighteen years or older, who can meet any of the enrollment criteria of the Hoopa Valley Tribe set out in the decision of the United States Court of Claims in its March 31, 1982, decision in the Short case (No. 102-63) as "Schedule A", "Schedule B", or "Schedule C" and who--

> (A) maintained a residence on the Hoopa Valley Reservation on the date of enactment of this Act;
> (B) had maintained a residence on the Hoopa Valley Reservation at any time within the five year period prior to the enactment of this Act; or
> (C) owns an interest in real property on the Hoopa Valley Reservation on the date of enactment of this Act,

may elect to be, and, upon such election shall be entitled to be, enrolled as a full member of the Hoopa Valley Tribe.

(2) Notwithstanding any provision of the constitution, ordinances or resolutions of the Hoopa Valley Tribe to the contrary, the Secretary shall cause any entitled person electing to be enrolled as a member of the Hoopa Valley Tribe to be so enrolled and such person shall thereafter be entitled to the same rights, benefits, and privileges as any other member of such tribe.

Schedule B. A review was also conducted regarding Schedule A and Schedule C. It was determined that these individuals do not meet the requirements of these schedules either.

The appeal filed on behalf of the Hoopa Valley Tribal Council and the Enrollment Committee of the Hoopa Valley Tribe is hereby upheld. Because this decision constitutes an adverse enrollment action, Bessie Moon Latham, Jack Norton, Jr., Laura Grant George, and Zane Grant will be advised of their right to appeal this decision under separate cover. Should these individuals choose not to appeal this decision, they will be given fifteen (15) days from receipt of their letter to select another option.

Sincerely,

Area Director

cc: Superintendent, Northern California Agency
Zane E. Grant, Sr.
Laura Lee George
Bessie Latham
Jack Norton, Jr.
Yurok Interim Council