**Electronically Filed September 10, 2008**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HOOPA VALLEY TRIBE, on its own behalf, and in its capacity as *parens patriae* on behalf of its members; Elton Baldy; Oscar Billings; Benjamin Branham, Jr.; Lila Carpenter; William F. Carpenter, Jr.; Margaret Mattz Dickson; Freedom Jackson; William J. Jarnaghan, Sr.; Joseph LeMieux; Clifford Lyle Marshall; Leonard Masten, Jr.; Danielle Vigil-Masten<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 08-72-TCW<br><br>Judge Thomas C. Wheeler<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANT'S ADDITIONAL PROPOSED FINDINGS OF UNCONTROVERTED FACT** |

In accordance with RCFC 56(h)(2) Plaintiffs set forth the following responses to Defendant's Additional Proposed Findings of Uncontroverted Fact (filed July 22, 2008). Pursuant to the RCFC and for the Court's convenience, Defendant's proposed finding is recited followed by Plaintiffs' response. While these responses often indicate the existence of a dispute, this does not suggest the existence of genuine issues of material fact where, for example, witness credibility is not involved.

70. The 1988 Act had three general objectives: (1) to provide for formal Yurok organization; (2) to partition the joint reservation between the Hoopa and Yurok; and (3) to distribute equitably between the two Tribes the trust funds derived from the joint reservation's resources. 25 U.S.C. §§ 1300i-1, 1300i-3; Pls.' Mot., Ex. 6 [Senate Report, S. Rep. 100-564 (Sept. 13, 1988)], App. 97, 102.

***Plaintiffs' Response***: Disputed, in part. Plaintiffs do not dispute that this paragraph cites sections of the Settlement Act (or "Act"), a document which speaks for itself and is the best evidence of its contents. The 1988 Act included objectives of providing for formal Yurok tribal organization, App. 103, and partitioning the Joint Reservation between the Hoopa Valley and

Yurok Indian Tribes, App. 93-96, and was also intended to "deal fairly with all the interests in the reservation." App. 91. However, neither the Act nor the legislative history cited by Defendant, support the narrow proposed finding of "general objectives." The Act's objectives were far broader than the finding suggests. For example, the purpose statement concerning the Settlement Act is described at App. 78-79. (*E.g.*, "to partition certain reservation lands between two tribes . . . and to resolve long standing litigation between the United States, the Hoopa Valley Tribe and a large number of individual Indians, most, but not all of whom are of Yurok descent.") Also, the trust funds derived from the Joint Reservation were not divided between two tribes but were substantially applied to individual claimants who met the standards of *Short v. United States* and a portion was reserved for disposition by Congress pursuant to Section 14(c) under certain circumstances. The Act was also intended to assist three small tribes ("rancherias") at Resighini, Trinidad and Big Lagoon, 25 U.S.C. § 1300i-10(b) and to clarify the Karuk Tribe of California's recognition. 25 U.S.C. § 1300i(b)(7). The Act also expanded the Yurok Reservation, and directed submission of an economic self-sufficiency plan for the Yurok Indian Tribe. *See* 25 U.S.C. § 1300i-1(c); 1300i-9. The Act also amended the General Tribal Timber Sales statute, 25 U.S.C. § 407, to prevent the application of certain *Short* case rulings to other Indian tribes.

71. In enacting the 1988 Act, Congress specifically intended to preclude the "individualization of tribal communal assets... that conflict with the general federal policies and laws favoring recognition and protection of tribal property rights[.]" Pls.' Mot., Ex. 6, App. 79.

***Plaintiffs' Response***: Disputed, in part. Plaintiffs do not dispute that this paragraph quotes phrases from S. Rep. 100-564 at 2, App. at 79, a document which speaks for itself and is the best evidence of its contents. A fair reading of the cited section shows that the Committee

did not intend to preclude enforcement of the "judicial decisions that are unique to the Hoopa Valley Indian Reservation and that have established certain individual interests[.]" *See id*. and 25 U.S.C. § 1300i-2.

72. In enacting the 1988 Act, Congress did "not believe that th[e] legislation, as a prospective settlement of this dispute, is in any way in conflict with the law of the case in the Short cases." Pls.' Mot., Ex. 6, App. 96. Congress, however, stated that "to the extent there is such a conflict, it is intended that this legislation will govern." *Id*.

***Plaintiffs' Response***: Plaintiffs do not dispute that this paragraph quotes a portion of the report of the Select Committee on Indian Affairs, S. Rep. 100-564, which speaks for itself and is the best evidence of its contents.

73. To effectuate the partition of the joint reservation, the 1988 Act required the Hoopa Valley Tribe to pass a resolution that consented "to the contribution of Hoopa Escrow monies to the Settlement Fund, and for their use as payments to the Yurok Tribe and to individual Yuroks" under the Act. 25 U.S.C. § 1300i-1 (a)(2)(A).

***Plaintiffs' Response***: Disputed, in part. Plaintiffs do not dispute that this paragraph quotes a portion of 25 U.S.C. § 1300i-1(a)(2)(A), which speaks for itself and is the best evidence of its contents. However, Defendant subtly misquotes the Act by omitting Congress's actual language "as provided in this Act," and substituting it with an unquoted "under the Act."

74. The 1988 Act also required the Hoopa Valley Tribe to "waive [ ] any claim such tribe may have against the United States arising out of the provisions of the subchapter. "25 U.S.C. § 1300i-1 (a). As directed by its members, and set forth in a tribal resolution, the Hoopa Valley Tribe did waive any claims against the United States arising from the 1988 Act and consented to the use of Hoopa monies as part of the Settlement Fund. Pls.' Mot., Ex. 8 [Notice

Regarding Hoopa Valley Tribe Claim Waiver, 53 Fed. Reg. 49361 (Dec. 7, 1988)], App. 333.

***Plaintiffs' Response***: Disputed, in part. Plaintiffs do not dispute that this paragraph quotes a portion of Section 2(a)(2)(A), which, as codified, substitutes the word "subchapter" for the words of the Public Law "of this Act," and, which speaks for itself and is the best evidence of its contents. However, the second sentence misquotes the referenced tribal resolution, App. 133, which includes as one recital that the Hoopa Valley Business Council "has been reassured and directed by the membership to comply with the Act," and goes on to waive "any claim the Hoopa Valley Tribe may have against the United States arising out of the provisions of the Hoopa-Yurok Settlement Act; and . . . the Hoopa Valley Tribe affirms tribal consent to the contribution of Hoopa Escrow monies to the settlement fund and for their use as payments to the Yurok Tribe, and to individual Yuroks, as provided in the Hoopa-Yurok Settlement Act."

75. An individual entitlement was recognized in the 1988 Act for those Indians of the former joint reservation who chose not to become a member of either the Hoopa Valley Tribe or the Yurok Tribe. An opt-out provision included in the Act entitled such individuals to a one time lump sum payment of $15,000. 25 U.S.C § 1300i-5(d).

***Plaintiffs' Response:*** Disputed, in part. 25 U.S.C. § 1300i-5(d) gave to certain persons on the Hoopa-Yurok Settlement Roll a lump sum payment option. This provision of the Act speaks for itself and is the best evidence of its contents. However, the provision did not sweep as broadly as alleged. Minors could not elect that option, except by complying with the special requirements of 25 U.S.C. § 1300i-5(a)(3). Also, no individual could be entitled to payment without compliance with the counseling opportunity affidavit prescribed by 25 U.S.C. § 1300i-5(d).

76. The 1988 Act specified that those Indians of the former joint reservation electing membership in the Hoopa Valley Tribe "shall no longer have any right or interest whatsoever in the tribal, communal, or unallotted land, property, resources, or rights of the Yurok Indian Reservation or the Yurok Tribe or in the Settlement Fund." 25 U.S.C § 1300i-5 (b)(4).

***Plaintiffs' Response:*** Disputed. Section 6(b)(4) is misquoted in this proposed finding. Furthermore, that subsection of the Act did not apply to "those Indians of the former Joint Reservation electing membership in the Hoopa Valley Tribe," as proposed, but instead applied to certain persons on the Hoopa Yurok Settlement Roll. The eligibility criteria for the Settlement Roll, set forth in Section 5(a) of the Act, require not only that a person meet the criteria for eligibility as an Indian of the Reservation, defined in Section 1 of the Act, but also require that such persons be living upon the date of enactment, be United States citizens, and not be, on August 8, 1988, enrolled members of the Hoopa Valley Tribe. Eligible persons were also required to apply in the manner and time established pursuant to Section 5 and to comply with the notice of settlement options, prescribed by Section 6.

77. The 1988 Act specified that:

> Any such claim by any person or entity, other than the Hoopa Valley Tribe or the Yurok Tribe, shall be forever barred if not brought within the later of 210 days from the date of the partition of the joint reservation as provided in section 1300i-1 of this title or 120 days after the publication in the Federal Register of the option election date as required by section 1300i-5(a)(4) of this title.

25 U.S.C. § 1300i-11(b)(1).

***Plaintiffs' Response:*** Undisputed.

78. The Notice of Statute of Limitation for Certain Claims, 56 Fed. Reg. 22998 (May 17, 1991) stated that:

> Any claim by a person or entity, other than the Hoopa Valley Tribe or the Yurok Tribe, challenging the partition of the joint reservation under section 2

> of the Settlement Act or any other provision of the Act as having effected a taking under the fifth amendment of the United States Constitution or as otherwise having provided inadequate compensation shall be forever barred if not brought by the date determined in accordance with the provisions of section 14.

Pls.' Mot., Ex. 11.

***Plaintiffs' Response:*** Undisputed.

79. The BIA published the option election date on May 17, 1991. Pls.' Mot., Ex. 10 [Notice of Settlement Option Deadline, 56 Fed. Reg. 22998 (May 17, 1991)]. Consequently, the statute of limitations to bring individual claims expired on September 16, 1991. Pls.' Mot., Ex. 11.

***Plaintiffs' Response:*** Disputed, in part. The published notice of the deadline for electing a settlement option actually appears at 56 Fed. Reg. 22996. It does not state a limitations period. However, the separate notice published at 56 Fed. Reg. 22998 does specify a limitations period for certain claims (not all individual claims) which expired on September 16, 1991.

80. In the 1988 Act, Congress defined the Hoopa Valley Tribe's share of the Settlement Fund based on the percentage of Hoopa members divided by the total number of persons on the Settlement Roll. 25 U.S.C. § 1300i-3(c); *see also id*. at §§ 1300i-4, 1300i-5(b).

***Plaintiffs' Response:*** Disputed. The cited sections of the Settlement Act do not support Defendant's proposed finding. Neither Sections 4(c) of the Act, nor Sections 5, nor 6, indicate that Congress was intending to "define[ ] the Hoopa Valley Tribe's share of the Settlement Fund." Section 4(c) did require the Secretary, upon the occurrence of certain events, to pay an amount out of the Settlement Fund into a trust account for the benefit of the Hoopa Valley Tribe. However, the percentage of the Settlement Fund, which was the basis of the payment of Section 4(c), was determined by dividing the number of enrolled members of the Hoopa Valley Tribe as of the date of the promulgation of the Settlement Roll by the sum of such enrolled Hoopa Valley

tribal members and the number of persons on the Settlement Roll. Defendant's proposed finding uses the wrong denominator.

81. In the 1988 Act, Congress specified that "the Secretary shall pay out the Settlement Fund into a trust account for the benefit of the Yurok Tribe..." a percentage of the Settlement Fund. 25 U.S.C. § 1300i-3(d). The statute directed this task to be completed "[e]ffective with the publication of the option election date pursuant to section 1300i5(a)(4)." *Id.*; *see also* Pls.' Mot., Ex. 10.

***Plaintiffs' Response:*** Disputed, in part. Plaintiffs do not dispute that the first sentence of Defendant's proposed finding substantially quotes a phrase from Section 4(d) of the Act which speaks for itself and is the best evidence of its contents. However, that phrase is taken out of context is misleading without reference to other sections of the Act that condition the Secretary's duty based upon other events. The second sentence of the proposed finding extracts another phrase from the same subsection but incorrectly concludes that "the statute directed this task to be completed" at that time. Defendant overlooks the conditions stated by Section 2(c)(4) which makes the "apportionment of funds to the Yurok Tribe as provided in section[ ] 4 . . . not . . . effective unless and until the Interim Council of the Yurok Tribe has adopted a resolution waiving any claims such tribe may have against the United States arising out of the provisions of this Act."

82. In the 1988 Act, Congress provided that "[a]ny funds remaining" after specified payments to certain individuals "shall be paid to the Yurok Tribe and shall be held by the Secretary in trust for such tribe." 25 U.S.C. § 1300i-6(a).

***Plaintiffs' Response:*** Disputed, in part. Defendant's proposed finding quotes phrases from Section 7(a) of the Act which speaks for itself and is the best evidence of its contents.

However, Defendant omits and ignores the condition precedent established in Section 2(c)(4) of the Act.

83. The 1988 Act allowed the Yurok Tribe to make per capita distributions to their members after ten years had lapsed from the division of the funds made pursuant to the Act. 25 U.S.C. § 1300i-6 (b). The division of the funds occurred between 1988 and 1991. Pls.' Mot., Ex. 13 [Memorandum to Area Director Regarding Distribution of Funds (Aug., 22, 1991)].

***Plaintiffs' Response:*** Disputed. Section 7(b) of the Act uses the terms "funds apportioned to . . . the Yurok Tribe," the same term used in the condition precedent language of Section 2(c)(4). Section (2)(4) expressly limits the operation of Section 7 of the Act. Defendant's proposed finding incorrectly refers to funds having been divided between "1988 and 1991." This appears to be a reference to trust funds authorized to be used by the Yurok Transition Team and by the Hoopa Valley Tribal Council pursuant to Section 4(a). However, the language of Section 7 does not encompass funds authorized to be paid from the Settlement Fund by Section 4(a) of the Act, but instead refers to subsections (c) and (d) of Section 4. Therefore, the cited section does not support the proposed finding.

84. In the 1988 Act, Congress amended 25 U.S.C. § 407 and established that proceeds from timber are to be used only by the tribe rather than by individual members of the tribe. Pub. L. No. 100-580, § 13.

***Plaintiffs' Response:*** Disputed. The proposed finding grossly distorts Section 13 of the Act. Section 13 of the Act provides the best evidence of its contents. Among other things, the amendment to the timber proceeds statute says that the proceeds of sale shall be used "as determined by the governing bodies of the tribes concerned" (emphasis added). Contrary to

Defendant's assertion, Section 13 says nothing to prohibit use of timber proceeds by individual members of a tribe.

85. Congress estimated the equitable distribution of the Settlement Fund to be roughly one-third to the Hoopa Valley Tribe and then one-third plus the remainder (after specified individual payments) to the Yurok Tribe. Pls.' Mot., Ex. 6, App. 96-97, 102.

***Plaintiffs' Response:*** Disputed. The proposed finding misstates language from the Senate Report, S. Rep. 100-564, which speaks for itself and provides the best evidence of its contents. The referenced language appears on Report page 20, App. 97, which indicates that roughly one-third of the entire Settlement Fund would be $23 to 23.5 million. The Report describes estimates prepared by the pro-organization Yurok Group of the proportion of Settlement Roll applicants who would accept tribal membership. It does not purport to be a "congressional estimate." The Senate Committee had no way of knowing in 1988 that "over 8,000 applications for the Settlement Roll," would ultimately be received. S. Rep. 101-226 at 15 (Nov. 21, 1989).

86. Including certain interim payments and the final distribution in 1991, the Hoopa Valley Tribe received $34,006,551.87, the amount determined to be its share of the Fund pursuant to the 1988 Act. Pls.' Mot., Ex. 13, App. 152-53.

***Plaintiffs' Response:*** Disputed. The proposed finding purports to describe the letter of the Office of Trust Funds Management, dated August 22, 1991, App. 152-55, which speaks for itself and provides the best evidence of its contents. While the figure of approximately $34 million appears once in the letter, it is plain from the letter that the Hoopa Valley Tribe did not receive this sum. Instead, the letter shows a balance due to the Hoopa Tribe of $14.1 million from which an amount of $1.186 million was subtracted and transferred to an escrow account to

compensate appeal cases. The Hoopa-Yurok Settlement Act funding history is charted in S. Hrg. 107-648 at 89 (2002), App. 333.

87. The Department of the Interior stated in its congressional testimony before the Senate Indian Affairs committee that "the Hoopa ... already received its portion of the benefits under the Act and is not entitled to further distributions from the [] Fund [.]" Pls.' Mot., Ex. 25, App. 337.

***Plaintiffs' Response:*** Disputed, in part. The cited page, App. 337, does not support the proposed finding. Elsewhere in Exhibit 25, the Department's testimony contains some of the quoted words. *E.g.*, App. 251-52. That same page of the Senate Hearing Report, however, states the view of the Department of the Interior that the remaining monies in the Settlement Fund should be "retained in a trust account" and "should be administered for the mutual benefit of both [the Hoopa Valley and Yurok] tribes." App. 252. The Senate Hearing Report provides the best evidence of its contents.

88. The Yurok Tribe requested that the Department of the Interior evaluate whether it might distribute the remainder of the Settlement Fund administratively. Pls.' Mot., Ex. 30 [Letter of Special Trustee for American Indians to Clifford Lyle Marshall (Mar. 1, 2007)], App. 372.

***Plaintiffs' Response:*** Undisputed.

89. "The Yurok Tribe proposed[ed].. .to provide the Department with a new, unconditional waiver of claims, a concept not proposed at the time of the 2002 [congressional] hearing." Pls.' Mot., Ex. 30, App. 373.

***Plaintiffs' Response:*** This finding characterizes language from the March 1, 2007 letter of Special Trustee Ross O. Swimmer, App. 372-74, a document that speaks for itself and is the best evidence of its contents.

90. The Department of the Interior did not make *per capit*a distributions to Yurok tribal members. Pls.' Mot., Ex. 31; PIs. Mot., Ex. 34 [Resolution of Yurok Tribal Council No.07-41 Regarding Distribution of Assets Held in Trust (April 19, 2007)], App. 394; PIs. Mot., Ex. 38 [Letter of Deputy Special Trustee - Trust Services to SEI Private Trust Company Regarding Free Delivery of Hoopa-Yurok Settlement Account (April 20, 2007)).

***Plaintiffs' Response:*** Disputed, in part. The proposed finding is not a statement of fact, but appears to be an unjustified conclusion of law. *See Short IV*, 12 Cl. Ct. at 41. The proposed finding references three documents, Plaintiffs' exhibits 31, 34 and 38, which speak for themselves and are the best evidence of their contents. None of the documents states that the Interior Department did not approve the Yurok per capita distribution nor does any of these documents state the degree to which the Department of the Interior authorized or participated in the per capita distribution. Exhibit 34, the Yurok Tribal Council's Resolution No. 07-41 "directs the Department of the Interior to Free Deliver" Hoopa-Yurok Settlement Account assets to a custodian listed, Citibank of New York, for the benefit of Morgan Stanley & Co. Exhibit 38 (an Interior Department letter) also names Morgan Stanley as a custodian of assets from the account "Hoopa/Yurok Settlement - 7193." Exhibit 40 shows that Morgan Stanley issued per capita payment checks to the Yurok member beneficiaries.

Respectfully submitted this 10th day of September, 2008.

*s/ Thomas P. Schlosser*____________________
Thomas P. Schlosser, *Attorney of Record*
MORISSET, SCHLOSSER, JOZWIAK & McGAW
801 Second Avenue, Suite 1115
Seattle, WA 98104-1509
Tel: (206) 386-5200
Fax: (206) 386-7322
t.schlosser@msaj.com

*Of Counsel:*
Rob Roy Smith, Attorney
ATER WYNNE, LLP
601 Union Street, Suite 1501
Seattle, WA 98101-3981
Tel: (206) 623-4711
Fax: (206) 467-8406
rrs@aterwynne.com
*Attorneys for the Plaintiff Hoopa Valley Tribe, et al*.

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2008, a copy of, PLAINTIFFS' RESPONSE TO DEFENDANT'S ADDITIONAL PROPOSED FINDINGS OF UNCONTROVERTED FACT, was electronically sent via the CM/ECF system by the United States Court of Federal Claims on the following parties:

Devon Lehman McCune
Email: devon.mccune@usdoj.gov

Sara E. Costello
Email: Sara.costello@usdoj.gov

*s/ Thomas P. Schlosser*____________________
Thomas P. Schlosser, Attorney of Record
MORISSET, SCHLOSSER, JOZWIAK & McGAW
801 Second Avenue, Suite 1115
Seattle, WA 98104-1509
Tel: (206) 386-5200
Fax: (206) 386-7322
t.schlosser@msaj.com

T:\WPDOCS\0020\09561\Pleadings\PtfsResp_Findings090308_07.DOC
nmc:9/10/08